# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5893 - Consolidated | **DATE** | 3/19/2004 |
| **CASE TITLE** | Lawrence E. Jaffe Pension Plan vs. Household Interntl.' Inc., et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court denies Household, Household Officers, and Andersen's motion to dismiss Count I [88-1, 94-1, 97-1]; denies Household and Household Officers' motion to dismiss Count II [88-1]; grants Household, Household Officers, Household Directors, Andersen, Goldman Sachs, and Merrill Lynch's motions to dismiss Counts III [88-1, 94-1, 95-1, 97-1]; grants in part and denies in part Household, Household Directors, and Andersen's motions to dismiss Count IV [88-1, 94-1, 97-1] and denies Andersen's motion to strike [93-1]. Goldman Sachs and Merrill Lynch are hereby terminated as parties. Motion for leave to file supplemental authority [132-1] is granted. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 2 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 135 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 MAR 19 PM 2: 19 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 2 2004

LAWRENCE E. JAFFE PENSION )
PLAN, on Behalf of Itself and All Others )
Similarly Situated, )
)
    Plaintiff, )
)
    v. )    02 C 5893 (Consolidated)
)
HOUSEHOLD INTERNATIONAL, INC., )    Judge Ronald A. Guzmán
MERRILL LYNCH, PIERCE, FENNER, )
& SMITH, INC., GOLDMAN SACHS & )
CO., INC., ARTHUR ANDERSEN, L.L.P., )
WILLIAM F. ALDINGER, DAVID A. )
SCHOENHOLZ, GARY GILMER, )
J.A. VOZAR, ROBERT J. DARNALL, )
GARY G. DILLON, JOHN A. )
EDWARDSON, MARY JOHNSTON )
EVANS, J. DUDLEY FISHBURN, )
CYRUS F. FREIDHEIM, LOUIS E. LEVY, )
GEORGE A. LORCH, JOHN D. )
NICHOLS, JAMES B. PITBLADO, )
S. JAY STEWART, and LOUIS W. )
SULLIVAN, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence E. Jaffe Pension Plan, on behalf of itself and all others

similarly situated, brought this suit alleging violations of 15 U.S.C. § 78(j)(b) ("§ 10(b)"

of the Exchange Act of 1934 ("1934 Act")) and 17 C.F.R. § 240.10b-5 ("Rule 10b-5")

against Household, Household Officers, identified as Aldinger, Schoenholz, and Gilmer,

and Arthur Andersen ("Andersen") in Count I; violation of 15 U.S.C. § 78(t)(a) ("§

20(a)" of the 1934 Act) by Household, and Household Officers in Count II; violations of

15 U.S.C. §§ 77k, 77l(a)(2), and 77o ("§§ 11, 12(a)(2), and 15" of the Securities Act of

1933 ("1933 Act")) by Household, Household Officers, Household Directors, Andersen, Goldman Sachs & Co., Inc. ("Goldman Sachs"), and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") in Count III, and violations of 15 U.S.C. §§ 77k, 77o ("§§ 11, 15" of the 1933 Act) by Household, Household Directors and Andersen in Count IV. Glickenhaus & Co. has been named lead plaintiff in this case, which is a consolidation of a number of cases.

Household, Officer Defendants, Individual Defendants and Andersen have moved to dismiss Counts I and II under Fed. R. Civ. P. ("Rule") 9(b) and 12(b)(6). Household Officers, Individual Defendants, Andersen, Goldman Sachs and Merrill Lynch have moved to dismiss Counts III and IV under Rule 12(b)(6). In addition, Andersen has moved to strike two paragraphs in the Amended Complaint pursuant to Rule 12(f). For the reasons set forth in this Memorandum Opinion and Order, the Court: (1) denies Household's, Household Officers' and Andersen's motion to dismiss Count I; (2) denies Household's, and Household Officers' motion to dismiss Count II; (3) grants Household's, Household Officers', Household Directors', Andersen's, Goldman Sachs', and Merrill Lynch's motions to dismiss Counts III; (4) denies in part and grants in part Household's, Household Directors' and Andersen's motions to dismiss Count IV; and (4) denies Andersen's motion to strike.

## FACTS

The complaint at issue relates to violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, Sections 10(b) and 20(a) of the Exchange Act of 1934 and 17 C.F.R. § 240.10b-5.

2

Lead plaintiff Glickenhaus & Company and the other proposed class members

purchased shares of Household common stock, preferred stock, bonds, notes,

InterNotes(SM) and Trust indentures between October 23, 1997 and October 11, 2002

("Class Period"). Defendant Household International, Inc. is engaged primarily in

consumer lending.

During the Class Period, Household reported continuous and dramatic growth in

income and net earnings. On the basis of quarterly earning statements, meetings,

conference calls with analysts and other publication of data, stock analysts from a variety

of respected firms issued "buy" reports with respect to Household offerings. Also during

this period, Household filed a number of required forms and statements with the

Securities and Exchange Commission ("SEC") with the inclusion of reports from various

named directors and officers as well as audit reports generated by Andersen and stock

analysis reports by Goldman Sachs and Merrill Lynch. On the basis of these statements

and assurances, plaintiff purchased Household securities.

During the Class Period, allegations of predatory lending and improper "reaging"

of loans began to surface from a variety of sources. These included allegations in

Washington and California that ultimately resulted in the filing of lawsuits during the

Class Period. During the Class Period Household entered into a settlement agreement

regarding Household's lending practices with the Attorneys General of several states.

Also during the Class Period, Washington published the Washington Department of

Financial Institutions Expanded Report of Examination of Household Finance

Corporation III (April 30, 2002) ("Washington Report"). All of these allegations arose

from what plaintiff characterizes as Household's predatory lending practices as outlined

3

in what Household had named the "EZ Pay Plan," wherein Household allegedly loaned money to high-risk consumers and home owners, employing a variety of tactics intended to boost the fees and costs associated with the loans. In order to assist in the overall management of Household, during this period Household perfected what it called the "Vision System" that the Officer Defendants publicly praised as making company-wide data available to them and allowing them to engage in proactive management of lending practices at all of the branch offices. In addition, plaintiff alleges Household engaged in "reaging" loans, whereby delinquent loans were reclassified as still current by the addition of the delinquent payments onto the end of the loan term, thereby lengthening the loan term and reducing the appearance of default loans on Household's books.

