G J

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HOUSEHOLD INTERNATIONAL, INC., et al. <br><br> Defendants. | Case No. 02 C 5893 <br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

This securities class action is before the Court on Lead Plaintiffs' Motion for Protective Order Quashing the Household Defendants' Third-Party Subpoenas. The Household Defendants and Defendant Arthur Andersen LLP ("Andersen") oppose the motion. For the reasons that follow, the Court finds that Lead Plaintiffs have shown good cause for the entry of the requested protective order, and Lead Plaintiffs' Motion is granted.

## BACKGROUND

This class action is brought by plaintiffs on behalf of all persons who purchased or otherwise acquired the securities of Household International, Inc. ("Household") between October 23, 1997 and October 11, 2002 ("Class Period"). The [Corrected] Amended Consolidated Class Action Complaint alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and §§ 11, 12(a)(2), and/or 15 of the Securities Act of 1933. The class has been certified with respect to claims brought pursuant to §§10 and 20 of the Securities Exchange Act of 1934 and the Securities and Exchange Commission Rules promulgated thereunder. PACE Industry Union-Management

Pension Fund ("PACE") and two other institutions are Class Representatives.

Plaintiffs allege that during the Class Period, Household and its officers William Aldinger, David Schoenholz and Gary Gilmer (i) engaged in the widespread abuse of their customers through a variety of illegal sales practices and improper lending techniques; (ii) improperly "reaged" or "restructured" delinquent accounts to manipulate Household's publicly reported financial statistics and give the appearance that the credit quality of Household's borrowers was more favorable than it was in reality; and (iii) manipulated the manner in which Household accounted for costs associated with its co-branding, affinity and marketing agreements resulting in a restatement of Household's financial results going back to 1994. Plaintiffs further allege that Household raised over $75 billion during the Class Period through a series of debt offerings conducted through its wholly owned subsidiary, Household Finance Corporation. Plaintiffs contend that the Debt Registration Statements filed with the Securities and Exchange Commission in support of these offerings contained false statements regarding Household's financial results and operations. Plaintiffs additionally allege that during the Class Period, Andersen, Household's auditor, actively participated in the issuance of Household's false financial statements by performing audits of the financial statements and reviewing interim financial information included in Household's SEC filings as well as in Registration Statements, and by reporting on those financial statements. The Household Defendants and Andersen deny the allegations.

## DISCUSSION

The Household Defendants served subpoenas on 14 current and former investment advisors and administrators of PACE seeking documents related to investments in Household, Inc., Beneficial Corporation, and HSBC Holdings, plc securities on behalf of PACE from January 1, 1997 to

December 31, 2003. Three of the subpoenas also requested deposition testimony. Household has withdrawn the subpoenas for Shields Associates, Thompson Financial, and Highland Capital Management. Eleven subpoenas remain outstanding. The Lead Plaintiffs object to the subpoena requests as irrelevant to common issues concerning the class and seek a protective order quashing the third-party subpoenas. A dispute has also arisen regarding the sequencing of discovery. Plaintiffs seek to limit initial discovery to class-wide liability issues until the liability stage has been completed. The Household Defendants and Andersen oppose delaying the discovery sought by the subpoenas.[1]

Federal Rule of Civil Procedure 26(b)(1) prescribes the scope of matters upon which a party may seek discovery. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 26(c) provides, however, "for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) that the disclosure or discovery not be had [or] (2) that the disclosure or discovery may be had only on specified terms and conditions . . . ." Trial courts have broad discretion in resolving matters relating to discovery. Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002).

---

[1] Andersen complains that Lead Plaintiffs violated Local 37.2 by failing to confer with it prior to seeking court intervention. Because the Court has considered the merits of Andersen's Response and it has suffered no prejudice from the alleged violation of the meet and confer obligation, the Court exercises its discretion to excuse compliance with Local Rule 37.2. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir.1995) (stating "decision whether to apply [a local] rule strictly or to overlook any transgression is one left to the district court's discretion.").

