UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOUSEHOLD INTERNATIONAL, INC., et al.,<br><br>Defendants. | No. 02 C 5893<br><br>Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have filed this securities fraud class action alleging that Defendants Household International, Inc. and Household Finance Corporation ("Household") engaged in predatory lending practices between July 30, 1999 and October 11, 2002 (the "Class Period"). Arthur Andersen LLP ("Andersen"), Household's outside auditor, was originally named as a defendant in the lawsuit but was dismissed on April 6, 2006 pursuant to a stipulated settlement agreement with Plaintiffs. (Final Judgment and Order of Dismissal, Doc. 485.) On April 27, 2006, Andersen moved for the return of certain privileged documents that were inadvertently produced to Plaintiffs during discovery. Plaintiffs dispute that the documents are privileged and have filed a cross-motion to compel production of certain additional and purportedly related documents that are set forth on Exhibit A to the cross-motion and/or responsive to Request Nos. 17 and 18 of the Class' [Corrected] Third Request for Production of Documents. For the reasons set forth here, Andersen's motion is granted and Plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs filed this lawsuit nearly four years ago on August 19, 2002. During the course of lengthy discovery, Household and its outside auditors have produced more than four million pages of documents. Included in that production were the following categories of documents produced

by Andersen: (1) opinion letters summarizing pending and threatened litigation against Household and its subsidiaries, written by Kenneth H. Robin, Household's Senior Vice President, General Counsel, to Andersen ("Opinion Letters"); (2) internal Andersen Memos to File, based largely on the contents of the Opinion Letters and discussions with Robin and Mark Leopold, Household's Assistant General Counsel at the time; and (3) draft and final internal Household letters, written by and/or to internal Household counsel, requesting and detailing the process for creating the Opinion Letters. Andersen and Household claim that these privileged documents were produced in error and should be returned. Plaintiffs dispute that the documents constitute protected work-product, characterizing them instead as business records prepared in the ordinary course of auditing Household's financial statements. Plaintiffs also move to compel the production of (1) documents listed on Exhibit A to their cross-motion, which Household has withheld on the grounds of privilege, and (2) responses to the Class' Third Document Request Nos. 17 and 18, relating to a litigation database maintained by Household, and to the establishment and amounts of litigation reserves.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) prescribes the scope of matters upon which a party may seek discovery. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). A document may be protected by the work-product privilege if it is created by an attorney "in anticipation of litigation." FED. R. CIV. P. 26(b)(3); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996). An assertion of work-product privilege may be overcome upon a showing of "substantial need" and "undue hardship," but the courts are cautioned to give even greater protection to attorney opinions which include mental impressions, conclusions, or legal theories concerning prospective litigation. *Logan*, 96 F.3d at 976 n.4 (stating FED. R. CIV.

2

P. 26(b)(3) "expressly admonishes courts to give even greater protection against disclosure of opinion work product, meaning 'the mental impressions, conclusion, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'")

Defendants argue that the audit letters at issue here[1] constitute work product because they were prepared "because of" pending or threatened litigation, and that the disclosure of those documents to Andersen did not effect a waiver of the privilege. Defendants also argue that the documents responsive to Third Request Nos. 17 and 18 constitute work product because they reveal attorneys' mental impressions, conclusions, opinions, and evaluations regarding outstanding lawsuits and any necessary litigation reserves. The court addresses each argument in turn.

