**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, <br><br>                Plaintiff, <br><br>    vs. <br><br> HOUSEHOLD INTERNATIONAL, INC., et al., <br><br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Lead Case No. 02-C-5893
(Consolidated)

<u>CLASS ACTION</u>

Judge Ronald A. Guzman
Magistrate Judge Nan R. Nolan

<u>**THE CLASS' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
PRODUCTION OF DISCOVERY AND ISSUANCE OF LETTERS OF REQUEST
UNDER THE HAGUE CONVENTION**</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND ......................................................................................................3

      A.      The Evidence at Issue Deals with HSBC and Its Investment Bankers' 2002 Negotiations Leading to the November 2002 Merger Agreement Which Enabled HSBC to Buy Household Common Stock at a Deep Discount to Its Historical Trading Value....................................................................................3

      B.      The Class Has Endeavored to Obtain the Evidence at Issue Without Court Assistance ...........................................................................................................4

III.    ARGUMENT ...........................................................................................................5

      A.      The Evidence at Issue Is Relevant to This Litigation Under Fed. R. Civ. P. 26(b)(1) ...............................................................................................................5

      B.      The Court's Outstanding April 8, 2003 Document Preservation Order Strongly Militates in Favor of Finding Household Has Control Over the Evidence at Issue.................................................................................................6

      C.      The Evidence at Issue Is Relevant, Is in Household's "Possession, Custody or Control" Under Fed. R. Civ. P. 34 and Must Be Produced ................................6

            1.      Household and HSBC Share an Interlocking Management Structure.............................................................................................7

            2.      HSBC is the 100% Owner of Household....................................................9

            3.      HSBC and Household Have an Interlocking Financial Relationship ........10

            4.      Household Is Subject to HSBC Policies ...................................................11

      D.      The Court Should Order Household/HSBC to Consent to the Production of the Documents at Issue Because Household Has "Control" over the Documents at Issue Since Its Parent Can Produce Them with a Simple "Yes"...................................................................................................................12

      E.      In Addition to Compelling Household/HSBC to Produce and to Consent to Production of the Relevant Documents, the Class Requests the Court Issue Letters of Request Under the Hague Convention to Compel Production by Both MSIL and HSBC Directly...........................................................................13

            1.      Background of the Hague Convention.......................................................13

            2.      Letters of Request Should Be Issued in This Case ...................................14

**Page**

   a.  The MSIL Letter of Request ...........................................................14

   b.  The HSBC Letter of Request ..........................................................15

IV.  CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page**

## CASES

*Afros S.p.A. v. Krauss-Maffei Corp.*,
 113 F.R.D. 127 (D. Del. 1986) ......................................................................7

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur
v. Phillips Petroleum Co.*,
 105 F.R.D. 16 (S.D.N.Y. 1984) ......................................................................9

*Flavel v. Svedala Indus.*,
 Case No. 92-C-1095, 1993 U.S. Dist. LEXIS 18730
 (E.D. Wis. Dec. 13, 1993)...........................................................................7, 9

*G. Heileman Brewing Co. v. Joseph Oat Corp.*,
 871 F.2d 648 (7th Cir. 1989) .......................................................................14

*Geer v. Cox*,
 Case No. 01-2583-JAR, 2003 U.S. Dist. LEXIS 2737
 (D. Kan. Feb. 19, 2003) ..............................................................................12

*Griffin v. Mashariki*,
 96 CIV 6400, 1997 U.S. Dist. LEXIS 19325
 (S.D.N.Y. Dec. 5, 1997)...............................................................................12

*Herbst v. Able*,
 63 F.R.D. 135 (S.D.N.Y. 1972) ...................................................................12

*In re Legato Sys., Inc. Sec. Litig.*,
 204 F.R.D. 167 (N.D. Cal. 2001)..................................................................12

*In re Uranium Antitrust Litig.*,
 480 F. Supp. 1138 (N.D. Ill. 1979) .........................................................7, 9, 11

*In re Woolworth Corp. Sec. Class Action Litig.*,
 166 F.R.D. 311 (S.D.N.Y. 1996) .................................................................12

*Japan Halon Co. v. Great Lakes Chem. Corp.*,
 155 F.R.D. 626 (N.D. Ind. 1993) ...........................................................6, 8, 10

*Johnson v. Cloos Int'l, Inc.*,
 Case No. 89 C 8483, 1990 U.S. Dist. LEXIS 8563
 (N.D. Ill. July 10, 1990)..............................................................................7, 8

