

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> HOUSEHOLD INTERNATIONAL, INC., et al., <br><br> Defendants. | No. 02 C 5893 <br><br> Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have filed this securities fraud class action alleging that Defendants Household International, Inc., Household Finance Corporation (collectively, "Household"), and certain individuals engaged in predatory lending practices between July 30, 1999 and October 11, 2002 (the "Class Period"). On December 6, 2004, Defendants served 14 third-party subpoenas seeking documents and deposition testimony from investment advisors to Plaintiff PACE Industry Union Management Pension Fund ("PACE"), one of the named class representatives. On April 18, 2005, this court granted Plaintiffs' motion to quash those subpoenas "without prejudice to reassertion, if necessary, after a determination of class-wide liability." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2005 WL 3801463, at *5 (N.D. Ill. Apr. 18, 2005). In reaching this conclusion, the court observed that, "[g]iven Plaintiffs' reliance on the fraud on the market theory, resolution of individualized issues is not necessary to establishing class-wide liability." *Id.* at *4. The court thus found that "bifurcating discovery regarding class-wide liability issues and discovery regarding individualized reliance issues is the most orderly, efficient, and economical way to proceed." *Id.* Defendants did not appeal this ruling to the district court.

In the meantime, Defendants issued Rule 30(b)(6) deposition notices to all of the named class representatives, including PACE, Glickenhaus and Co., and the International Union of

Operating Engineers Local No. 132 Pension Plan (collectively "named Plaintiffs"). Plaintiffs object that these notices are contrary to the court's April 18, 2005 opinion. Defendants raised the matter with the court at several status conferences, and at an October 19, 2006 hearing, the court asked Defendants to submit relevant authority supporting their oral motion to depose the named Plaintiffs and their financial advisors prior to a determination of class-wide liability. For the reasons set forth here, the court denies the motion to depose and affirms the findings in its April 18, 2005 order.

## DISCUSSION

Defendants argue that discovery and depositions of the named Plaintiffs and their financial advisors are relevant to issues other than individual reliance, and are necessary to further the fairness goals of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4 *et seq.* Defendants also claim that the court's April 18, 2005 decision improperly distinguished relevant authority supporting such discovery. The court addresses each argument in turn.

### A.     Truth on the Market

Defendants first argue that the requested depositions and discovery are relevant to establish the truth on the market defense to Plaintiffs' fraud on the market theory of class-wide reliance. Defendants claim that they intend to "explore information regarding what named Plaintiffs (or their investment advisors if relevant) knew about the nature of and risks inherent in Household's business – not to test their individual reliance, or lack of it, but because such information will help identify what public information was known to the market." (Def. Mem., at 5.) In Defendants' view, they are entitled to take depositions to establish that "the truth was on the market as to the facts as to which the complaint alleges the market was deceived." (*Id.* (citing *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1262 (4th Cir. 1993) (affirming partial summary judgment for defendants as to securities fraud claims accruing on or after – but not before – December 17, 1988

based on evidence that "the market was so overwhelmed with information questioning the financial integrity of MH by December 17, 1988, that no reasonable trier of fact could conclude otherwise.").)

The "truth on the market" defense provides that "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000). As one court explained, "[i]f the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's price and the market will not be misled." *Provenz v. Miller*, 95 F.3d 1376, 1391 (9th Cir. 1996) (quoting *In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991)). *See also Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 732 (7th Cir. 2004) ("[I]f the truth or the nature of a business risk is widely known, an incorrect statement can have no deleterious effect.") The truthful corrective information, however, "must be conveyed to the public 'with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements." *Ganino*, 228 F.3d at 167 (quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989)). *See also Asher*, 377 F.3d at 732 ("[I]f a cautionary statement has been widely disseminated, that news . . . affects the price just as if that statement had been handed to each investor.")

Contrary to Defendants' assertion, there is no need to depose the individual named Plaintiffs in order to determine what information was on the market at the time of the alleged fraud. The truth on the market defense turns on the representations made to the marketplace as a whole, and not to any individual plaintiff. *Cf. In re Vivendi Universal, S.A.*, No. 02 Civ. 5571(RJH), 03 Civ. 2175(RJH), 2004 WL 876050, at *5 (S.D.N.Y. Apr. 22, 2004) ("[T]he truth on the market defense has nothing to do with plaintiffs' individual claims, which turn on the representation made to them, not to the marketplace.") Indeed, if the market as a whole was privy to corrective information at the time of the alleged fraud, it is irrelevant whether any individual plaintiff was also aware of that

3

information. Thus, the truth on the market defense is not a valid basis for allowing Defendants to depose the named Plaintiffs prior to a determination of class-wide liability.

B.  **Fairness**

Defendants next argue that fairness requires that they be allowed to depose the named Plaintiffs during the course of discovery. They note, for example, that the PSLRA seeks to discourage disparities in the parties' ability to conduct discovery and to ensure that representative plaintiffs "authentically seek to oversee the litigation and represent the class." (Def. Mem., at 6 (quoting *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1320 (N.D. Ala. 2000).) In support of this assertion, Defendants cite *In re AOL Time Warner, Inc. Sec. Litig.*, No. MDL 1500, 06 CIV. 695, 2006 WL 1997704 (S.D.N.Y. July 13, 2006), in which the court lifted a stay of discovery mandated by the PSLRA where plaintiffs had access to some 14 million documents produced by the defendants. *Id.* at *3. Several plaintiffs had filed some 29 class action complaints against Time Warner alleging a variety of claims for fraudulent accounting in the company's AOL business unit. *Id.* at *1. *See also In re AOL Time Warner Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 202 (S.D.N.Y. 2004). Those cases were ultimately consolidated into a "primary securities class action," but a number of institutional investors opted-out of that litigation to become plaintiffs in a separate consolidated action. *Id.* Those plaintiffs (the "Opt-Out Plaintiffs") retained the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP – the firm representing Plaintiffs here – to pursue identical lawsuits on their behalf. The Opt-Out Plaintiffs' counsel also actively prosecuted substantially similar lawsuits in the Ohio and California state courts. *Id.*

