UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> HOUSEHOLD INTERNATIONAL, INC., et al., <br><br> Defendants. | No. 02 C 5893 <br><br> Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have filed this securities fraud class action alleging that Defendants Household International, Inc., Household Finance Corporation, and certain individuals (collectively, "Household") engaged in predatory lending practices between July 30, 1999 and October 11, 2002 (the "Class Period"). Currently before the court is the Class' Motion Regarding State Agency Documents. This issue arose when Defendants' counsel located, prior to a scheduled deposition of former Household employee Robin Allcock, a number of documents that appeared to be restricted from disclosure by applicable state regulations. The documents consist of state agency examination reports and internal documents regarding the operations of particular Household branch offices.

Defendants began contacting the various state agencies to determine whether they would agree to the production of their documents in this case. Defendants also inquired about the proper course of action regarding documents that had already been mistakenly produced to Plaintiffs, as has occurred so many times during this litigation.[1] At the time, documents from some 27 state

---

[1] The court notes that the privilege at issue here belongs to the state agencies and not to Household. Under these circumstances, the court declines to find waiver of the privilege.

agencies were in dispute.[2] At an August 22, 2006 status hearing, the court instructed Plaintiffs to contact the relevant agencies and invite them to submit a brief explaining their reasons for objecting to the disclosure of their documents. The court extended this invitation a second time in October 2006. The court also granted the New York State Banking Department two extensions until November 1, 2006 to submit its response.

As of October 19, 2006, 15 state agencies were still objecting to production of their documents. At a status conference that day, the court directed Plaintiffs to submit a proposal to resolve this matter. On October 27, 2006, Plaintiffs submitted a proposal agreeing not to seek further production from Delaware and Vermont if the court would order disclosures from Arizona, Hawaii, Iowa, Kansas, Minnesota, Ohio, and West Virginia, as well as three documents from North Carolina. Plaintiffs also indicated that the Wisconsin state agency had agreed to allow an *in camera* review of its documents, and asked the court to adopt the same proposal with respect to New Mexico.

On October 30, 2006, the court ordered that documents from Arizona, Iowa, Minnesota, and West Virginia be produced subject to the Protective Order. (Minute Order of 10/30/06, Doc. 746.) The court also accepted the Wisconsin proposal and found it a reasonable procedure with respect to the New Mexico documents, though it appears that New Mexico does not agree. (*Id.*) On October 31, 2006, moreover, New York agreed to the production of its documents subject to the Protective Order. (Letter from S. Kelsey to Judge Nolan of 10/31/06.) Thus, Plaintiffs have now received documents from 36 out of 45 states, encompassing agencies that supervised approximately 80% of Household's consumer lending branches during the Class Period. The remaining nine states (Delaware, Hawaii, Kansas, New Mexico, North Carolina, Ohio, Vermont,

---

[2] Household does business in a total of 45 states, and Defendants promptly produced documents from some 18 state agencies that did not object.

Wisconsin, and Wyoming) (collectively, the "Disputed States") maintain vigorous objections to the production of their documents in this case.

## DISCUSSION

Plaintiffs insist that they need documents from the Disputed States because they are relevant and not available from other sources. Plaintiffs also argue either that the documents are not subject to the bank examination privilege, or that good cause exists to override that privilege. Defendants claim that the documents are cumulative and only marginally relevant, and should not be produced over the states' objections.

### A.   The States' Objections

The court begins by reviewing the states' specific objections to disclosure of their agency documents. The Delaware Office of the State Bank Commissioner has asked that Defendants "withhold from production any documents that constitute confidential supervisory information pursuant to Section 145 of Title 5 of the Delaware Code." (Letter dated 10/10/06, Ex. E to Class' Status Report.) That statute defines "confidential supervisory information" as any report of examination; correspondence or communication to or from a financial institution in connection with an examination or inquiry; and any record of the State Bank Commissioner. 5 Del. Code § 145(a). All such confidential supervisory information "shall be the property of the Commissioner and shall be privileged and protected from disclosure to any other person and shall not be discoverable or admissible into evidence in any civil action." 5 Del. Code § 145(b).