Although both Household and Andersen argue that Household's financial statements were prepared in accordance with generally accepted accounting principles ("GAAP") and generally accepted accounting standards ("GAAS"), this was not true according to plaintiff. Under these principles, "reaging" of loans in the manner Household used is strongly recommended against because it fails to indicate whether the accounts may ultimately be collectable. This results in the diminution of the reliability of aging scales and, practically speaking, obscures the risk of delinquency associated with the outstanding loans.

Throughout most of the Class Period, Household securities generally increased in value, ultimately rising to over $63.25. This began to change, though. On August 14, 2002 Household announced that its new auditors KPMG had recommended a substantial restatement of earnings for a period including the Class Period. The ultimate result was a lowering of net income and equity by $386 million for the period from 1994 to the

4

second quarter 2002. Additionally, with the circulation of rumors about a pending California class action legal settlement that would restrict Household's lending practices and result in a multi-million settlement, there was a dramatic fall in stock price to around $28 a share in less than three months.

Each of the proposed class members purchased Household securities during the Class Period at allegedly artificially inflated prices, relying on the integrity of the market price and market information. Each has been damaged as a result of defendants' misrepresentations.

Officer Defendants participated directly in the day-to-day operations of Household and were instrumental in the development and execution of the practices and programs plaintiff alleges led to the instant complaint. Each had access to confidential information about the company's business and operations. Each directly and indirectly controlled the conduct of the company's business, the information contained in its filings with the SEC, and public statements about its business and financial results. Officer and Director Defendants were signatories on the Registration Statements that resulted in the issuance of further Household securities. Auditor defendant, Andersen, performed independent audits and provided accounting, management consulting, and tax services for Household during the Class Period. It reviewed financial data used in a variety of SEC filings, *e.g.*, debt registration statements and audit reports included as attachments to various SEC filings. Andersen was intimately involved in Household's confidential corporate financial and business operations. Household Director Defendants were all Household directors during the Class Period. Merrill Lynch and Goldman Sachs both

provided stock analysis services in connection with the merger between Beneficial and Household.

## DISCUSSION

Each defendant has moved to dismiss various counts of the Amended Complaint. Household, Officer Defendants, Individual Defendants and Arthur Andersen have moved to dismiss Counts I and II. Household, Officer Defendants, Individual Defendants, Andersen, Goldman Sachs and Merrill Lynch have moved to dismiss Counts III and IV. Additionally, Andersen has moved to strike paragraphs 180 and 181 of the Amended Complaint as prejudicial and irrelevant. The Court addresses each of these arguments in turn.

A Rule 12(b)(6) motion to dismiss does not test the merits of the case and merely attacks the sufficiency of the complaint. *Fishman v. Meinen,* No. 02 C 3433, 2003 WL 444223, at *4 (N.D. Ill. Feb. 24, 2003). A court may only dismiss a complaint for failure to state a claim upon which relief may be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997). A court must accept all well pleaded allegations of the complaint as true, and must view those allegations in the light most favorable to plaintiff. *Fishman,* 2003 WL 444223, at *4. The Court need not accept as true legal conclusions alleged in the complaint, though a plaintiff may plead conclusions if they "provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County,* 66 F.3d 151, 154 (7th Cir. 1995).

**I. Fraud Claims: Section 10(b) and Section 20(a) of the 1934 Act and Rule 10b-5**

Plaintiff seeks relief against Household, Officer Defendants and Andersen for fraud under Section 10(b) of the 1934 Act and Rule 10b-5 in Count I and Section 20(a) in Count II. Defendants contend that plaintiff has insufficiently pleaded according to the standards for fraudulent averments under Rule 9(b), or according to the standards of the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u-4. (Household Mot. Dismiss at 22-24; Andersen Mot. Dismiss at 1-2.)

It is well settled that "Rule 9(b) [of the Federal Rules of Civil Procedure] governs claims based on fraud and made pursuant to the federal securities laws." *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990) (alteration in original, quotations omitted). "Circumstances constituting fraud ... shall be stated with particularity," which has been interpreted as requiring inclusion of "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff'" in fraud allegations. Fed. R. Civ. P. 9(b); *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Tr. Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir. 1992)). In essence, the complaint must specify the "who, what, when, where, and how" of the allegedly fraudulent acts. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). The purpose of this "is to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999). The rule serves to (1) protect defendants' reputations from harm, (2) minimize 'strike suits' and 'fishing expeditions', and (3) provide notice of claims to adverse parties. *Fishman,* 2003 WL 444223, at \*5 (citing *Vicom, Inc. v.*

*Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 777 (7th Cir. 1994)).

In addition, a complaint of securities fraud under the 1934 Act is subject to the PSLRA. 15 U.S.C. § 78u-4(a)(1). Under the PSLRA, a plaintiff must allege a defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1). In either case, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* Further, plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). If these requirements are not met, the Court shall dismiss the complaint. 15 U.S.C. § 78u-4(b)(3).

Together, the overlapping pleading requirements of Rule 9(b) and the PSLRA make it clear that a plaintiff must aver which defendants said what, to whom, and when. *Ackerman,* 172 F.3d at 471; *Fishman,* 2003 WL 444223, at *5; *see also Sears,* 912 F.2d at 893. "Where a plaintiff alleges that a group of individuals is part of a fraudulent scheme, he or she must put each defendant on notice of his or her alleged role." *Fishman,* 2003 WL 444223, at *5; *see Vicom,* 20 F.3d at 777-78. In addition, a plaintiff must show a "strong inference" of scienter, whether through a showing of "motive and opportunity to commit fraud" or through a showing of "conscious misbehavior or recklessness." *Johnson v. Tellabs, Inc.*, No. 02 C 4356, 2004 WL 324752, at *18 (N.D. Ill. Feb. 19, 2004).

8

## A. § 10(b) and Rule 10b-5

In pertinent part Section 10(b) and Rule 10b-5 provide that it is unlawful for any person in connection with a securities sale or purchase "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b), (c); *see* 15 U.S.C. § 78j(b).

To state a claim for a violation under Section 10(b) or Rule 10b-5, a plaintiff must allege that (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 851 (7th Cir. 1998); *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). Plaintiff must establish that defendants had a duty to disclose the omitted information. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988).

## 1. Alleged false and misleading statements

The first requirement of the PSLRA is to identify each statement alleged to be misleading. For the most part, plaintiff has done this, identifying who made particular statements, when, how they were misleading, and the results of the statements. They point to the following representations as false and misleading.