The Household Defendants argue that the information they seek regarding PACE's investment history is relevant to the merits of Plaintiffs' claims. To establish a violation of Section 10(b) and Rule 10b-5 promulgated thereunder, a plaintiff must show that (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately cause the plaintiff's damages. Jaffe v. Household, 2004 WL 574665, at *5 (N.D. Ill. March 22, 2004). "[R]eliance is an element of a Rule 10b-5 cause of action. Reliance provides the requisite casual connection between a defendant's misrepresentation and a plaintiff's injury." Basic Inc. v. Levinson, 485 U.S. 224, 243 (1988) (internal citations omitted).

Plaintiffs are pursuing a fraud on the market theory under which they can satisfy the reliance element of securities fraud without proving direct reliance on false representations. The fraud on the market theory allows plaintiffs to establish a class-wide rebuttable presumption of reliance on Household's alleged misrepresentations. The Supreme Court has described the fraud on the market theory as follows:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if purchasers do not rely on the misstatements . . . . The casual connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

Basic, 485 U.S. at 241-42. Basic held that "[b]ecause most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." Id. at 247. Basic also recognized that the fraud on the market theory is critical to the class certification issue in securities fraud class actions.

"Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones." Id. at 242.

The presumption may be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price . . . . ." Basic, 485 U.S. at 248. Although it preceded Basic, Blackie v. Barrack, 524 F.2d 891, 906 (9th Cir. 1975), outlined four ways that a defendant can rebut the presumption of reliance: (1) disproving materiality; (2) despite materiality, showing an insufficient number of traders relied to inflate the price; (3) showing that an individual plaintiff purchased despite knowledge of the falsity of a representation; or (4) showing that an individual plaintiff would have purchased anyway had he known of the falsity of the representation.

The Household Defendants apparently contend that the discovery they seek regarding a single class representative's investment history is relevant to rebutting the fraud on the market theory as to the class as a whole. The Household Defendants argue: "If PACE's claim has a defect for want of proving reliance, then not only does PACE's claim fail, but defendants will argue that the class that PACE represents cannot rely on the fraud on the market theory." Defs' Opp. at 10. The Household Defendants cite one case, Easton & Co. v. Mut. Ben. Life Ins. Co., 1994 WL 248172, at *4 (D.N.J. May 18, 1994), in support of their argument that "courts have recognized that defendants can defeat the fraud on the market theory of reliance on a *class wide basis* by showing that many of the class members did not rely on the integrity of the market in purchasing and selling the securities

in question." Defs' Opp. at 10.[2] Although Easton held that the defendants were entitled to propound written discovery seeking prior investment history, among other things, on all absent class members in a securities fraud case, it is inapposite to the circumstances present here. The classes in Easton consisted of only 160 members, in sharp contrast to the hundreds of thousands of class members here.[3] In an Easton situation, it might be possible that "if the discovery shows that a significant number of class members who were purchasers in the market had information . . . , it would tend to prove that the market was not defrauded, and thus the benefit of the 'fraud on the market' presumption would be unavailable on a common basis to any of the class members." Easton, 1994 WL 248172, at *4.

Though there may be circumstances when discovery into a single plaintiff's investment history is appropriate after class certification and before a determination of class-wide liability, the Court believes this is not such a situation. The Court finds the In re Lucent Technologies Inc. Sec. Litig., 2002 U.S. Dist. LEXIS 8799 (D.N.J. May 7, 2002), decision cited by Lead Plaintiffs persuasive. In Lucent, the defendants sought discovery of documents concerning the investment history of the 41 named plaintiffs. The Lucent defendants argued that discovery of the investment

---

[2] The Household Defendants' assertion that they can rebut the presumption on a class-wide basis by showing that "many" of the class members did not rely on the integrity of the market in purchasing and selling the securities at issue seems inconsistent with their assurance that they merely seek discovery from the investment advisors of one of the plaintiffs and they will not seek discovery from the hundreds of thousands of absent Class members. The Household Defendants do not adequately explain how they can rebut the presumption of fraud on the market on a class-wide basis without seeking discovery of investment histories from every single plaintiff or a sufficient number of them.