I.  **Audit Letters**

   A.  **Work Product**

The parties first dispute whether the audit letters were prepared "in anticipation of litigation" as required for work product protection. Plaintiffs insist that for the doctrine to apply, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (quoting *Janicker by Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)). The Fifth Circuit adopted this formulation in *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), in which a large public corporation sought to shield documents that analyzed prospective liabilities that might result from litigation with the IRS over its tax returns. *Id.* at 533. The court held that the primary motivating force behind the creation of the documents was "not to

---

[1] The documents identified on Exhibit A to Plaintiffs' cross-motion to compel are largely draft or final versions of the audit letters produced by Andersen, and were written by Kenneth Robin to either Andersen or KPMG. One document, No. 46, is a letter from Steven McDonald, Household's Controller, to Mr. Robin requesting that Mr. Robin draft an audit letter for Andersen. (Def. Reply, at 1 n.1.) The court refers to all of these documents as the "audit letters" or "Opinion Letters" and addresses them jointly. The court will address separately the documents at issue in Third Request Nos. 17 and 18.

3

ready El Paso for litigation" but "to bring its financial books into conformity with generally accepted auditing principles." *Id.* at 543. The liability analysis contained in the documents was "only a means to a business end" and, thus, the documents were not prepared "in anticipation of litigation" and were not protected by the work product privilege. *Id. See also United States v. Gulf Oil Corp.*, 760 F.2d 292, 296-97 (Temp.Emer.Ct.App. 1985) (Fifth Circuit judge writing for the Temporary Emergency Court of Appeals applied the *El Paso* requirement that a document must be prepared to aid in litigation to be protected work product).

Other circuits, however, have rejected this formulation as contrary to the text and policies of Rule 26(b)(3). In *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), for example, the Second Circuit noted that "[t]he text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial." *Id.* at 1198. In the Second Circuit's view, "work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision." *Id.* at 1199. By way of example, the court offered the following scenario:

> A business entity prepares financial statements to assist its executives, stockholders, prospective investors, business partners, and others in evaluating future courses of action. Financial statements include reserves for projected litigation. The company's independent auditor requests a memorandum prepared by the company's attorneys estimating the likelihood of success in litigation and an accompanying analysis of the company's legal strategies and options to assist it in estimating what should be reserved for litigation losses.

*Id.* at 1200. The court saw "no basis for adopting a test under which an attorney's assessment of the likely outcome of litigation is freely available to his litigation adversary merely because the document was created for a business purpose rather than for litigation assistance." *Id.* Rather, a document should be eligible for work product protection if it was prepared or obtained "because of the prospect of litigation." *Id.* at 1202 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 FEDERAL PRACTICE & PROCEDURE § 2024, at 343 (1994)). *See also National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) ("The document must

4

be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.") (emphasis in original).

Plaintiffs note that a New York district court reached a contrary result in *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002). The defendant in *Medinol* engaged counsel to investigate certain unspecified practices by high-ranking employees and to report about that investigation to a Special Litigation Committee of the board of directors. Minutes taken during those board meetings were shared with the company's outside auditor in connection with its audit of the company's litigation exposures. *Id.* at 114. The court declined to find that the minutes constituted work product, noting that the company was required to open its books and records to an independent auditor to comply with federal securities laws. *Id.* at 115. In conducting the audit, moreover, the independent auditor "must come to his own understanding of reasonableness, based on the evidence" and "*must* not share common interests with the company they audit." *Id.* at 116 (emphasis in original). Thus, disclosure to the auditor "did not . . . serve the privacy interests that the work product doctrine was intended to protect." *Id.* at 117.

It appears that the *Medinol* court is the only one in its jurisdiction to take this position. In *American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc. v. Alcoa Steamship Co.*, No. 04 Civ. 4309 LAKJCF, 2006 WL 278131 (S.D.N.Y. Feb. 2, 2006), for example, a New York district court declined to follow *Medinol* as contrary to the Second Circuit's ruling in *Adlman*. *Id.* at *2. The *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293 (S.D.N.Y. 2003) court similarly relied on *Adlman* to hold that "Honeywell's assertion of work product protection for its audit letters and litigation reports prepared by its internal and external counsel, as well as PWC [PriceWaterhouseCoopers] documents memorializing Honeywell's opinion work product, is proper." *Id.* at 300.