Page

*Meyer v. S. Pac. Lines*,
    199 F.R.D. 610 (N.D. Ill. 2001)...........................................................................5

*Nevins v. Bryan*,
    885 A.2d 233 (Del. Ch. 2005)............................................................................10

*Preservation Prods. LLC v. Nutraceutical Clinical Labs. Int'l, Inc.*,
    214 F.R.D. 494 (N.D. Ill. 2003)........................................................................12

*Rubin v. Islamic Republic of Iran*,
    349 F. Supp. 2d 1108 (N.D. Ill. 2004) ...............................................................5

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1947).............................................................................................5

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A.*
*v. McGranery*,
    111 F. Supp. 435 (D.D.C. 1953) ..................................................................10, 11

*Societe Nationale Industrielle Aerospatiale*
*v. United States Dist. Court for Southern Dist.*,
    482 U.S. 522 (1987)......................................................................................13, 15

*United States v. Cancer Treatment Ctrs. of Am.*,
    350 F. Supp. 2d 765 (N.D. Ill. 2004) ...............................................................12

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P.
    Rule 1 ................................................................................................................14
    Rule 26 ................................................................................................................5
    Rule 26(b)(1)...................................................................................................1, 5
    Rule 30(a)(1)...................................................................................................4, 5
    Rule 34 ................................................................................................................1
    Rule 34(a) ................................................................................................ *passim*

**SECONDARY AUTHORITIES**

8 Del. C. § 141(k) ......................................................................................................10

10A Fed. Proc., L. Ed. §26:741 (updated June 2006)...............................................13

23 U.S.T. 2555, T.I.A.S. No. 7444 .......................................................................2, 13

## I.      INTRODUCTION

The Class respectfully seeks the Court's assistance to obtain evidence relevant to this litigation on two bases.

A.      First, the Class respectfully moves to compel defendant Household International, Inc. ("Household") to produce evidence within its control under Fed. R. Civ. P. 34(a) and the Stipulation and Order Providing for Household International, Inc. to Preserve and Maintain Relevant Documents entered by this Court on April 8, 2003 ("Document Preservation Order").  *See* Exhibit 1 to the Declaration of D. Cameron Baker filed herewith.  (All exhibits are attached thereto.)  The evidence at issue consists of documents held by Morgan Stanley & Co. International Limited, or Morgan Stanley & Co. Limited (collectively, "MSIL"), financial advisor to Household's parent corporation HSBC Holdings plc, ("HSBC")[1] in connection with the 2002 merger negotiations between HSBC and Household.  MSIL has stated it would voluntarily deliver the evidence at issue to the Class if HSBC consented.  *See* Ex. 2.  Given MSIL's cooperation, Household could easily produce this evidence (at virtually no cost or effort on its part) as a practical matter.  Nonetheless, both Household and HSBC stonewalled this discovery.  *See* Exs. 3-4.  Defendants' inaction in this instance is yet another example in a long line of predictable but wasteful efforts to evade this Court's orders and their obligations under the Federal Rules of Civil Procedure.  The Class therefore seeks (i) a determination that such documents are within Household's control for Rule 34(a) purposes; and (ii) an order compelling Household and HSBC to consent to their production.

B.      Second, pursuant to the procedures set forth in the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, date of signing, March 18, 1970, date in force,

---

[1]      HSBC is a public limited company incorporated in England and Wales which acquired defendant Household on March 28, 2003.

October 7, 1972, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Convention"), the Class moves the Court to issue two Letters of Request.

1.  One Letter of Request should compel MSIL to produce the documents at issue. The Class has endeavored to obtain these documents without court intervention. MSIL stated it would produce the requested documents if HSBC consented. *See* Exs. 2-5. Again, both Household and HSBC have refused to provide a simple "yes" to MSIL's request. *See* Exs. 3-4. Absent HSBC's consent, MSIL has stated it would produce the documents in response to a Letter of Request under the Hague Convention. *See* Exs. 4-5. Therefore, the Class seeks the assistance of this Court and legal processes in the United Kingdom to obtain the documents at issue from MSIL directly.