Shortly after the district court granted in part and denied in part a motion to dismiss the primary securities class action, Time Warner moved to lift the PSLRA stay on discovery to obtain discovery from the Opt-Out Plaintiffs. *Id.*; *AOL Time Warner*, 381 F. Supp. 2d at 248. Time Warner argued that "[Opt-Out] Plaintiff's Counsel's access to the approximately fourteen million

4

documents Time Warner has produced in the primary securities class action and the Ohio and California actions creates an improper advantage for [the Opt-Out] Plaintiffs and negatively impacts Time Warner's ability to effectively defend itself." *Id.* at *3. The court agreed, noting that in the absence of relief from the discovery stay, "Plaintiffs here enjoy the substantial benefits of discovery, while Time Warner must wait on the resolution of any motions to dismiss." The court found that "[u]nder the unique circumstances of this case, prohibiting Time Warner's discovery of [the Opt-Out] Plaintiffs while [the Opt-Out] Plaintiffs are able to formulate their litigation and settlement strategy on the basis of the massive discovery Time Warner has already produced constitutes undue prejudice." *Id.*

The facts of *AOL Time Warner* are easily distinguishable from those presented here. In this case, there is no parallel litigation proceeding in which Plaintiffs have access to millions of pages of documents while Defendants are not permitted to engage in any discovery at all. Significantly, the *AOL Time Warner* court expressly cautioned that discovery would be limited to ensure that those defendants who had not engaged in discovery in other jurisdictions were "still protected by the PSLRA discovery stay and not deprived of its protection while the balance between [the Opt-Out] Plaintiffs and Time Warner is restored." *Id.* at *3 n.2. The court appreciates that discovery in securities cases is inherently one-sided, as the defendants typically are in possession of the majority of relevant information. The court is also aware of Defendants' decision to stipulate to class certification.[1] Nevertheless, Defendants have not demonstrated any unique circumstances, undue prejudice, or due process concerns that would justify allowing them to depose the named Plaintiffs and their financial advisors prior to a determination of class-wide liability.

---

[1] Most of the cases allowing plaintiff depositions to proceed have been at the pre-class certification stage. *See, e.g., In re SciMed Life Sec. Litig.*, No. Civ. 3-91-575, 1992 WL 413867 (D. Minn. Nov. 20, 1992); *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996); *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1992 WL 137163 (N.D. Ill. June 10, 1992).

## C. The April 18, 2005 Decision

Defendants finally urge that the court should reconsider its April 18, 2005 decision. A motion to reconsider is appropriate where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Oange v. Burge*, __ F. Supp. 2d __, 2006 WL 2349933, at *2 (N.D. Ill. Aug. 11, 2006). The only grounds Defendants cite for reconsideration is the court's purported error in distinguishing the facts of *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109 (S.D.N.Y. 1993). This is not, however, an acceptable basis for reconsideration, as it involves no new facts, arguments, or law, and could easily have been raised back in 2005. *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 WL 4034698, at *1 (N.D. Ill. Dec. 21, 2005) ("Motions to reconsider are not vehicles for rehashing old arguments that have already been rejected . . . Nor should [they] be used to raise new arguments that could have been previously raised.") In any event, the court did not err in its interpretation of *Harcourt*.

The defendants in *Harcourt* served the plaintiffs with a discovery request seeking, among other things, documents concerning other securities litigation to which the named plaintiffs were or had been a party, and information concerning publicly traded securities owned or controlled by the named plaintiffs during the relevant time period. *Id.* at 111. The plaintiffs insisted that their use of the fraud on the market theory of reliance precluded discovery concerning their investment histories and prior involvement in other securities and class action suits. *Id.* at 112. The defendants noted that the plaintiffs were also alleging traditional direct reliance on the alleged

6

misrepresentations and omissions, and argued that they should be permitted to take discovery to assist in rebutting the presumption of reliance created by the fraud on the market theory. *Id.*

The court agreed with the defendants, holding that "the investment history of a named plaintiff is relevant to a defense of non-reliance on the integrity of the market, and therefore discoverable." *Id.* at 114. This conclusion, however, largely turns on the fact that the plaintiffs were alleging traditional direct reliance in addition to fraud on the market. The court noted, for example, that "[a] named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)." *Id.* at 113 (citing *Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y. 1978)). The court also expressly stated that "discovery relating to investment history is proper where direct reliance is alleged." *Id.*

Defendants make much of the fact that the *Harcourt* court cited the following proposition from the Supreme Court's decision in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988):

> The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

838 F. Supp. at 112-13 (quoting *Basic*, 485 U.S. at 242). This statement, however, merely confirms the theory that misleading statements in a fraud on the market case defraud investors even in the absence of direct reliance. *Basic*, 485 U.S. at 241-42 (under fraud on the market theory, [m]isleading statements will . . . defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.") Neither the *Harcourt* court nor the Supreme Court endorsed Defendants' position that the depositions of named Plaintiffs and their financial advisors may properly take place before a determination as to class-wide liability where there is no allegation of direct reliance.

7

## CONCLUSION

For the reasons stated above, Defendants' motion to depose the named Plaintiffs and their financial advisors prior to a determination of class-wide liability is denied.

ENTER:

*Nan R. Nolan*

Dated: November 13, 2006

NAN R. NOLAN
United States Magistrate Judge