The Hawaii Division of Financial Institutions, Department of Commerce and Consumer Affairs, has advised that "[a]n examination report and its contents are specifically stated in the [state] statute to be the property of the Commissioner [of Financial Institutions] and shall not be disclosed to anyone other than the financial institution or its agents." Specifically, Hi Stat. § 412:2-104(b) provides that each report of examination and its contents "shall remain the property of the

commissioner and shall not be disclosed to any person who is not an officer, director, employee or authorized auditor, attorney or other consultant or advisor of the financial institution or financial institution holding company." In its letter, the Hawaii Division of Financial Institutions explains that third parties may request such documents "but only through a subpoena" that "must be directed to the Commissioner, not the financial institution." Hi Stat. § 412:2-104(b). The Hawaii Division also notes that Defendants' conduct in providing Plaintiffs with some of these documents, "whether or not inadvertently, subjects your client(s) to penalties, including an administrative fine." Hi Stat. § 412:2-104(g). (Letter dated 8/17/06, Ex. E to Class' Status Report.)

The Kansas Office of the State Bank Commissioner seeks protection for its documents, noting the following language that is placed on the cover sheet to examination reports:

> This report and the information contained herein is confidential and is the exclusive property of the State of Kansas and is furnished to the licensee for its confidential use. Under no circumstances shall the licensee, or any of its directors, officers or employees disclose or make public in any manner this report or any portion thereof. If a subpoena or other legal process is received calling for production of this report, the Office of the State Bank Commissioner should be notified immediately.
>
> Further, it is our position that all correspondence to and from the licensee in response to an examination report constitutes part of the Administrator's private examination and are also subject to the confidentiality provisions of K.S.A. 16a-6-106.

(Letters dated 9/1/06 and 10/9/06, Ex. E to Class' Status Report.) The New Mexico Regulation and Licensing Department, Financial Institutions Division, similarly "maintains its objection to disclosure by Household International Inc. of documents that appear to be confidential under Section 58-1-48 NMSA1978." (Letter dated 10/16/06, Ex. J to Class' Proposal.) That statute provides that "[i]nformation from the records of the division shall be revealed only with the consent of the director." In addition, any examination reports and other financial information "may be released only by order of a court of competent jurisdiction." N.M. Stat. § 58-1-48.

The North Carolina Department of Justice ("DOJ") submitted a detailed memorandum explaining that N.C. Gen. Stat. § 53-99 prohibits disclosure of examination reports, work papers,

4

internal communications, correspondence, and other documents constituting "records of the Commissioner [of Banks]." (N.C. Memo, at 3, Ex. 1 to Def. Response.) The statute "does not create an exception for discovery" and the North Carolina DOJ urges that none can be recognized. According to the North Carolina DOJ, the documents in question "are a tool for financial regulation; they are not a tool to further private litigation." The North Carolina DOJ views the documents as "particularly sensitive" because examiners are encouraged to give candid comments and assessments, and "[a]ny disclosure of such information may be harmful to a licensee or members of the public, particularly when taken out of the regulatory context." (*Id.* at 4.) The North Carolina DOJ further urges that the examination reports and related documents are protected from discovery by the deliberative process privilege. Specifically, they are predecisional and reflect the deliberative process of the staff members who prepared them. (*Id.* at 6 (citing *J.R. Norton Co. v. Arizmendi*, 108 F.R.D. 647 (S.D. Cal. 1985).)

The Ohio Office of the Attorney General submitted a letter stating that the Ohio Department of Commerce, Division of Financial Institutions, "does not see any justification for releasing privileged and confidential documents in this shareholder action." (Letter dated 9/12/06, Ex. 1 to Def. Response.) The relevant Ohio statute provides that the superintendent of financial institutions may disclose confidential examination reports in three circumstances, none of which applies here.[3] Ohio Stat. § 1181.25. Notably, the Ohio Attorney General's Office warned that "[i]mproper