### a. Household

Throughout the Class Period Household published quarterly financial data, usually accompanied by statements from one or more directors. (Am. Compl. at ¶¶ 192, 214, 218, 230, 233, 237, 243, 252, 258, 263, 272, 285, 289, 298, 311, 333.) These statements included net income and earnings per share information, giving both dollar amounts and various comparative statistics with respect to earlier quarters. In each case, the income and earnings per share information increased by double digit percentages over earlier quarters. Plaintiff contends these quarterly statements were untrue and materially misleading statements of Household's financial condition. Plaintiff bases these allegations on the inclusion in the statements of what it alleges were the knowingly inaccurate financial representations, as well as its assertion that Household admitted to violating GAAP through its correction of its financial statements, resulting in part from its "reaging" practices. (Id. at ¶¶ 126, 142, 196, 217, 242, 271, 302, 308, 332, 342.) Plaintiff contends the result of these quarterly releases was the republication of the Household data in a variety of respected analyst reports accompanied by "buy" recommendations and immediately subsequent share price rises based on both Household's and the analysts' reports. (Id. at ¶¶ 193, 198, 205, 210, 222, 224, 230, 234, 238, 240, 244, 253, 259, 265, 273, 274, 287, 290, 291, 326, 335.)

Further, Household filed Form 10-K SEC filings signed by Aldinger, Schoenholz and Director Defendants that asserted Household was in compliance with SEC Regulations S-X and S-K. (Id. at ¶¶ 200, 225, 246-48, 277, 313.) This was supported by Andersen's audit opinion of the data incorporated by reference in the filing. (Id. at ¶¶ 202, 227, 249, 279, 316.) In the audit opinions Andersen asserted

10

"that it had audited Household's financial statements and Schedule 14(d) for [the respective years] in accordance with GAAS and opined that it 'fairly states in all material respects the financial data required to be set forth therein in relation to the basic financial statements taken as a whole.'" (*Id.*) The March 28, 2000 filing contained assertions related to how Household had increased in various indices of operating net income. (*Id.* at ¶ 246.) It also stated that risk-based pricing and effective collection efforts for its loans resulted in effective management of credit losses. (*Id.* at ¶ 247.) Household also stated that it had shifted its credit card receivables to its subsidiary HFC, according to plaintiff, for the purpose of avoiding newly enacted federal banking regulations that significantly altered reporting requirements. (*Id.* at ¶ 250.) The March 28, 2001 filing stated that Household "continue[s] using risk-based pricing and effective collection efforts for each loan. We have a process that gives us a reasonable basis for predicting the asset quality of new accounts." (*Id.* at ¶ 278.) The March 13, 2002 filing reiterated this language. (*Id.* at ¶ 315.) It additionally stated in the "Management Report" signed by Aldinger and Schoenholz that "the company will fully comply with laws, rules and regulations of every community in which it operates and adhere to the highest ethical standards." (*Id.* at ¶ 314.) Plaintiff contends Household through the agency of its officers, directors and auditor based these filings on knowingly false and misleading financial data. (*Id.* at ¶¶ 126, 142, 196, 217, 242, 271, 302, 308, 332, 342.) As a result of the successful filings, Household was able to maintain what plaintiff contends was its false financial position which misled analysts and investors. (*Id.* at ¶¶ 200, 225, 246-48, 277, 313.)

### b. Aldinger

In addition to Aldinger's signatures on the above-mentioned SEC filings, plaintiff alleges Aldinger repeatedly made materially misleading statements during the Class Period. Many of these statements were included in Household's quarterly releases of its financial results. (*Id.* at ¶¶ 192, 197, 209, 214, 218, 229, 233.) Aldinger repeatedly made statements included in these releases concerning Household's financial status and the alleged means used to reach the published results. These statements included ones such as (1) "wider margins, higher average managed receivables, and a continued focus on efficiency []more than offset the impact of higher credit losses"; (2) "[w]e grew revenues 18 percent and kept expenses essentially flat. We absorbed increased chargeoffs consistent with industry-wide trends and further strengthened our credit loss reserves. We also improved our return on managed assets. Our return on equity exceeded 18 percent, even though we significantly increased our capital levels"; (3) "[o]ur tight focus on our core markets, our conservative capital base and our disciplined approach to funding and liquidity management enabled Household to achieve record earnings for the quarter"; (4) "[t]he company's operating results were solid with 6 percent annualized receivable growth, margin expansion and improving efficiency . . . . reserve coverage remains conservative"; (5) reporting net income increases in excess of 70%, resulting in part from "higher yields on unsecured products and lower funding costs, partially offset by the effect of a shift in mix toward secured products"; and (6) "[s]trong loan growth in our consumer finance business, improved efficiency and higher income from our tax refund loan business" as the underlying causes for increases. (*Id.* at ¶¶ 192, 197, 214, 218, 229.)

In response to analyst questions on February 7, 2002 concerning rumors that Household might change its accounting policies, thereby affecting stock value, Aldinger and Schoenholz made various statements indicating that Household would not change its accounting policies. (*Id.* at ¶ 320.) These included statements such as "Household has had no problems with its commercial paper funding and the costs of that funding has not increased," "Arthur Andersen has always been aggressive with HI. There are no accounting changes being discussed and there are to be no surprises in the 10K. HI's board of directors has had long conversations about Arthur Andersen and they plan to watch to see if a change has to be made but none is anticipated at this point." (*Id.*)

Plaintiff contends the statements made by Aldinger were untrue and materially misleading statements of Household's financial condition. Plaintiff bases these allegations on what it asserts was Aldinger's knowledge of Household's improper business and accounting practices. The result of Aldinger's alleged concealment of Household's true financial state resulted in the re-publication of the Household data along with Aldinger's statements and paraphrases of Aldinger's statements in a variety of respected analyst reports, causing immediately subsequent share price rises and "buy" recommendations. (*Id.* at ¶¶ 193, 198, 205, 210, 222, 224, 230, 234, 238, 240, 244, 253, 259, 265, 273, 274, 287, 290, 291, 326, 335.)

**c. Schoenholz**

In addition to Schoenholz's signatures on the above-mentioned SEC filings, plaintiff alleges Schoenholz authorized, signed and caused to be filed multiple SEC

13

Form 10-Q's. Each filing stated it was prepared in accordance with GAAP procedures and that it included, "[i]n the opinion of management, all adjustments (consisting of normal recurring accruals) considered necessary for a fair presentation." (*Id.* at ¶¶ 194, 206, 212, 215, 231, 235, 239, 254, 260, 269, 288, 292, 299, 328.) Plaintiff contends that both statements were untrue and materially misleading statements of Household's financial condition. Plaintiff bases these allegations on the inclusion in the 10-Qs of what it alleges were the knowingly inaccurate financial representations published in Household's quarterly corporate financial reports, as well as its assertion that Household admitted to violating GAAP through its correction of its financial statements, resulting in part from its "reaging" practices. (*Id.* at ¶¶ 126, 142-47, 194, 206, 212, 215, 231, 235, 239, 254, 260, 269, 288, 292, 299, 328.)