[3] Plaintiffs' Memorandum in Support of Their Motion for Class Certification states: "While the exact number of Class members cannot be determined until after the completion of discovery, there are in all likelihood hundreds of thousands, if not more, of members in the proposed Class . . . ." Pls' Memo. at 10-11.

history and background of all named plaintiffs was necessary to rebut the fraud on the market theory. The Court rejected defendants' argument and agreed with plaintiffs' position that the investment behavior of a handful of plaintiffs "cannot shed any light on the overall issue of liability, in particular on whether the entire class acted in reliance on the market price of Lucent stock." Id., at *4. The Lucent court held that "discovery as to the investment behavior of the 41 named, non-lead plaintiffs is not . . . probative of the question of class-wide reliance on the market." Id. Because "[c]onclusions drawn from the experience of this handful of named parties cannot be extrapolated to represent the experience of a class of hundreds of thousands of individuals of which the putative class is comprised," defendants' motion was denied. Id. at 6. The court concluded that the discovery sought by defendants "may be appropriate at a later stage in the case . . . once the matter of liability has been adjudicated." Id. The Lucent court explicitly distinguished Easton noting that in that case "[t]he small class size established a strong possibility that discovery of individual class members would be probative of the overall class experience," but found that the 41 non-representative named plaintiffs in Lucent could not fulfill the same purpose as to a class of thousands. In re Lucent, 2002 U.S. Dist. LEXIS 8799, at *5-6.[4]

Similarly, discovery of PACE's investment history is irrelevant to any class-wide liability issues and thus, not essential at this time.[5] Given Plaintiffs' reliance on the fraud on the market

---

[4] In addition, the Easton case is distinguished from the present case in that it involved a state law claim for negligent misrepresentation which required a showing of actual reliance by the plaintiffs. Easton, 1994 WL 248172, at *4. No state law claims have been alleged here.

[5] The Lead Plaintiffs recognize that discovery related to PACE's investment decisions may be relevant but contend that discovery should initially be limited to class-wide liability issues. See Plaintiff's Mo. at 6-7 (stating "discovery of information related to PACE's investment decisions and those of its investment advisors might, in theory, give rise to a defense against PACE, such discovery will not further *any* defense against the Class as a whole, and, if allowed, will only distract

-7-

theory, resolution of individualized reliance issues is not necessary to establishing class-wide liability. Significantly, the Household Defendants have failed to cite any case indicating that even if reliance is rebutted as to a single plaintiff, it necessarily invalidates the class-wide presumption. See 7 Alba Conte and Herbert B. Newberg, Newberg on Class Actions, §22.61, at 285 (4th ed. 2002) (stating "a rebuttal of reliance by a particular class member must necessarily be on an individual basis because there can be no class presumption of nonreliance.").

The remainder of the cases cited by the Household Defendants do not compel the conclusion that discovery into PACE's investment history and decision-making is appropriate or necessary at this stage of the proceedings. Except the In re Grossman v. Waste Mgmt., Inc., 589 F.Supp. 395 (N.D. Ill 1984) case, all of the cases cited by the Household Defendants are pre-class certification cases focusing in part on the use of a plaintiff's investment history to challenge the adequacy or typicality to represent the class. See In re SciMed Life Sec. Litig.,1992 WL 413867 (D. Minn. Nov. 20, 1992); In re Grand Casinos, Inc. Sec. Litig., 181 F.R.D. 615 (D. Minn. 1988); Roseman Profit Sharing Plan v. Sports & Recreation, 165 F.R.D. 108 (M.D. Fla. 1996); In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109 (S.D.N.Y. 1993); Feldman v. Motorola, Inc., 1992 WL 137163 (N.D. Ill. June 10, 1992). The Court finds these pre-class certification cases not particularly helpful because a class has been stipulated to and certified by the district court in this case. Adequacy and typicality for class certification purposes are not at issue.[6]

---

from litigation on the primary issues in this case.").