5

The Seventh Circuit has not directly decided whether audit letters constitute work product, but it has stated that in assessing whether documents are entitled to the privilege, "we look to whether in light of the factual context 'the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'" *Logan*, 96 F.3d at 976-77 (quoting *Binks*, 709 F.2d at 1119) (emphasis in original). *See also National Jockey Club v. Ganassi*, No. 04 C 3743, 2006 WL 733549, at *1 (N.D. Ill. Mar. 22, 2006). In *Tronitech, Inc. v. NCR Corp.*, 108 F.R.D. 655 (S.D. Ind. 1985), an Indiana district court held that an audit letter containing a company attorney's legal opinion concerning the financial implications of a lawsuit and prepared at the request of the company's accounting firm was entitled to work product protection. *Id.* at 655. The court explained that an audit letter "arises only in the event of litigation. It is prepared because of the litigation, and it is comprised of the sum total of the attorney's conclusions and legal theories concerning that litigation." *Id.* at 656. In reaching this conclusion, the court found *El Paso* distinguishable because it was not necessary for the defendant in that case to consult an attorney to prepare the tax analysis at issue. *Id.* at 656-57. The court also rejected the reasoning of *Gulf Oil* as contrary to the principles and purposes underlying the work product doctrine. *Id.* at 657. *See also Southern Scrap Material Co. v. Fleming*, No. Civ.A. 01-2554, 2003 WL 21474516, at *9 (E.D. La. June 18, 2003) (audit letters were "attorney work product of the opinion/mental impression/litigation strategy genre.")

This court agrees that documents are protected by the work product privilege if they were prepared or obtained "because of" the prospect of litigation. In the court's view, the position set forth in *El Paso*, *Gulf Oil*, and *Medinol* that the primary motivating purpose for creating the document must be to "aid in litigation" is overly narrow and contrary to the principles underlying the work product doctrine. *See Tronitech*, 108 F.R.D. at 657; *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 514 (N.D. Ill. 2005) ("The standard . . . that the documents must be 'created principally or exclusively to assist in contemplated litigation' is . . . not the applicable legal standard in the

6

Seventh Circuit.") Plaintiffs are correct that documents created in the ordinary course of business do not qualify for protection. *See, e.g., Adlman*, 134 F.3d at 1202 (the "because of" formulation "withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00 C 2855, 2001 WL 1397876, at *2 (N.D. Ill. Nov. 6, 2001) ("[D]ocuments created in the ordinary course of business . . . cannot be withheld as work product.") The audit letters at issue here, however, are not mere business documents.

In *Logan*, the Seventh Circuit distinguished between investigative reports developed by insurance companies in the ordinary course of business as a precaution for the "remote prospect of litigation," and documents prepared because "some articulable claim, likely to lead to litigation . . . ha[s] arisen." 96 F.3d at 977 (quoting *Binks*, 709 F.2d at 1120). The attorney Opinion Letters in this case were not prepared due to some remote possibility of litigation but, rather, summarize pending and actually threatened litigation. Relying on *Medinol*, Plaintiffs make much of the fact that public companies are required to file financial statements that comply with generally accepted accounting principles and SEC regulations, including disclosures regarding possible losses to the company such as pending or threatened litigation. (Pl. Resp., at 5-6.) Plaintiffs insist that "[t]he documents at issue here were created 'pursuant to public requirements unrelated to litigation,' and in fact, would have been created regardless of litigation." (*Id.* at 7 (citing FED. R. CIV. P. 26(b)(3), Adv. Comm. notes.) The court disagrees. In the absence of any pending or threatened litigation, Household's counsel would have had no need to advise Andersen regarding such non-existent matters. Thus, the Opinion Letters were prepared "because of" pending or threatened litigation and are protected by the work product doctrine.