2.  The second Letter of Request should compel HSBC to produce the same categories of discovery sought from MSIL in the first Letter of Request. There are two reasons why the Class seeks this second letter. First, there may be relevant documents that one entity has retained but the other has not. Second, the Class served a subpoena on HSBC on September 12, 2006. Counsel for Household and its successor-in-interest have refused to accept service of this subpoena. The Class wishes to resolve that dispute without this Court's intervention. That subpoena covers the evidence at issue in this motion.[2] Still, it is clear that defendants will resist every effort to obtain the relevant evidence. So the Class must undertake this additional measure to ensure the documents at issue are ultimately produced in a timely fashion.

It is not lead plaintiffs' preference to follow this expensive, time-consuming, extraterritorial maze to obtain the same evidence defendants must produce under Fed. R. Civ. P. 34(a), but lead

---

[2]  It also covers other categories of information that are not at issue in this motion.

plaintiffs have an obligation to protect the Class from prejudice occasioned by defendants' recalcitrance.

## II.    BACKGROUND

### A.    The Evidence at Issue Deals with HSBC and Its Investment Bankers' 2002 Negotiations Leading to the November 2002 Merger Agreement Which Enabled HSBC to Buy Household Common Stock at a Deep Discount to Its Historical Trading Value

The evidence at issue in this motion consists of materials generated by MSIL (including its affiliates) in its capacity as financial advisor to HSBC in connection with HSBC's acquisition of Household. On November 14, 2002, HSBC announced it had agreed to purchase Household, by way of a stock-for-stock merger, for approximately $30.00 per share of Household common stock. *See* ¶¶6, 30;[3] Ex. 6. Months of negotiations between Household and HSBC preceded that announcement. For example, the companies engaged in high level discussions concerning the transaction in early-to mid-2006, and then HSBC had a large number of its executives conducting due diligence in Chicago in October and November 2002. Ex. 7 at 36-37; Ex. 8 at 3. These discussions continued throughout 2002, resulting in the execution of the purchase agreement discussed above, and the closing of the transaction on March 28, 2003. *See* Ex. 9. MSIL advised HSBC and participated in the November 13, 2002 meeting of the HSBC board of directors where the terms of the proposed acquisition were discussed. *See* Ex. 7 at 38. MSIL gave advice to HSBC on the financial terms of the transaction, and HSBC's board of directors then determined the financial terms were fair and approved the transaction. *Id.*

MSIL's financial and business evaluation of Household, and information obtained in support thereof, will aid in establishing facts surrounding the reasons why HSBC was able to acquire

---

[3]    All paragraph ("¶") references are to the [Corrected] Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint").

Household at a deep discount to historical trading prices. *See* ¶¶6, 30-31; Ex. 10. In advising

HSBC, reviewing due diligence in connection with the acquisition and negotiating a price with

Household and its advisors, MSIL was privy to non-public information about Household. For

example, the "Disclosure Schedule" to the merger agreement between HSBC and Household set

forth a number of material non-public disclosures, including information related to its reage policies

and material litigation (such as the then pending Securities and Exchange Commission ("SEC")

investigation). *See, e.g.*, Ex. 11.[4] These documents were not filed publicly.

> **B.      The Class Has Endeavored to Obtain the Evidence at Issue Without Court Assistance**

The Class has endeavored to obtain the relevant evidence without judicial assistance. On

March 7, 2002, the Class served a subpoena on Morgan Stanley & Co., Inc. ("Morgan Stanley US")

pursuant to Federal Rules of Civil Procedure 30(a)(1) and 45. *See* Ex. 12. Over a series of weeks,

the Class communicated with Morgan Stanley US' in-house counsel in New York, and MSIL's in-

house counsel in London about the subpoena. *See generally* Exs. 2-5, 13-16. In brief, both entities

agreed to gather responsive evidence immediately. *See* Exs. 2, 4. Morgan Stanley US agreed to

produce relevant documents from its New York offices. MSIL is willing to produce responsive

documents from its London offices on the condition that HSBC consent to the production. *See id.*

Household and HSBC have refused consent. *See* Exs. 3-4. MSIL is still willing to produce the

documents, but only in response to judicial process. *See* Ex. 4.

---

[4]      The Disclosure Schedule has not been filed as an exhibit hereto because, like over 97% of the documents in this case, it has been marked "Confidential" by defendants. Rather than seek leave to file this document under seal, attached are certain representations and warranties made by Household in the November 14, 2002 merger agreement – a publicly filed document – executed by Household and HSBC. Key representations by Household include Section 5.10(h)(1) pertaining to Household's accounting practices at A-22; Section 5.11 pertaining to compliance with laws and regulations at A-22-23; and Section 12 pertaining to litigation. The Disclosure Schedules set forth "exceptions" to these representations, were reviewed by the parties to the transaction, but were not filed publicly. Defendants have yet to produce crucial attachments to the Disclosure Schedule, such as the material litigation and other non-compliance lists provided to HSBC.