---

[3] Disclosure is permitted when (1) the superintendent believes it to be appropriate with regard to enforcement actions taken and decisions made by the superintendent under Chapters 1315, 1321, 1733, 4712, 4727, and 4728 of the Code; (2) litigation has been initiated by the superintendent in furtherance of the powers, duties, and obligations imposed upon the superintendent by Chapters 1315, 1321, 1733, 4712, 4727, and 4728 of the Code; and (3) the superintendent believes it to be appropriate with regard to enforcement actions taken and decisions made by other financial institution regulatory authorities to whom the superintendent has provided information under the authority of Chapters 1315, 1321, 1733, 4712, 4727, and 4728 of the Code. Oh. Stat. § 1181.25. The enumerated Code Chapters relate to check cashing businesses (Oh. Stat. § 1315 *et seq.*; small loan applications (Oh. Stat. § 1321 *et seq.*); credit unions (Oh. Stat. § 1733 *et seq.*); credit services organizations (Oh. Stat. § 4712 *et seq.*); pawnbrokers (Oh. Stat. § 4727 *et seq.*); and precious metals dealers (Oh. Stat. § 4728 *et seq.*)

disclosure of these documents constitutes a fourth degree felony." (Letter dated 9/12/06, Ex. 1 to Def. Response.)

Like the North Carolina Department of Justice, the Vermont Department of Banking Insurance Securities and Health Care Administration submitted a detailed memorandum explaining why its documents should not be disclosed. The relevant Vermont statute provides that "[r]egardless of source, all records of investigations . . . and all records and reports of examinations by the commissioner . . . shall be confidential and privileged, shall not be made public, and shall not be subject to discovery or introduction into evidence in any private civil action." 8 Vt. Stat. § 23. (*See also* Vt. Memo, at 2-3, Doc. 702.) The Vermont Department insists that the law does not grant it the statutory authority to waive the privilege and release confidential materials. (Vt. Memo, at 4-5.)

The Vermont Department further urges that its strong interest in protecting its bank examinations should bar release of the requested materials. (*Id.* at 5-8.) The Vermont Department sets forth the five factors courts consider in determining whether to order the release of privileged bank examinations and investigations, including (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable. (*Id.* at 6 (quoting *In re Bank One Sec. Litig.*, 209 F.R.D. 418, 427 (N.D. Ill. 2002).) The Vermont Department then explains how each factor weighs in favor of upholding the privilege, stressing its concern about the "chilling effect" disclosure may have on "the Department's ability to perform its regulatory function." (*Id.* at 5-8.)

The Wisconsin Department of Financial Institutions submitted a detailed letter explaining that Wis. Stat. § 220.06 prohibits disclosure of its documents. The Wisconsin Department notes that the state supreme court has held that the bank examination statute creates an "absolute

privilege" which has been recognized by federal courts. (Letter dated 10/2/06, Ex. 1 to Def. Response (citing *Cousins v. Pereles*, 169 Wis. 438, 172 N.W. 953 (1919); *National Sav. & Loan Ass'n v. St. Paul Fire & Marine Ins. Co.*, 515 F. Supp. 12, 14 (E.D. Wis. 1981).) The Wisconsin Department also insists that there is no good cause to overcome the privilege in this case, as required under the five-part balancing test. As the Department explains, "[d]isclosure, even under the confidentiality order of the case, would involve disclosure to dozens of individuals, including numerous defendants, plaintiffs, attorneys, accountants and other experts. It is probable that disclosure here could have exactly the type of chilling effect described by the courts." (Letter dated 10/2/06.)

Finally, the Wyoming Department of Audit, Division of Banking takes the position that "[p]ursuant to W.S. 13-3-701, W.S. 40-14-604, and W.S. 9-1-512, [the requested] documents are not public records and are not open for public inspection. Documents provided by our office regarding regulated entities are held to be confidential." (Letter dated 10/12/06, Ex. 1 to Def. Response.) The referenced Wyoming statute provides that "[t]he director of the state department of audit shall receive and place on file in his office all reports required by law. None of the reports, except as provided by W.S. 9-1-507(k)[4] and the published statement of banks and public offices, are public records or open for public inspection." Wy. Stat. § 9-1-512.