Schoenholz, in particular, is cited by plaintiff for having made misleading public statements about the restatement resulting from the KPMG audit. (*Id.* at ¶¶ 146-47.) Plaintiff contends that the financial reports included in the 10Qs materially misrepresented Household's true financial condition because they failed to disclose losses and the ephemeral nature of claimed assets. (*Id.* at ¶¶ 196, 217, 242, 271, 302, 308, 332, 342.)

### d. Gilmer

Plaintiff contends that Gilmer oversaw a sales training manual update project that featured the "EZ Pay Plan." (*Id.* at ¶ 96.) The subsequent nationwide distribution of this manual to Household offices and its use as the basis of sales training programs resulted in the nationalization of practices previously confined to the Washington State

14

area. (*Id.* at ¶¶ 94-96.) Plaintiff alleges the distribution and training authorized by Gilmer directly resulted in company-wide predatory lending practices and subsequent accounting irregularities, ultimately resulting in the misrepresentation of Household's financial status. (*Id.* at ¶¶ 26, 102.) Despite the allegedly unethical nature of the "EZ Pay Plan," the Origination News quoted Gilmer as stating that "[u]nethical lending practices of any type are abhorrent to our company, our employees and most importantly customers." (*Id.* at ¶ 280.) Thus, Gilmer reassured the market and contributed to analyst optimism, "buy" recommendations, and increasing share prices.

### e. Andersen

In addition to the inclusion of Andersen's audit reports and opinions in the above-mentioned SEC filings, plaintiff alleges Andersen failed to conduct its audits of Household in compliance with GAAS and GAAP standards, or even to conduct proper audits at all, despite asserting the contrary. Specifically, Andersen stated in a report to Household's shareholders:

> We conducted our audits in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatements. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

(*Id.* at ¶ 174.)

15

Plaintiff alleges this, and similar statements, are untrue and resulted in false and misleading audit reports of Household's financials. This further resulted in the allegedly false SEC filings noted above. (*Id.* at ¶ 176.) Additionally, plaintiff alleges that Andersen "knew its reports would be relied upon by potential investors in Household securities," whether they appeared in the SEC filings or the quarterly Household financial data releases. (*Id.* at ¶ 176.)

The Court concludes that each of these statements satisfies Rule 9(b) and the PSLRA's requirement for particularly pointing out misleading statements related to securities sales, indicating why it is material, and relating how the statements caused plaintiff's damages. Accordingly, the Court holds that plaintiff has articulated the who, what, when, where, and how of the fraud with sufficient particularity.

## 2. Scienter

The only remaining question is whether plaintiff has pleaded sufficiently that defendants Household, Officer Defendants and Andersen acted with the requisite scienter to meet PSLRA standards. While the Seventh Circuit has yet to address precisely how rigorously the PSLRA's pleading standards must be applied to plead the "requisite state of mind," cases in the Northern District of Illinois have generally followed the Second Circuit's pleading standard. Thus, plaintiff must allege facts either (1) showing that the defendant had both motive and opportunity to commit fraud; or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 100 (2d Cir. 2001); *see, e.g., In re Hartmarx Sec. Litig.,* No. 01 C 7832, 2002 WL

653892, at *2 (N.D. Ill. Apr. 19, 2002) (collecting cases); *Beedie v. Battelle Mem'l Inst.*, No. 01 C 6740, 2002 WL 22012, at *2 (N.D. Ill. Jan. 7, 2002) (collecting cases).

Officer Defendants Aldinger, Schoenholz and Gilmer contend they did not knowingly publish inaccurate or misleading statements on behalf of Household. They also contend that plaintiff has failed to "state with particularity facts giving rise to a strong inference" that defendants acted with the required state of mind, or knew of the predatory lending and "reaging" practices or knew that such practices were material. (Mem. Supp. Household's Mot. Dismiss at 18, 23-25.) Further, Officer Defendants argue that the tie between compensation and company performance is insufficient to establish scienter. (*Id.* at 20.)

Defendants are correct that the tie between compensation and company performance without more is not sufficient. *Tricontinental Indus. v. Anixter*, 215 F. Supp. 2d 942, 950 (N.D. Ill. 2002); *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000). However, "[i]t is well established in this Circuit that a party may be excused from Rule 9(b)'s requirement of pleading with particularity if the information that he is required to plead rests exclusively within the defendants' control or is otherwise unavailable to him." *In re NeoPharm, Inc. Sec. Litig.*, No. 02 C 2976, 2003 WL 262369, at *11 (N.D. Ill. Feb. 7, 2003) (citing *In re Newell Rubbermaid Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *14 (N.D. Ill. Nov. 14, 2000)). As a result, it is necessary to consider if plaintiff has sufficiently pleaded facts indicating strong circumstantial evidence of defendants' awareness and direction of the allegedly predatory pricing and "reaging" programs.

Officer Defendants Aldinger, Schoenholz and Gilmer are characterized by plaintiff as "hands-on" managers of Household and its subsidiaries, with access to and control over the daily operations of Household, including the programs that resulted in predatory lending and in "reaging" of loans. (*Id.* at ¶ 165.) As such the Officer Defendants were in possession of non-public information "based on their review of Household's internal operating data, including information provided to them by Household's Vision system," directly contradicting their public statements on behalf of the company about Household's financial dealings. (*Id.* at ¶¶ 155-56, 196, 217, 242, 271, 302, 308, 332, 342.) As a result, plaintiff alleges Officer Defendants in their individual capacities and as representatives of Household either knew or were grossly reckless in not knowing that the public statements and omissions regarding Household's financial status, and business and accounting practices were false or misleading when made. (*Id.*)

Plaintiff asserts the Officer Defendants Aldinger, Schoenholz and Gilmer had motive and opportunity to commit fraud, and further, acted with conscious recklessness. Household's "pay-for-performance" policy tied executive compensation to company performance, both economic and non-economic. (*Id.* at ¶¶ 157-64.) Targeted earnings per share, targeted return on equity, targeted operating efficiency ratios, targeted reserve to charge-off ratios and targeted equity to managed asset ratios all played a role in determining the officer defendants' compensation. (*Id.* at ¶¶ 160-62.) Thus, plaintiff assert that "without the boost provided by defendant's improper accounting, Household would likely not have had a single quarter of meeting or exceeding analysts' expectations," nor as a result would Officer Defendants have garnered the bonuses they did. (*Id.* at ¶ 163.)