[6] Additionally, In re SciMed Life Sec. Litig. and In re Harcourt Brach Jovanovich, Inc. Sec. Litig. are distinguishable from the present case because the former case involved state law claims of fraud and negligent misrepresentation which required a showing of actual reliance and the later case involved a claim of direct reliance on the defendants' misrepresentations and omissions as well as fraud on the market theory. In re SciMed Life Sec. Litig., 1992 WL 413867, at *3; In re Harcourt

-8-

Finally, the Court finds that the most efficient and expeditious manner of managing this litigation is to delay discovery into individualized issues until after class-wide liability has been determined. The Federal Rules of Civil Procedure and the court's inherent power provide the trial court with broad authority to control the discovery process. See Federal Judicial Center, Manual for Complex Litigation §11.422 (4th 2004); see also Cowen v. Bank United of Texas, 70 F.3d 937, 944 (7th Cir. 1995) (noting that controlling the pace and scope of discovery is a matter of case management and is within the district judge's discretion). Moreover, District Judge Guzman has referred this case to this Court for discovery supervision.

Under the circumstances presented here, bifurcating discovery regarding class liability issues and discovery regarding individualized reliance issues is the most orderly, efficient, and economical way to proceed. See 7 Alba Conte and Herbert Newberg, Newberg on Class Actions § 22:61 (4th ed. 2002) (noting that in securities fraud action "rebuttal of individual reliance ... may be resolved after trial on common issues"). "[J]udicial economy is better served by a focus upon the materiality of the challenged representations or omissions rather than on individual reliance, in a realm when the harm to the shareholder is a product of the injury to the market by the defendant's practices." Id. Moreover, numerous courts have recognized that individualized issues of reliance may be adjudicated after class-wide issues have been determined. Lucent, 2002 U.S. Dist. LEXIS 8799, at *6 (stating "[t]he discovery sought by Lucent instead may be appropriate at a later stage in the case,

---

Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. at 112. Grossman is also unhelpful because it was rendered in the context of ruling on summary judgment motions as to the each of three named plaintiffs in a securities fraud action and provides no insight into whether discovery of a single class representative's investment history is relevant to rebutting the classwide presumption of reliance or whether such discovery makes sense at this stage of the proceedings for purposes of efficiently managing this litigation.

in which individualized rebuttal proceedings may be pursued to determine whether a claimant may recover, once the matter of liability has been adjudicated."); Eisenberg v. Ganon, 766 F.2d 770, 786 (3d Cir. 1985) (recognizing that individual questions as to reliance exist in every 10b-5 action, and rather than eliminate securities actions, "it would be more efficient to order separate trials, if necessary, limited to the issue of reliance."); In re Laser Arms Corp. Sec. Litig., 794 F.Supp. 475, 495 (S.D. N.Y. 1989) (after holding that individual issues of reliance did not predominate and defeat class certification, the court stated that, "[i]f at a later stage of the proceedings the Court determines that the fraud on the market theory is not applicable because [the company's] securities did not trade in an efficient market, the Court could simply order separate hearings on the reliance issue."); Biben v. Card, 789 F.Supp. 1001, 1003 (W.D. Mo. 1992) (holding first phase of the trial would address liability, the true value of the share, and possibly issues of class-wide rebuttal and the second proceeding will determine individual class member's damages and hear any evidence rebutting the presumption of reliance as to each class member). The Biben court noted that discovery of information for purposes of rebutting the fraud on the market theory as to individual class members "need not occur until after liability is established." Biden, 789 F.Supp. at 1004 n.1. This Court also finds nothing prejudicial about the reservation of the reliance issue until after a determination of class-wide liability, if necessary. Because the Household Defendants have not shown how information regarding PACE's investment history can rebut the class-wide presumption of reliance, the Court concludes that their need for this discovery at this time is outweighed by the burden imposed on the third-parties and the Class.

## CONCLUSION

Lead Plaintiffs' Motion for Protective Order Quashing the Household Defendants' Third-Party Subpoenas is granted. The third-party subpoenas are quashed without prejudice to reassertion, if necessary, after a determination of class-wide liability. Defendants are prohibited from pursuing discovery related to individual claims and defenses until after class-wide liability has been determined. Because the Court has granted Lead Plaintiffs' motion, it need not determine the proper scope of the subpoenas at this time.

E N T E R:

*Nan R. Nolan*

Nan R. Nolan
United States Magistrate Judge

Dated: April 18, 2005