Plaintiffs attempt to avoid this conclusion by arguing that the Opinion Letters are "dual-purpose documents." (Pl. Reply, at 3 (citing *United States v. Frederick*, 182 F.3d 496 (7th Cir. 1999).) In *Frederick*, the defendant was an accountant and lawyer who declined to produce to the

7

Internal Revenue Service worksheets he had drafted in preparing certain clients' tax returns. *Id.* at 499. The Seventh Circuit held that even though the clients were under investigation from the IRS, the tax worksheets were not entitled to work product protection merely because a lawyer prepared them. As the court explained, "a dual-purpose document – a document prepared for use in preparing tax returns *and* for use in litigation – is not privileged; otherwise, people in or contemplating litigation would be able to invoke, in effect, an accountant's privilege, provided that they used their lawyer to fill out their tax returns." *Id.* at 501 (emphasis in original). The court finds *Frederick* distinguishable in that Household is not attempting to shield its tax returns as work product. More importantly, unlike tax returns which may be prepared by a non-lawyer, only an attorney could have drafted the legal Opinion Letters evaluating the pending and threatened litigation against Household. *Cf. Frederick*, 182 F.3d at 501 (people "should not be permitted, by using a lawyer in lieu of another form of tax preparer, to obtain greater confidentiality than other taxpayers.")

Nor does this case involve a request for routine investigative or evaluative reports prepared in the ordinary course of business. *Cf. Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 661 (S.D. Ind. 1991) ("Even after litigation is justifiably anticipated, routine or ordinary investigations or reports are not work product and may be obtained as normal discovery without a special showing of need."); *SmithKline Beecham*, 2001 WL 1397876, at *4 (documents were not created for litigation where the company "was required, for purely business reasons, to research the composition and properties of the paroxetine hydrochloride capsules for which it submitted an Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration.") As noted, without the pending and threatened litigation, there would be no Opinion Letters. *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000) (a document "analyzing the likely outcome of . . . litigation . . . does not lose protection merely because it is also created in order to assist with a business decision."); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763,

8

768 (7th Cir. 2006) (work product privilege applied to "lawyer's thoughts about a potential suit against the company, [includ]ing some of the strengths and weaknesses of the company's case.")

The court similarly rejects Plaintiffs' assertion that documents are protected by the work product doctrine only if they were created for use against the party seeking their production. (Pl. Reply, at 7 (citing *Mattenson*, 438 F.3d at 767-68.) The *Mattenson* court did state that "[t]he work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party." The court did not address, however, whether the privilege extends to other litigation as well. One district court found that it does not, limiting the privilege to "documents prepared in contemplation of the present litigation." *Ferguson v. Lurie*, 139 F.R.D. 362, 368 (N.D. Ill. 1991). More recently, however, courts have adopted the "emerging majority view" that "the work product privilege does extend to subsequent litigation." *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 286 (N.D. Ill. 1997). See also *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (noting that "[a] majority of courts have held . . . that the privilege endures after termination of the proceedings for which the documents were created.") The court finds that the purpose behind the work product doctrine is best served by the majority approach.

Plaintiffs finally argue that these Opinion Letters do not in fact disclose any legal theories or strategies. In Plaintiffs' view, the letters merely list and describe the nature and background of the litigation, summarize the procedural history, and state the outcome of the matter. (Pl. Resp., at 9.) Having reviewed the letters *in camera*, the court rejects Plaintiffs' assertion that they do not disclose legal strategies or opinions. The attorney clearly exercised judgment in assessing the potential liability for each case and in determining which matters and information to include in the report. The mere fact that the Opinion Letters contain some factual information as well is not sufficient to exclude them from the purview of the work product doctrine.[2] See, e.g., *U.S. ex rel.*

---

[2] To the extent the Opinion Letters contain some "fact" as opposed to "opinion" work product, the court notes that Plaintiffs have not demonstrated either "a substantial need for the

9

*Yannacopoulos v. General Dynamics*, ___ F.R.D. ___, 2006 WL 1523119, at *3 (N.D. Ill. June 1, 2006) (noting that there are two kinds of work product under Rule 26(b)(3) – "fact" and "opinion.")