## III.   ARGUMENT

### A.   The Evidence at Issue Is Relevant to This Litigation Under Fed. R. Civ. P. 26(b)(1)

As this Court has repeatedly recognized, "parties may obtain discovery regarding any matter, not privileged . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[5]  Fed. R. Civ. P. 26(b)(1).  The discovery at issue is directly relevant to the Class' claims.  It relates to the valuation of Household's common stock, its business and non-public information to which MSIL was privy that formed the bases of its advice.  As noted above, these factual bases include information relating to predatory lending litigation; investigations by the SEC; data on the business model impact of Household's $484 settlement with the states attorneys general announced on October 11, 2002; Household's calculation of account delinquencies and its reaging or restructuring of delinquent accounts; and, among other things, its nearly $600 million restatement of publicly filed financial statements.  Each of the foregoing categories of information directly relates to claims made by the Class.  *See, e.g.*, ¶¶51-106 (predatory lending allegations); ¶¶107-133 (reaging or restructuring allegations); ¶¶134-153 (restatement and credit card allegations).   In sum, the evidence sought is highly relevant and therefore subject to discovery under Fed. R. Civ. P. 26. Defendant Household cannot carry its burden to prove otherwise.

---

[5]      *See also Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1947); *accord Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) ("[u]nder Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery is generally very broad, incorporating any nonprivileged documents and/or tangible things that are relevant to the subject matter involved in the action").  The burden rests on defendant Household to show why the MSIL discovery request is improper.  *See Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 612 (N.D. Ill. 2001) (citations omitted).

**B.** **The Court's Outstanding April 8, 2003 Document Preservation Order Strongly Militates in Favor of Finding Household Has Control Over the Evidence at Issue**

There are particular facts and circumstances in this case that strongly militate in favor of finding Household has control over the evidence at issue. Pursuant to the Document Preservation Order, Household agreed that any relevant documents and other evidence over which its parent HSBC takes possession "shall be treated for purposes of discovery in this action as if they are held within Household's possession custody or control within the United States." *See* Ex. 1. This order shows Household has the authority to bind HSBC to this obligation, the power to recall documents from its parent company, and the practical ability to obtain and produce such documents "at a *situs* within the United States." *Id.*at 2. Such authority strongly suggests Household can do the same for the documents at issue here. Indeed, that was the idea contemplated by this Court in entering this Order. In light of this Court's Order, Household's refusal to cooperate has the "distinct odor of an effort to prolong the discovery disputes so as to undermine the [Court's deadlines]" and the marks of "international hide and seek" gamesmanship that courts reject in this circuit. *See, e.g.*, *Japan Halon Co. v. Great Lakes Chem. Corp.*, 155 F.R.D. 626, 629 (N.D. Ind. 1993). Under the Document Preservation Order, Household has control over the documents at issue here, and accordingly, the Court can order production of the same.

**C.** **The Evidence at Issue Is Relevant, Is in Household's "Possession, Custody or Control" Under Fed. R. Civ. P. 34 and Must Be Produced**

The discovery at issue is in Household's "possession, custody or control" under Fed. R. Civ. P. 34(a). Household has been served numerous demands for production under Fed. R. Civ. P. 34(a) to which the documents at issue are responsive. Defendant Household has refused to produce all responsive documents at issue and apparently stands firm on this point for two reasons: (i) it claims the documents are not relevant; and (ii) it suggests that documents it can easily obtain from its parent company HSBC are not within Household's "possession, custody or control" under Rule 34(a). As

noted above, the evidence at issue is highly relevant. As to the second point, Household has advanced no cogent explanation as to why it cannot obtain and produce the evidence. The Document Preservation Order demonstrates that Household has control of the documents and should be ordered to produce them.