B. **Relevance**

With these strong state objections to disclosure in mind, the court considers whether the requested documents are relevant to these proceedings. Plaintiffs argue that the documents are probative of scienter and falsity in that the agencies "made factual findings to the effect that Household was engaged in predatory lending in violation of federal and state laws." (Class' Status

---

[4] Section 9-1-507(k) requires the director of the department of audit to "report on or before December 31 of each year to the governor and the legislature, financial information regarding counties, cities, towns and special districts." Wy. Stat. § 9-1-507(k).

7

Report, at 3-4.) This is not entirely accurate. As Defendants explain, the state agencies generally had a field inspector review a sampling of active accounts to check for compliance with a variety of laws, regulations, and standards on a broad range of subjects. (Def. Response, at 5.) The examiner then made observations about those accounts, including a notation of any errors or violations in assessing prepayment penalties. "The examiner's questions or observations were not the products of adjudicated proceedings, but rather starting points for further analysis by the Company, and/or an iterative process in which answers, defenses, explanations, differing statutory interpretations, etc. were explored as part of the Company's on-going dialogue with each agency." (*Id.*)

The court's review of similar agency documents from states that authorized disclosure, and *in camera* review of the agency documents at issue here, confirms that the state agencies did not in those documents affirmatively charge Household with predatory lending practices throughout its operations. Rather, they disclosed errors and violations discovered upon a review of particular accounts within their state. Household was then given an opportunity to remedy the violations to bring itself into compliance with the regulations. Given that Plaintiffs already have similar documents from 36 states, the court questions Plaintiffs' asserted need for additional documents from the remaining nine states, particularly at this late stage of the litigation. Significantly, in May 2002, Household began working with a Multi-State Task Force of state Attorneys General to resolve asserted concerns and threatened claims about allegedly abusive lending practices. Plaintiffs have received documents showing the Task Force Members' allegations and their bases, Household's responses, and other aspects of the negotiations. Plaintiffs have also received the October 11, 2002 agreement ultimately resolving the concerns on behalf of all 45 states in which Household does business. (Def. Response, at 7-8.) The regulatory reports at issue here cover the same general time period as the Attorneys General Settlement.

8

Nevertheless, under the liberal federal discovery rules, the requested documents remain "relevant" to this litigation. See, e.g., Burkybile v. Mitsubishi Motors Corp., No. 04 C 4932, 2006 WL 2325506, at *6 n.6 (N.D. Ill. Aug. 2, 2006) (noting "the broad and liberal construction afforded the federal discovery rules.") The question then remains whether Plaintiffs' interest in the documents outweighs the states' interests in preserving the confidentiality of their records.

## C.  Balancing of Interests

The parties agree that in determining whether to honor a state's request that its records remain confidential, the court must begin with an examination of the federal common law. Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981). In the absence of an existing federal privilege, the court must determine whether the federal common law should be expanded to include the asserted state law privilege. Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 450-51 (N.D. Ill. 2006). The Seventh Circuit has recognized that

> [a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.

Id. Evidentiary privileges must be narrowly construed, with the court "weigh[ing] the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." Id. at 1061-62.

### 1.  The Deliberative Process Privilege

Defendants and the Disputed States argue that the documents in question are protected by the deliberative process privilege.[5] This privilege "protects communications that are part of the

---

[5] Some states also assert a bank examination privilege, which provides protection to the banking industry analogous to the deliberative process privilege, but it is undisputed that the regulated entities at issue here are not banks. See In re Bank One Sec. Litig., 209 F.R.D. at 426 ("The bank examination privilege provides . . . protection for the banking industry . . .")

9

decision-making process of a governmental agency," and covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Evans v. City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (quoting *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) and *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)). The purpose of the privilege is "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Patterson v. Burge*, ___ F. Supp. 2d ___, 2006 WL 2331095, at *4 (N.D. Ill. Aug. 10, 2006). The privilege extends to "pre-decisional communications" on the theory that "if communications such as these were exposed the candor of government staff would be tempered with a concern for appearances to the detriment of the decisionmaking process." *In re Bank One Sec. Litig.*, 209 F.R.D. at 426 (quoting *Farley*, 11 F.3d at 1389).