18

With respect to Andersen, plaintiff asserts it had motive and opportunity to make misrepresentations as well. Plaintiff alleges Andersen partners "were under enormous pressure" to increase its Household billing. (*Id*. at ¶ 177.) In addition to its auditing fees, Andersen sought and gained further extensive, non-auditing consulting service work and fees from Household. (*Id*. at ¶ 178.) By involving itself closely in Household's various business ventures, it abrogated its independent status as an auditor, thereby compromising its independence. (*Id*. at ¶ 179.) As a result, plaintiff alleges Andersen had a vested interest in going along with Household's allegedly improper accounting practices and supporting Household's misrepresentations and material misstatements. (*Id*. at ¶ 177.)

The Court concludes that plaintiff has sufficiently pleaded the requisite state of mind for each defendant from the information currently available to it. As a result, the heightened pleading requirements for § 10(b) and Rule 10b-5 have been met and the defendants' motions to dismiss Count I are denied.


**B.  § 20(a)**

Section 20(a) of the 1934 Act imposes liability on anyone "who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder." 15 U.S.C. § 78t(a). It is a predicate offense, requiring a violation of some other section of the 1934 Act in order to be applicable. *Id.* That threshold requirement has been met via the § 10(a) and Rule 10b-5 allegations. Additionally, § 20(a) does not have a scienter requirement or a heightened pleading standard. Accordingly, liberal pleading requirements apply. *In re Anicom, Inc.*, No. 00 C 4391,

2001 WL 536066, at *6 (N.D. Ill. May 18, 2001); *Chu,* 100 F. Supp. 2d at 843.

"To plead control person liability, the plaintiff[] must adequately allege that each 'control person' participated in or exercised control over the company in general and that he or she possessed the 'power or ability to control [the specific] transactions upon which the primary violation was predicated,' whether or not that power was exercised." *Nanophase Techs. Corp. Sec. Litig.,* Nos. 98 C 3450, 98 C 7447, 2000 WL 1154631, at *7 (N.D. Ill. Aug. 14, 2000) (citing *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992)). Plaintiff alleges that the Officer Defendants, Aldinger, Schoenholz and Gilmer, exercised "hands on" management, involving themselves in all aspects of Household's activities. (Am. Compl. at ¶ 165.) Further, plaintiff alleges Officer Defendants had control over the content and issuance of public statements "issued by or on behalf of Household," *e.g.,* quarterly and annual reports, press releases and SEC filings. *(Id.* at ¶ 166.) Plaintiff alleges these defendants had the requisite knowledge, the opportunity, and the power to correct any misstatements prior to publication. *(Id.)* This is sufficient for the purposes of a § 20(a) claim. *Chu,* 100 F. Supp. 2d at 843; *Nanophase,* 2000 WL 1154631, at *7. As a result, defendants' motions to dismiss Count II are denied.

## II. Strict Liability under the 1933 Act

Plaintiff also seeks relief against Household, Officer Defendants, Director Defendants, Andersen, Goldman Sachs and Merrill Lynch under §§ 11, 12(a)(2) and 15 of 1933 Act in Counts III, and against Household, Director Defendants and Andersen under §§ 11 and 15 of 1933 Act in Count IV. Defendants contend that plaintiff has failed

to state a claim upon which relief can be granted on two grounds. They primarily contend that the statute of limitations has passed. Even if it has not, they contend the claims lack sufficient particularity, fail to give notice, or otherwise are improperly pleaded.

## A. Statute of Limitations

In stating its claims, plaintiff has asserted that the Sarbanes-Oxley Act (2002) applies to §§ 11, 12(a)(2) and 15 of 1933 Act. Defendants contest this.

In 2002, prior to the original filing of this suit, Congress prospectively lengthened the statute of limitations in federal securities fraud suits from a one-year/three-year arrangement to a two-year/five-year arrangement. 28 U.S.C. § 1658(b). As amended in 2002, 28 U.S.C. § 1658 provides:

> (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47), may be brought not later than the earlier of--
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. § 1658(b).

A statute of limitations begins to run on either actual or inquiry notice of facts constituting fraud. *See Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 722 (7th Cir. 1993). The Seventh Circuit employs an objective inquiry notice test:

> The one-year [now two-year] statute of limitations applicable to suits under Rule 10b-5 begins to run not when the fraud occurs, and not when the fraud is discovered, but when (often between the date of occurrence

21

and the date of the discovery of the fraud) the plaintiff learns, or should
have learned through the exercise of ordinary diligence in the protection
of one's legal rights, enough facts to enable him by such further
investigation as the facts would induce in a reasonable person to sue
within a year [now two years].

*Fujisawa Pharm. Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1334 (7th Cir. 1997); *see Law v.*

*Medco Research, Inc.,* 113 F.3d 781, 786 (7th Cir. 1997). The ease of access to evidence

that would trigger an appropriate inquiry is an important factor in determining when the

statute of limitations begins running. *Fujisawa,* 115 F.3d at 1334. Further, "[t]here must

also be a suspicious circumstance to trigger a duty to exploit the access; an open door is

not by itself a reason to enter the room…. *How* suspicious the circumstance need be to

set the statute of limitations running … will depend on how easy it is to obtain the

necessary proof by a diligent investigation aimed at confirming or dispelling the

suspicion." *Id.* at 1335 (emphasis in original).

Defendants make two arguments. First, defendants argue that the lengthened

statute of limitations period granted by Sarbanes-Oxley is not applicable, and rather a

shorter one-year/three-year statute of limitation applies to §§ 11, 12(a) and 15 violations

because they do not sound in fraud. Second, even if some other alleged wrongdoing

occurred, plaintiff's Complaint is untimely as not having been filed the earlier of five

years after the occurrence or two years after notice. The Seventh Circuit has stated that,

if a "plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may

plead itself out of court under a Rule 12(b)(6) analysis." *See Whirlpool Fin. Corp. v. GN*

*Holdings, Inc.,* 67 F.3d 605, 608 (7th Cir. 1995) (affirming district court's dismissal of

federal securities fraud claim on inquiry notice issue). Each of these arguments will be

addressed in turn.