### B. Waiver

Plaintiffs argue that Defendants have nonetheless waived the privilege by disclosing the documents to Andersen. It is well-established that the work product privilege may be waived by disclosures to third parties "in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003) (quoting *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237 (N.D. Ill. 2000)). Plaintiffs again rely on *Medinol* for the proposition that independent auditors necessarily have interests that are adverse to their clients because they perform a "public watchdog" function and must reach their own understanding of reasonableness, based on the evidence. 214 F.R.D. at 114. *See also United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984) (the independent auditor assumes a "public watchdog" function that "demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.")

In the court's view, the fact that an independent auditor must remain independent from the company it audits does not establish that the auditor also has an adversarial relationship with the client as contemplated by the work product doctrine. Disclosing documents to an auditor does not substantially increase the opportunity for potential adversaries to obtain the information. *Vardon Golf*, 213 F.R.D. at 534; *SmithKline Beecham*, 2001 WL 1397876, at *3. As the *Southern Scrap Material* court explained in finding that the work product privilege attached to audit letters produced to outside auditors:

> This is not one of those cases where a party deliberately disclosed work-product in order to obtain a tactical advantage or where a party made testimonial use of work-

---

materials [or] that [they] would suffer undue hardship in procuring the requested information some other way." *Logan*, 96 F.3d at 976.

product and then attempted to invoke the work-product doctrine to avoid cross-examination. 2003 WL 21474516, at *9.

The court similarly declines to find waiver by virtue of Andersen's inadvertent production of the Opinion Letters to Plaintiffs during discovery. Courts must balance five factors to determine whether waiver has occurred under such circumstances: (1) the reasonableness of the precautions taken to protect the document; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Urban Outfitters, Inc. v. DPIC Cos.*, 203 F.R.D. 376, 380 (N.D. Ill. 2001). As noted, Defendants have produced some four million pages of documents in this case, including some tens of thousands of pages produced by Andersen. (Pl. Resp., at 13.) It was not unexpected that Defendants and their agents would inadvertently produce some privileged materials and, indeed, the parties' agreed protective order outlines a procedure for returning such materials. Plaintiffs make much of the fact that Andersen did not seek the return of the documents until January 31, 2006, 18 months after the first disputed document was produced. Plaintiffs acknowledge, however, that the last disputed document was produced only four months before January 31, 2006. Given the volume of documents at issue in this case, the court does not view this delay as unreasonable.

Plaintiffs insist that Andersen did not take adequate precautions to protect the documents because it produced them – in some cases multiple copies of them – despite being stamped "Confidential." (Pl. Resp., at 12-13.) Household notes, however, that it withheld the audit letters from its own production and listed the letters on its privilege log, and that it is now working closely with Andersen to secure the return of Andersen's copies. (Def. Reply, at 11.) In light of the scope of production, Plaintiffs have not demonstrated that Andersen's precautions were unreasonable or that the inadvertent production effected a waiver of the work product privilege by Household. *See, e.g., In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. at 297 n.2 ("The client is the holder of the privilege, and must decide when to assert or waive the privilege.")

11

## II. Household Documents

Plaintiffs next seek to compel production of documents relating to Household's litigation database (Third Request No. 17) and the establishment and amounts of litigation reserves (Third Request No. 18). During the Class Period, Household's Office of the General Counsel collected and maintained information regarding all litigation that was being prosecuted, defended, or supervised by attorneys in that department. (Leopold Aff. ¶ 2.) The purpose of this database was to assist Household's counsel in understanding, managing and providing legal advice to management about each lawsuit. (*Id.*) According to Household, attorneys or staff under their direction added comments to the database reflecting the attorneys' mental impressions, conclusions, opinions, and strategies. Household claims that it implemented strict controls to protect the confidentiality of these records, and that the database has never been disclosed to Household's outside auditors or any other third party. (*Id.* ¶¶ 4, 5.)