For Rule 34(a) purposes, the test for determining whether a domestic subsidiary has "control" of documents in the possession or control of its non-party foreign parent corporation focuses on the closeness of the relationship between the entities. The key factual predicates to compelling production are "'the parent's ownership share in the subsidiary or affiliated corporation; whether the corporations [have] interlocking management structures; [and] the degree of control exercised by the parent over the subsidiary's directors, officers, and employees.'" *Johnson v. Cloos Int'l, Inc.*, Case No. 89 C 8483, 1990 U.S. Dist. LEXIS 8563, at *4 (N.D. Ill. July 10, 1990) (quoting *Afros S.p.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986)). Courts will also consider the "interlocked web of corporate . . . finance," *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1145 (N.D. Ill. 1979), and a "connection to the transaction at issue," *Flavel v. Svedala Indus.*, Case No. 92-C-1095, 1993 U.S. Dist. LEXIS 18730, at *12 (E.D. Wis. Dec. 13, 1993) (citations and quotations omitted). As noted by the *Flavel* court, "[c]onsideration of such factors promotes the policies underlying Rule 34(a) and ensures that a corporation cannot 'hide' incriminating documents overseas." 1993 U.S. Dist. LEXIS 18730, at *13.

1.      **Household and HSBC Share an Interlocking Management Structure**

Under these standards, Household has control over documents in HSBC's possession, custody or control under Fed. R. Civ. P. 34(a). Both entities share key management. Directors of Household have held various concurrent positions at HSBC.

- Household director Siddharth N. Mehta is Chairman and Chief Executive Officer ("CEO") of Household; is a Group Managing Director of HSBC, responsible for strategic management of consumer finance and credit card operation throughout the

- 7 -

entire HSBC organization; and sits on HSBC's Group Management board of directors which "exercises the powers, authorities and discretions of the board in so far as they concern the management and day to day running of HSBC."[6] *See* Ex. 17 at 191; Ex. 18 at 203.

- Household's Chairman and CEO during the class period, William F. Aldinger, also served on HSBC's board of directors until his retirement in April 2005. *See* Ex. 18 at 224.

- Household director William R. Dalton held various positions at HSBC for 24 years; was an Executive Director of HSBC for six years (and retained such position for some time while sitting on the Household Board); and was Chief Executive of an HSBC affiliate, HSBC Bank plc while sitting on the Household board of directors as well. *See* Ex. 17 at 189.

- Household director (and non-voting member of the Audit Committee) Alan W. Jebson held various positions in HSBC since 1976; he was the Chief Operating Officer of HSBC and was responsible for HSBC's worldwide operations for three years while sitting on the Household board of directors (retiring from the Household board of directors in May 2006). *See id.* at 190.

- J. D. Fishburn contemporaneously sat on Household's and HSBC's board of directors. *See* Ex. 19 at 9.

This "interlocking management structure" supports the conclusion that Household should be compelled to produce the evidence at issue. *Johnson*, 1990 U.S. Dist. LEXIS 8563, at * 4.

The significant overlap in this case compares favorably to that in other cases where courts in this Circuit have found sufficient control for Rule 34(a) purposes. In *Japan Halon*, the court found "control" where defendants argued that no directors shared responsibilities for both entities. *See, e.g.*, *Japan Halon*, 155 F.R.D. at 628 (finding defendant's claim that the three boards at issue – the boards of the subsidiary and its two non-party, minority-ownership Japanese parent corporations – had no overlapping directors a "hypertechnical argument [that] is precisely the type that is considered obstructionist in violation of the letter and of the spirit of Fed. R. Civ. P. 34"). In

---

[6]     Mr. Mehta is also the CEO of HSBC Holdings North American, Inc., an intermediate holding company between Household and HSBC.

addition to overlapping directorships and executive positions discussed above, both entities share senior management: for example, both Mr. K. Harvey and Ms. S. Derickson are Group General Managers[7] of HSBC while holding senior executive positions at Household. *See* Ex. 18 at 188. As noted above, Mr. Mehta is a Group Managing Director and a member of the Group Management Board[8] of HSCB while CEO of Household. Because Household and HSBC share an interlocking management structure, the Court should find Household has control of the evidence.

### 2. HSBC is the 100% Owner of Household

Claiming that a subsidiary has no control over documents in the possession of its parent is even more hypertechnical where parent owns 100% of the subsidiary. Here, HSBC holds a 100% ownership interest in Household. *See* Ex. 17 at 126 ("[Household] and subsidiaries is an indirect wholly owned subsidiary of HSBC North America Holdings Inc. ("HNAH") which is a wholly owned subsidiary of [HSBC]"). The existence of an intermediate holding company is "wholly collateral" to the managerial unity of HSBC and Household. *See Uranium Antitrust*, 480 F. Supp. at 1152 (intervening operating company irrelevant where defendant and ultimate parent share directors, officers and executives); *accord Flavel*, 1993 U.S. Dist. LEXIS 18730, at *13.