To protect otherwise relevant information from disclosure, the government must first establish a prima facie case that the documents are privileged. This requires three things to occur: (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents. *Evans*, 231 F.R.D. at 316 (quoting *Ferrell v. U.S. Dep't of Housing and Urban Develop.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998)). If the government makes such a showing, the burden shifts to the litigant to show that it has a particularized need for the documents. *Id.*

In assessing a plaintiff's claimed "particularized need" for documents, the court balances the need for disclosure against the government's need for secrecy, considering:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues

10

involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental policies and decisions.

*Id.* (quoting *Ferrell*, 177 F.R.D. at 429).

### 2. Analysis

Plaintiffs devote little attention to the deliberative process privilege, focusing instead on the fact that the regulated entities are not banks for purposes of the bank examination privilege. (Class' Status Report, at 7-8.) The Disputed States have all submitted letters and/or briefs asserting formal claims of privilege over the specific documents requested by Plaintiffs, with differing degrees of specificity. The court has conducted an *in camera* review of each state's documents and considers their responses in turn.

#### a. Delaware

The letter from the Delaware Office of the State Bank Commissioner requests that Defendants "withhold from production any documents that constitute confidential supervisory information pursuant to Section 145 of Title 5 of the Delaware Code," but provides no explanation as to why the specific documents at issue should remain confidential. (Letter dated 10/10/06, Ex. E to Class' Status Report.) Nor has the Commissioner raised any specific concerns about disclosing the documents, such as the chilling of future deliberations within government agencies. This does not satisfy the requirements set forth in *Evans* that the government offer "precise and certain reasons for preserving the confidentiality of the documents in question." 231 F.R.D. at 316. Nevertheless, Plaintiffs have proposed foregoing documents from Delaware in the interests of compromise and advancing the litigation. The court thus finds that Plaintiffs' particularized need for disclosure is outweighed by the state's interest in confidentiality. *Id.* The Delaware state agency documents need not be produced.

11

### b. Hawaii

The Hawaii Division of Financial Institutions has informed the court that third parties seeking the disclosure of confidential agency documents must serve a subpoena upon the Commissioner of Financial Institutions. To the court's knowledge, Plaintiffs have not followed this course of action. The court declines to order disclosure of the Hawaii state agency documents until Plaintiffs have exhausted their remedies with the state.

### c. Kansas

The Kansas Office of the State Bank Commissioner has asserted a formal claim of privilege, noting that the Administrator of the Kansas Uniform Consumer Credit Code "has decided to conduct private examinations of all licensees." (Letter dated 10/9/06.) The Kansas Office has not, however, provided "precise and certain reasons for preserving the confidentiality of the documents in question." *Evans*, 231 F.R.D. at 316. Nor has the Kansas Office addressed any of the factors that may establish good cause to overcome the privilege. Under these circumstances, the court finds that the Plaintiffs' showing of particularized need for disclosure outweighs the Kansas Office's stated interest in confidentiality. The Kansas state agency documents must be produced subject to the Protective Order.

### d. New Mexico

The letter from the New Mexico Regulation and Licensing Department asserts a claim of privilege, but provides no explanation as to why the requested documents are in fact confidential under N.M. Stat. § 58-1-48. *See Evans*, 231 F.R.D. at 316 (requiring "precise and certain reasons for preserving the confidentiality of the documents in question.") Significantly, the Department confirms that "these records may be released . . . by order of a court of competent jurisdiction." (Letter dated 10/16/06.) The court thus orders the release of the New Mexico state agency documents subject to the Protective Order.

### e. North Carolina

The North Carolina DOJ submitted several letters and a detailed memorandum to the court asserting a formal claim of privilege; identifying the specific documents in question; and stating precise reasons for preserving the documents' confidentiality. *Evans*, 231 F.R.D. at 316. The North Carolina DOJ confirms that the documents contain candid, predecisional comments and assessments from examiners, and that "[a]ny disclosure of such information may be harmful to a licensee or members of the public, particularly when taken out of the regulatory context." The court finds that North Carolina's strong interest in preserving the confidentiality of its records outweighs Plaintiffs' claimed particularized need for disclosure. As noted, Plaintiffs already have similar documents from some 36 states, and will receive additional documents from Kansas, New Mexico, Ohio, and Wyoming. (*See infra.*) The North Carolina state agency documents need not be produced.