### 1. Applicability of the Sarbanes-Oxley Act to the 1933 Act

Defendants have individually moved to dismiss all claims brought under the 1933 Act as time barred by the statue of limitations period contained in 15 U.S.C. § 77m ("§ 13"). Section 13 requires a claim to be

> brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability ... more than three years after the security was bona fide offered to the public, or ... more than three years after the sale.

15 U.S.C. § 77m.

In response, plaintiff contends that Section 804 of the Sarbanes-Oxley Act governs and that it had until the earlier of five years from the event or two years from the date of notice to bring their action. 28 U.S.C. § 1658(b). This raises the question of whether Sarbanes-Oxley applies to Section 11, 12(a)(2) and 15 claims, which the plaintiff properly asserts require only strict liability or negligence. (Am. Compl. ¶¶ 136, 147.)

"Interpretation of a statute must begin with the statute's language." *Mallard v. U.S. Dist. Court for So. Dist. of Iowa*, 490 U.S. 296, 300 (1989). A court may look beyond "the express language of a statute only where that statutory language is ambiguous or a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *Nauheim v. Interpublic Group of Cos. Inc.*, No. 02 C 9211, 2003 WL 1888843, at *3 (N.D. Ill. Apr. 16, 2003). The language of the statute itself, both in terms of the words used themselves and within the context of the statute, determines whether the meaning is plain or ambiguous. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). A court must endeavor to give effect to the plain language of the statute. *Mallard*, 490 U.S. at 300. Where there is no ambiguity in the statute, there is

"'no occasion to look to the legislative history.'" *T.D. v. LaGrange Sch. Dist. No. 102,*

349 F.3d 469, 482 (7th Cir. 2003) (quoting *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d

1022, 1032 (8th Cir. 2003)).

> The Sarbanes-Oxley Act provides:
>
> (b) Notwithstanding subsection (a), *a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance* in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of--
> > (1) 2 years after the discovery of the facts constituting the violation; or
> > (2) 5 years after such violation.

28 U.S.C. § 1658(b) (emphasis added).

While 15 U.S.C. § 78c(a)(47) provides:

> (47) The term "securities laws" means the Securities Act of 1933 (15 U.S.C. § 77a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), the Sarbanes-Oxley Act of 2002, the Public Utility Holding Company Act of 1935 (15 U.S.C. § 79a et seq.), the Trust Indenture Act of 1939 (15 U.S.C. § 77aaa et seq.), the Investment Company Act of 1940 (15 U.S.C. § 80a-1 et seq.), the Investment Advisers Act of 1940 (15 U.S.C. § 80b et seq.), and the Securities Investor Protection Act of 1970 (15 U.S.C. § 78aaa et seq.).

15 U.S.C. § 78c(a)(47).

While it is true that sections of the Securities Act of 1933 fall under Sarbanes-

Oxley, the plain language of the Sarbanes-Oxley Act only applies to claims including

"fraud, deceit, manipulation, or contrivance." 28 U.S.C. § 1658(b). It does not apply to

non-fraud based claims brought under the 1933 Act. While relatively few courts have

had opportunity to consider this question, each court has come to the same conclusion.

*See Friedman v. Rayovac Corp.,* 295 F. Supp. 2d 957, 975 (W.D. Wis. 2003); *In re*

*Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 265 (S.D.N.Y.

2003); *In re WorldCom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288 (DLC), 03 Civ. 6592, 2003 WL 22738546, at *9 (S.D.N.Y. Nov. 21, 2003). Hence, plaintiff's strict liability claims brought under Sections 11, 12(a)(2) and 15 claims of the 1933 Act are not covered by the Sarbanes-Oxley Act.[1]

Plaintiff's alternate contentions supporting its position are, likewise, without merit. Plaintiff's contention that Sarbanes-Oxley pertains to all sections of the Securities Act of 1933 and the Securities Exchange Act of 1934 because Congress failed to explicitly exclude any sections of either invites the Court to step into the role of legislator, which is inappropriate.

Plaintiff also contends that a more inclusive meaning must be given to the terms "manipulation" and "contrivance," such that they cover any "vehicle through which the fraud is achieved" whether falling under the definition of fraud or not. (Pl's Resp. Household's Mot. Dismiss at 48.) Plaintiff's reliance on case law and legislative history to support this position is also misplaced. In *Ernst & Ernst v. Hochfelder*, the Supreme Court distinguished between intentional and negligent behavior in the context of securities fraud. 425 U.S. 185, 199 (1976). In particular, the Court held that the "[u]se of the word 'manipulative' is especially significant. It is and was virtually a term of art

---

[1] To state a claim for violation of §§11, 12(a)(2) and 15, plaintiff need only allege that "material facts have been omitted" from a registration statement or "presented in such a way as to obscure or distort their significance." *Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir. 1991) (quotation omitted). These minimal proof requirements create extensive liability for issuers and those involved in the preparation and dissemination of the registration statements filed in the context of a public offering. *WorldCom,* 2003 WL 22738546, at *7. Section 11, 12(a)(2) and 15 claims, such as those alleged here, are not held to the heightened pleading standard required of fraud allegations by Rule 9(b) and PSLRA. *See In re WorldCom, Inc. Sec. Litig.,* 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003). Plaintiff clearly understands this because it has disavowed that its §§ 11, 12(a)(2) and 15 claims are anything other than strict liability or negligence claims. (Am. Compl. at ¶¶ 354, 383.)

when used in connection with securities markets. It connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Id.* Intent to deceive is a necessary element of "manipulation" or "contrivance," making these terms ones of scienter, not negligence or strict liability. BLACK'S LAW DICTIONARY 741, 846, 1081 (7th ed. 2000).

Plaintiff's attempt to bolster this position through reference to the legislative history of the Sarbanes-Oxley Act is not well founded. The argument presented is nearly identical to the one presented, and rejected, in *WorldCom.* *WorldCom,* 2003 WL 22738546, at *9. In *WorldCom* the court stated that the legislative record shows that while the senators involved were greatly concerned with contemporaneous business frauds, they had no intention of conflating fraud with strict liability or negligence. *WorldCom,* 2003 WL 22738546, at *8-9.

The Court holds that the language of 28 U.S.C. § 1658(b) is unambiguous and does not apply to strict liability or negligence claims. As a result, the one-year/three-year statute of limitations in Section 13 of the 1933 Act applies to §§ 11, 12(a)(2) and 15. 15 U.S.C. § 77m.


## 2. Timing of the Claims

Because the Amended Complaint arose from the consolidation of multiple suits, it is necessary to determine the date of the earliest original pleading. Rule 15 of the Federal Rules of Civil Procedure provides that an amended pleading relates back to the date of the original timely pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth

in the original pleading." Fed. R. Civ. P. 15(c)(2). The earliest of the consolidated suits was filed August 19, 2002, hence that is the correct date for calculating notice.

Plaintiff bases its Section 11, 12(a)(2) and 15 claims on various SEC filings and associated statements and publications. Count III is based on a June 1, 1998 Form S-4 Registration and Joint Proxy Statement-Prospectus. (Am. Compl. at ¶ 357.) Applying the one year/three year statute of limitations, there is some question as to when plaintiff should first have been on inquiry notice. Plaintiff cites both the letter to Aldinger and the publication of the Washington Report as key indications that something was possibly not right with Household's financials, providing the "suspicious circumstance." *Fujisawa*, 115 F.3d at 1335. But the ability to pursue a diligent inquiry also plays a role in determining when inquiry notice should have begun. *Id.* Plaintiff would like to argue that inquiry notice should not have begun until the release of the Restatement by Household on August 14, 2002 made the recalculations of profits and losses accessible to the public, all other meaningful data having been sealed by settlement agreements. However, to assume that would mean that inquiry notice would have arisen more than three years after the complained of violation, the filing of the S-4 Registration. Because Section 13 requires claims to be filed the earlier of three years after the occurrence or one year after plaintiff is on actual or constructive notice, three years after the alleged violation, June 30, 2001, is the earliest date in this case. 15 U.S.C. § 77m. As a result, the claims in Count III filed on August 19, 2002 against Household, Officer Defendants, Individual Defendants, Andersen, Goldman Sachs and Merrill Lynch are untimely.

Count IV is based on a series of Form S-3 debt registration statements. The dates of these SEC filings were on or about June 30, 1998, February 16, 1999, July 1, 1999,

March 24, 2000, September 13, 2000, February 23, 2001, May 3, 2001, November 20, 2001, December 18, 2001 and April 9, 2002. (Am. Compl. ¶ 384.) The same circumstances for inquiry notice apply for Count IV claims as the Count III claims. If the one year inquiry notice period could not have begun until the publication of the Restatement on August 14, 2002, the earliest Section 13 dates for the June 30, 1998, February 16, 1999, July 1, 1999, March 24, 2000 filings are three years after each filing, respectively June 30, 2001, February 16, 2002, July 1, 2002, March 24, 2003. The earliest Section 13 dates for the remainder of the filings, September 13, 2000, February 23, 2001, May 3, 2001, November 20, 2001, December 18, 2001 and April 9, 2002, is one year after inquiry notice should have begun, August 14, 2003, which plaintiff's August 19, 2002 filing satisfies. As a result, only the allegations arising out of the March 24, 2000, September 13, 2000, February 23, 2001, May 3, 2001, November 20, 2001, December 18, 2001 and April 9, 2002 Debt Registration Statements against Household, Officer Defendants, Individual Defendants and Andersen are timely.[2]

---

[2]Neither equitable tolling nor estoppel are appropriate in securities cases. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991); *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391 (7th Cir. 1990). The holdings in both cases have subsequently been modified with respect to retroactivity, but the tolling and estoppel holdings have been upheld. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 200-01 (1997); *Plaut v. Spendthrift Farm*, 514 U.S. 211, 217 (1995); *Lewis v. Long Grove Trading Co.*, 13 F.3d 1028, 1029 (7th Cir. 1994); *Cortes v. Gratkowski*, 795 F. Supp. 248, 249 (N.D. Ill. 1992); *Cont'l Assurance Co. v. Geothermal Res. Int'l, Inc.*, No. 89 C 8858 , 1991 WL 202378, at *2 (N.D. Ill. Sept. 30, 1991); *see also* ABA COMMITTEE ON FEDERAL REGULATION OF SECURITIES, REPORT OF THE TASK FORCE ON STATUTE OF LIMITATIONS FOR IMPLIED ACTIONS 645, 655 (1986) (advancing "the inescapable conclusion that Congress did not intend equitable tolling to apply in actions under the securities laws").

**B. Sufficiency of the Pleadings**

**1. §§ 11, 12(a) &15**

To establish a violation of § 11, plaintiff must prove that a defendant's registration statement "contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The statute sets forth five groups of people who may be liable for the misrepresentation: (1) anyone who signed the registration statement; (2) anyone who was a director or partner in the issuer at the time of the filing; (3) anyone who is named in the registration statement as being a director or partner; (4) anyone who has certified any part of the registration statement; and (5) any underwriter of the security. *Id.*

To establish a violation of § 12(a)(2), plaintiff must show that defendants offered or sold a security to the plaintiff by means of a prospectus or oral communication that was false or misleading with respect to material facts. 15 U.S.C. § 77l. Defendants may avoid liability by proving that plaintiff knew the statement was false when made. Additionally, under § 12(a)(2), a defendant is not liable if he or she can prove that he did not know and could not have reasonably discovered that the statement was false. *Friedman*, 295 F. Supp. 2d, 979.

Section 15 imposes liability on those who "control" persons liable under other provisions of the 1933 Act.

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as

such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77.

## 2. Standard of Pleading

Section 11, 12(a)(2) and 15 claims, such as those alleged here, are not held to the heightened pleading standard required of fraud allegations by Rule 9(b) and PSLRA. *See In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d at 423; *Friedman*, 295 F. Supp. 2d at 977. Plaintiff's allegations only need satisfy the liberal notice pleading requirements of Fed. R. Civ. P. 8. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). The complaint need not contain "all of the facts that will be necessary to prevail." *Id.* So long as the complaint gives defendant sufficient notice of the claim to file an answer, it "cannot be dismissed on the ground that it is conclusory or fails to allege facts." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

## 3. Materiality and Sufficiency

Defendants contend that plaintiff has insufficiently pleaded §§ 11 and 12(a)(2) claims by failing to establish that any of the SEC statements contained misstatements and by failing to show a traceable loss to plaintiff arising from any of the alleged misstatements.

A misstatement or omission is material if there is a substantial likelihood that the disclosure of the misstatement or omitted fact "would have been viewed by the

reasonable investor as having significantly altered the total mix of information."
*Friedman*, 295 F. Supp. 2d at 981 (citing *Basic, Inc.*, 485 U.S. at 231).

Defendants assert plaintiff failed to plead contemporary facts, relying instead on hindsight, something that is disallowed under PSLRA. (Household Mot. Dismiss at 39; Andersen Mot. Dismiss at 1.) As a result, defendants urge that no material misstatement or omission was made because plaintiff could not have construed any of the debt registrations statements as containing misstatements or omissions until later events transpired. (Household Mot. Dismiss at 39; Memo Supp. Andersen Mot. Dismiss at 11.)

However, plaintiff has pleaded sufficient facts to make a colorable inference that defendants did know, and failed to disclose, or misrepresented material information at the time the debt registration statements were filed with the SEC. Plaintiff alleges defendants made materially and deliberately false statements in SEC filing on September 13, 2000, February 23, 2001, May 3, 2001, November 20, 2001, December 18, 2001 and April 9, 2002. (Am. Compl. at ¶ 384.) Plaintiff alleges essentially the same grounds in each case, that the ratio of earnings to fixed charges was deliberately falsified. (*Id*. at ¶¶ 390-91.) Earnings were over reported and losses were not reported. The basis for plaintiff's statements about defendant Household's earnings are related primarily to Household's allegedly engaging in a variety of predatory lending schemes in order to conceal the true value of the loans held. (*Id*. at ¶¶ 51-54.) Plaintiff primarily cites details of lending settlements Household reached with a variety of State Attorneys General and bank regulators, exposure of Household's "Vision" system and practice of "reaging" loans by a Washington state investigation, and the publication of the Washington Report as

31

foundation. (*Id.* at ¶¶ 51-99, 110-24.) Plaintiff claims Household's 2002 $600 million restatement of earnings was the direct result of these activities. (*Id.* at ¶ 135.) Andersen's role in assisting Household with its regular accounting and management and, most importantly, its consent to the inclusion of its own statements about Household's financial status in the SEC statements at issue establish its culpability, according to plaintiff. (*Id.* at ¶¶ 171-79, 185-91, 388.)

Plaintiff's allegations are detailed and voluminous, more than sufficient to put defendants on notice. Accordingly, plaintiff's claims under the 1933 Act cannot be dismissed for failing to allege sufficient facts.

Defendants further allege that members of the class did not have losses as the result of the activities plaintiff complains of, hence plaintiff has no grounds for complaint. (Household Mot. Dismiss at 43.) Defendants argue that if disclosure of negative information does not "move the market" (that is, if the price of shares does not go down), the omission is immaterial as a matter of law. However, there may be reasons unrelated to the restatement that initially insulated the stock price from adverse effects. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir.), *cert. denied*, 124 S. Ct. 433 (2003) (concluding that information was material even though disclosure had no immediate effect on market price); *see also Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) ("[I]t is well-established that a material fact need not be outcome-determinative.").

This Court cannot conclude as a matter of law that defendants' alleged omissions and misstatements were immaterial. Assuming the truth of plaintiff's allegations as the

Court must, there is a colorable argument that a reasonable investor would view the defendants' actions as material, which is all that is required. Therefore, plaintiff has sufficiently pleaded Section 11 and 12(a)(2) claims to raise questions of fact and to place defendants on notice. As a result, these claims cannot be dismissed.

### 4. Predicate Claims

Defendants also urge that no § 15 violation can be alleged without first establishing a predicate violation. (Household Mot. Dismiss at 44.) And, that even if such is found, the group pleading doctrine is no longer good law, thereby limiting the individuals who can be considered "control" personnel. (*Id.* at 45.) The purpose of a complaint is to plead allegations, not to prove them. Plaintiff has sufficiently pleaded Section 11 and 12(a)(2) allegations. As a result, there is no bar to plaintiff likewise pleading a Section 15 allegation.

As for the group pleading doctrine, "[t]he Seventh Circuit has not ruled on the applicability of the group pleading doctrine following the enactment of the PSLRA." *Tricontinental*, 215 F. Supp. 2d at 947. This Court, as well as others in the district, continue to recognize it. *Fishman*, 2003 WL 444223, at *6; *Friedman*, 295 F. Supp. 2d at 991-93. As a result, plaintiff's Section 15 claims cannot be dismissed.

### C. Conclusion

As a result of the foregoing, Count III is dismissed for untimeliness. The motions to dismiss Count IV is granted with regard to the June 30, 2001, February 2002, July

2002 SEC Debt Registration Statements, but denied with regard to the March 2000, September 2000, February 2001, May 2001, November 2001, December 2001 and April 2002 SEC Debt Registration Statements.

### III. Andersen's Motion to Strike

Defendant Andersen has moved to strike paragraphs 180 and 181 of the Amended Complaint as prejudicial and irrelevant. (Andersen Mot. to Strike at 1.) Andersen brings this motion pursuant to Rule 12(f). Rule 12(f) provides that "upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and usually denied. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000). Courts will strike portions of a complaint if the challenged allegations are so unrelated to the present claims as to be void of merit and unworthy of consideration and if the allegations are unduly prejudicial. *Kies v. City of Aurora*, 149 F. Supp. 2d 421, 427 (N.D. Ill. 2001); *Robinson v. City of Harvey*, No. 99 C 3696, 1999 WL 617655, at *1-2 (N.D. Ill. Aug. 11, 1999). "Prejudice results when the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Cumis Ins. Soc'y Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

Andersen questions whether material from other litigation and accounting scandals cited by plaintiff is discoverable for the purposes of this litigation. It also asserts

that material contained in paragraphs 180 and 181 is misleading, inflammatory, inaccurate, prejudicial and irrelevant. Andersen does little to convince this court to strike these paragraphs. Whether any particular allegation is admissible will be dealt with more appropriately at a later time. The motion to strike is denied.

## CONCLUSION

For the reasons set forth above, the Court denies Household, Household Officers, and Andersen's motion to dismiss Count I [88-1, 94-1, 97-1]; denies Household and Household Officers' motion to dismiss Count II [88-1]; grants Household, Household Officers, Household Directors, Andersen, Goldman Sachs, and Merrill Lynch's motions to dismiss Count III [88-1, 94-1, 95-1, 97-1]; grants in part and denies in part Household, Household Directors, and Andersen's motions to dismiss Count IV [88-1, 94-1, 97-1] and denies Andersen's motion to strike [93-1]. Goldman Sachs and Merrill Lynch are hereby terminated as parties.

**SO ORDERED**

ENTERED: 3/19/04

HON. RONALD A. GUZMAN
**United States Judge**