Plaintiffs insist that the database is a mere "management tool" prepared in the ordinary course of business, and not something "for use" in any particular litigation. (Pl. Reply, at 5.) Plaintiffs make much of the fact that Household has "standard procedures" for maintaining the database, and claim that it "was used by Household for the business purpose of drafting the audit letters to the auditors and providing evidential support to the auditors." (*Id.* at 6.) As noted above, however, the database was created primarily to assist Household's counsel in understanding, managing, and providing legal advice about pending and threatened litigation, and not merely to assist with business audits. *See Caremark*, 195 F.R.D. at 614 (a document "analyzing the likely outcome of . . . litigation . . . does not lose protection merely because it is also created in order to assist with a business decision.")

Plaintiffs also object that Household waived any privilege by sharing the database with Andersen, noting a statement in Andersen's 2001 Litigation Review that the auditor had reviewed

12

"a sample of cases from the legal database to ensure completeness." (Pl. Reply, at 5-6.) The mere fact that Andersen was aware of the database and some of the litigation it discussed, however, does not establish that Andersen actually viewed the database itself. In any event, disclosing documents to an auditor does not substantially increase the opportunity for potential adversaries to obtain the information and, thus, the court declines to find that Household has waived the privilege. *Vardon Golf*, 213 F.R.D. at 534; *SmithKline Beecham Corp.*, 2001 WL 1397876, at *3.

With respect to the litigation reserves, Household insists that these determinations "necessarily entail[] consideration of the responsible attorneys' evaluation of the merits of related claims, defenses and strategies." (Def. Resp., at 4.) In *Certain Underwriters at Lloyd's, London v. Fidelity and Casualty Ins. Co.*, No. 89 C 876, 1998 WL 142409 (N.D. Ill. Mar. 24, 1998), the court noted that the "jurisprudence surrounding whether reserve information is privileged under the work product doctrine is by no means settled." *Id.* at *2. The court held that the reserve recommendations at issue there were privileged, however, because they "d[id] reveal attorney mental impressions, thoughts, and conclusions since the reserve figures were calculated only after an attorney acting in his legal capacity carefully determined the merits and value of the underlying case." *Id. See also Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 332 (N.D. W.Va. 2006) (loss reserve information was protected under the work product doctrine); *Harper*, 138 F.R.D. at 675 (ordering that information regarding an established reserve be redacted from production); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) ("By their very nature, [individual case reserve figures] are prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product."); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565, at *9 (C.D. Ill. Jan. 31, 2005) (finding loss reserve information discoverable only if the plaintiff had a viable bad faith claim against the defendant and, even then,

the information "would likely be subject to an 'attorneys eyes only' restriction, as it would certainly be highly proprietary in nature.")

Here, similarly, Household's attorneys suggested reserve figures based on their assessment of the merits and value of the underlying cases. Those recommendations are protected by the work product doctrine. One district court did find that the "procedures for setting litigation reserves" were not privileged where the reserve was established "by the management of the company in discussion with [counsel] . . . as to our analysis of our situation." *National Union Fire Ins. Co. v. Continental Illinois Group*, Nos. 85 C 7080, 85 C 7081, 1988 WL 79513, at *2 (N.D. Ill. July 22, 1988). This court finds the reasoning of *Certain Underwriters at Lloyd's, London* more persuasive on this issue and finds that Household has met its burden of establishing that the reserve information is entitled to work product immunity.

## CONCLUSION

For the reasons stated above, Arthur Andersen's motion for the return of privileged documents inadvertently produced to Plaintiffs [Doc. 495] is granted and Plaintiffs' cross-motion to compel [Doc. 518] is denied. Defendants' motion for leave to file a sur-reply [Doc. 564] is granted.

ENTER:

Dated: July 6, 2006

*Nan R. Nolan*
NAN R. NOLAN
United States Magistrate Judge