Courts have found sufficient control between parent and subsidiary even where the parent's ownership is less than 100%. *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33 (S.D.N.Y. 1984) (finding a U.S. entity had control over evidence in possession of its 85% non-party French stockholder); *Japan Halon*, 155 F.R.D. at 8 (finding U.S. subsidiary had control of documents in possession of two non-majority shareholder

---

[7]    The Group General Managers meet with the HSBC board of directors, report to the HSBC Audit Committee and the HSBC Remuneration Committee (there are only 29 such positions in the entire HSBC organization). *See* Ex. 18 at 202, 204, 215, 217.

[8]    There are only nine of these top Group Managing Director positions in HSBC. *See* Ex. 18 at 187.

Japanese parent corporations); *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. McGranery*, 111 F. Supp. 435, 440-42 (D.D.C. 1953) (finding 44% ownership grounds for establishing control for Rule 34 purposes). HSBC's 100% ownership position evinces even greater control. HSBC can completely control Household's board of directors under this structure.[9]

### 3. HSBC and Household Have an Interlocking Financial Relationship

Next, HSBC and Household have an extensive interlocking financial relationship. A complete recital of all such interactions is well beyond the scope of this motion. The following examples are more than sufficient for Rule 34(a) purposes.

- HSBC consolidates Household's financial performance on its financial statements. *See, e.g.*, Ex. 18 at 55 ("The results are presented in accordance with the accounting policies used in the preparation of HSBC's consolidated financial statements. HSBC's operations are closely integrated . . . .").

- HSBC reported that its North America[10] operations contributed: US $14.887 Billion (47.5%) of its net interest income; US $1.013 Billion (17.3%) of its net trading income; US $434 Million (42%) of its net income from financial instruments; US $602 (11.1%) of its net earned insurance premiums; US $740 million (20.2%) in other operating income; and HSBC's profit before taxes attributable to North America was US $6.872 billion (32.8%). *Id.* at 28, 32-33, 35-36 and 55.

- Household has made major acquisitions with capital contributions from the HSBC group of companies (including a $1.2 billion acquisition), and has sold assets to HSBC affiliates (including a $3.0 billion sale). *Id.* at 27, 59.

---

[9] In addition, because both Household and HNAH are Delaware corporations, the directors of both entities can be removed easily by a majority of shareholders. *See* 8 Del. C. § 141(k) ("Any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors [subject to inapplicable exceptions]"); *see also Nevins v. Bryan*, 885 A.2d 233, 252 (Del. Ch. 2005) (shareholders, not directors, have the authority to remove directors).

[10] HSBC's North America operations are conducted primarily through Household and its immediate holding company HNAH. *See* Ex. 18 at 15, 94. (In 2002, before HSBC closed the acquisition of Household, HSBC reported US $4.2 billion in North America operating income; after the acquisition in 2003 and 2004, HSBC reported US $15.7 billion and US $20.07 billion, respectively, in North America operating income.)

- Generally, Household reports that in the "normal course of business" it conducts transactions with HSBC and its subsidiaries. *See* Ex. 13 at 167 (reporting liabilities to HSBC affiliates of US $15.5 billion, US $ 445 million and US $ 260 million; and affiliate assets of US $582 million, US $518 million and US $182 million for 2005 alone).

These investments, loans and management of assets are clear indicia of control under Rule 34(a). *See McGranery*, 111 F. Supp. at 442 (records of financial transactions between companies "are among the best possible indicia of [their] ownership and control"); *see also Uranium Antitrust*, 480 F. Supp. at 1145 (adopting the control analysis in *McGranery* and noting its analysis was ***upheld*** on appeal).

### 4. Household Is Subject to HSBC Policies

HSBC has made specific commitments to oversee certain of Household's operations that are the subject of the Complaint. For example, with the respect to the $484 million Multi-State Attorneys General settlement, HSBC stated in its New York State Banking Department filings that HSBC would monitor Household to ensure compliance with the settlement. *See, e.g.*, Ex. 20 at 12. In addition, Household is subject to numerous policies and procedures established by HSBC. Two illustrations follow: (i) Household is subject to HSBC's compliance and audit functions just as all other HSBC worldwide business units (overseen by HSBC's board of directors); and (ii) the HSBC Remuneration Committee determines, in its discretion, whether to award certain incentive compensation to Household senior executives and management. *See id.* at 12-13; Ex. 18 at 198.

For all the foregoing reasons, Household should be deemed to have control over all of the evidence at issue.

> **D.** **The Court Should Order Household/HSBC to Consent to the Production of the Documents at Issue Because Household Has "Control" over the Documents at Issue Since Its Parent Can Produce Them with a Simple "Yes"**

The Class is seeking documents relating to the Household/HSBC Merger. MSIL has already stated that it would produce responsive documents in its possession if Household/HSBC consented.[11] *See* Ex. 2 ("we will approach HSBC to request its consent to Morgan Stanley providing those documents to you"). In analogous contexts, numerous courts have ordered persons or entities to consent to the production of relevant discovery. *See, e.g.*, *Preservation Prods. LLC v. Nutraceutical Clinical Labs. Int'l, Inc.*, 214 F.R.D. 494, 496 (N.D. Ill. 2003) (compelling defendant to provide a written consent authorizing plaintiff to obtain relevant discovery from third-party SEC); *In re Legato Sys., Inc. Sec. Litig.*, 204 F.R.D. 167, 170 (N.D. Cal. 2001) (same); *In re Woolworth Corp. Sec. Class Action Litig.*, 166 F.R.D. 311, 313 (S.D.N.Y. 1996) (same); *Herbst v. Able*, 63 F.R.D. 135, 137-38 (S.D.N.Y. 1972) (same). As was the case in *Nutraceutical*, the fact that Household and HSBC do not have copies of the responsive materials "is not significant because [they] have 'control' of those documents by signing the necessary [consent]." 214 F.R.D. at 496.

Thus, in addition to finding Household has control over the documents at issue, the Court should specifically order both Household and HSBC to consent to their production.

---

[11]     The only substantive basis MSIL has asserted for withholding the documents rests on a confidentiality agreement that MSIL apparently executed with HSBC. The Class notes that private contracts, including confidentiality agreements, do not shield relevant materials from production under the Federal Rules of Civil Procedure. *See, e.g.*, *Griffin v. Mashariki*, 96 CIV 6400 (DC), 1997 U.S. Dist. LEXIS 19325, at *3 (S.D.N.Y. Dec. 5, 1997) (statement made by settling party subject to a confidentiality agreement not protected from discovery); *United States v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 775 (N.D. Ill. 2004) ("[the] public interest in the production of those records trumps any fiduciary obligation or any confidentiality agreement"); *Geer v. Cox*, Case No. 01-2583-JAR, 2003 U.S. Dist. LEXIS 2737, at **4-5 (D. Kan. Feb. 19, 2003) ("[it] is well settled in this District that confidentiality is generally not grounds to withhold information from discovery . . . [a] contractual, legal obligation . . . not to reveal confidential information . . . is not a valid basis for withholding information in this litigation") (citations and quotations omitted).

**E.**     **In Addition to Compelling Household/HSBC to Produce and to Consent to Production of the Relevant Documents, the Class Requests the Court Issue Letters of Request Under the Hague Convention to Compel Production by Both MSIL and HSBC Directly**

As noted above, the Class must obtain evidence located in the United Kingdom. The issuance of a Letter of Request under procedures set forth in the Hague Convention is an appropriate means of obtaining such evidence. The United States and the United Kingdom are signatories or "Contracting Parties" to this treaty. *See* Federal Procedure, 10A Fed. Proc., L. Ed. §26:741 (updated June 2006). Accompanying this motion, the Class submits for the Court's convenience two proposed Letters of Request[12] in duplicate: one regarding evidence in MSIL's possession or control at Annex I; and the other regarding evidence in HSBC's possession or control at Annex II.

### 1.     Background of the Hague Convention

The purpose of the Hague Convention is to facilitate and increase the exchange of information between nations. *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist.*, 482 U.S. 522, 534 (1987). It allows courts in one contracting state to request another contracting state to "obtain evidence, or to perform some other judicial act" by a Letter of Request. Hague Convention, ch. I, art. 1 (*see* 23 U.S.T. 2555). Each contracting state designates a "Central Authority" to receive requests from courts of other member countries. *Id.* at art. 2. The Central Authority then sends the request to the appropriate court or officer to execute the request. *Id.* The Senior Master of the Supreme Court of Judicature (Queen's Bench Division) has been designated by the United Kingdom as the Central Authority to receive Letters of Request for the purpose of obtaining evidence in its territory.

---

[12]     Courtesy copies will be provided in duplicate for the Court's convenience because the Hague Convention requires the Letters of Request to be submitted in duplicate to the appropriate judicial authority.

The Letters of Request must be issued by a court in the country of origin (here, the United States District Court for the Northern District of Illinois, Eastern Division) and require the Class' coordination with the United Kingdom's judicial officers. The two attached Letters of Request comply with the Hague Convention.

### 2. Letters of Request Should Be Issued in This Case

The Court should issue two Letters of Request: one compelling MSIL to produce relevant evidence in its possession, custody or control; the other, compelling HSBC to produce relevant evidence in its possession, custody or control. Both should be issued in order to ensure that these two entities produce all evidence that is currently located in the United Kingdom. As discussed above, the processes established under the Federal Rules of Civil Procedure and the Hague Convention are neither mutually exclusive nor sequentially arranged. Issuing these Letters of Request is consistent with the discovery deadline of January 31, 2007 established by this Court. In addition, such relief is consistent with the goal of ensuring a "just, speedy, and inexpensive" resolution of this matter. Fed. R. Civ. P. 1; *see also G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989) (quoting same).

### a. The MSIL Letter of Request

As to MSIL, the Letter of Request should be issued in addition to the order to compel Household/HSBC to consent to production under Rule 34(a) discussed above. Further, Morgan Stanley US has indicated MSIL will produce the documents at issue upon the completion of the Letter of Request process. *See* Ex. 4 ("HSBC in London does not consent to production of UK documents in this case. In light of their decision, we would ask you pursue the Letters Rogatory process in order to receive production in this matter. We have already begun pulling the documents and will have them ready to produce immediately after the Letters Rogatory process is completed.").

The Supreme Court has held that a Letter of Request under the Hague Convention is neither a mandatory nor exclusive means of obtaining evidence located in a foreign signatory's territory. *See Societe Nationale*, 482 U.S. at 538 (The Hague Convention's "text . . . as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was intended to establish optional procedures that would facilitate the taking of evidence abroad.") (citations omitted)). Rather, the Hague Convention is only a "permissive supplement" to the Federal Rules, which the Class need not follow either before or in lieu of following those established under the Federal Rules of Civil Procedure. *Id.* at 536, 529, 542. In that case, the Supreme Court held that two French corporations were required to produce documents located in France in response to plaintiffs' request pursuant to Rule 34(b). *Id.* at 526. For the reasons set forth above, this Court should reach the same conclusion in this case.

### b. The HSBC Letter of Request

With regard to HSBC, the Court should issue a Letter of Request compelling HSBC to produce the same categories of discovery sought from MSIL in the first Letter of Request. The Court should issue this Letter of Request because HSBC may have evidence that MSIL has not retained. Again, the Class prefers to obtain this evidence under Fed. R. Civ. P. 34(a) for all of the efficiency and policy reasons discussed herein.

## IV. CONCLUSION

For the reasons set forth above, the Class respectfully requests (a) an order compelling Household and HSBC to produce and consent to the production of documents held by MSIL, and (b) the issuance of two Letters of Request under the Hague Convention seeking international judicial assistance in obtaining certain evidence (i) directly from MSIL, an entity located in the United Kingdom and (ii) HSBC, an entity also located in the United Kingdom.

- 15 -

DATED: September 21, 2006        Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN (90785466)
AZRA Z. MEHDI (90785467)
D. CAMERON BAKER (154452)
MONIQUE C. WINKLER (90786006)
LUKE O. BROOKS (90785469)
MARIA V. MORRIS (223903)
BING Z. RYAN (228641)


s/ Azra Z. Mehdi
AZRA Z. MEHDI

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

MILLER FAUCHER AND CAFFERTY LLP
MARVIN A. MILLER
30 North LaSalle Street, Suite 3200
Chicago, IL 60602
Telephone: 312/782-4880
312/782-4485 (fax)

Liaison Counsel

LAW OFFICES OF LAWRENCE G.
   SOICHER
LAWRENCE G. SOICHER
110 East 59th Street, 25th Floor
New York, NY  10022
Telephone:  212/883-8000
212/355-6900 (fax)

Attorneys for Plaintiff

T:\CasesSF\Household Intl\BRF00034793.doc