### f. Ohio

The Ohio Office of the Attorney General states that the Ohio Department of Commerce "does not see any justification for releasing the privileged and confidential documents in this shareholder action." The Ohio Attorney General provides no explanation, however, as to why the documents are confidential, and offers no discussion as to whether good cause exists to overcome the privilege. Under these circumstances, the court finds that Plaintiffs' showing of particularized need for disclosure outweighs the Ohio Department's stated interest in confidentiality. The Ohio state agency documents must be disclosed subject to the Protective Order.

### g. Vermont

Like the North Carolina DOJ, the Vermont Department of Banking submitted several letters and a detailed memorandum to the court asserting a formal claim of privilege and stating precise reasons for preserving the confidentiality of its documents. *Evans*, 231 F.R.D. at 316. The

13

Department also explained in detail why its interest in confidentiality outweighs Plaintiffs' interest in disclosure. For example, Plaintiffs have access to the same raw data considered by the Department and can obtain information through Household employee depositions. In addition, the Department "is very concerned about the 'chilling effect' that an order to require the Household Defendants to produce the investigations and examination would have on the Department's ability to perform its regulatory functions." (Vt. Memo, at 6-8.) As the Department explains, it would be difficult if not impossible to have open and meaningful discussions if the parties involved "constantly have to be concerned that the Department's regulatory and examination function is nothing more than a free and easy discovery process for future plaintiff's counsel." (*Id.* at 8.)

The court agrees that the Vermont Department's strong interest in confidentiality outweighs Plaintiffs' claimed particularized need for disclosure, and declines to order production of the Vermont state agency records.

### h. Wisconsin

The Wisconsin Department of Financial Institutions submitted several letters asserting a formal claim of privilege; identifying the specific documents in question; and stating precise reasons for preserving the documents' confidentiality. *Evans*, 231 F.R.D. at 316. Notably, the Wisconsin Department agreed to the production of several documents in redacted form. (Letter dated 9/8/06.) As for any showing of good cause to overcome the privilege, the Department observes that the evidence Plaintiffs seek is cumulative in light of the documents they have received from other states and the Attorneys General Settlement. The Department also confirms that the documents contain opinions and recommendations regarding Household's compliance with Wisconsin law, and urges that disclosure would likely have "exactly the type of chilling effect described by the courts." The court finds that the Wisconsin Department's strong interest in confidentiality outweighs

Plaintiffs' claimed particularized need for disclosure. The Wisconsin state agency records need not be produced.

### I. Wyoming

The letter from the Wyoming Department of Audit asserts a claim of privilege but provides no explanation as to why the requested documents should be kept confidential. See *Evans*, 231 F.R.D. at 316 (requiring "precise and certain reasons for preserving the confidentiality of the documents in question.") Nor does the Wyoming Department address whether good cause exists to overcome the stated privilege. This does not satisfy the requirements of *Evans* and, thus, the court finds that Plaintiffs' showing of particularized need for disclosure outweighs the Wyoming Department's asserted interest in confidentiality. The Wyoming state agency documents must be produced subject to the Protective Order.

### D. Household's Internal Documents

In addition to the above state agency documents, Plaintiffs also seek disclosure of Household's internal documents relating to the state agency examinations. The court has reviewed Defendants' Logs of Documents Withheld from Production, in Whole or in Part, on the Basis of State Regulations, Doc. 753, and orders production of all internal documents to the extent the court has ordered production of the state agency records; i.e., Defendants must produce internal state agency-related documents for Kansas, New Mexico, Ohio, and Wyoming. Defendants must also produce any internal state agency-related documents that do not reveal confidential state agency information.

### **CONCLUSION**

For the reasons stated above, the Class' motion regarding state agency documents [Doc. 632, 636] is granted in part and denied in part.

ENTER:

Dated: November 16, 2006

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge