IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | 02 C 5893 (Consolidated) |
| HOUSEHOLD INTERNATIONAL, INC., MERRILL LYNCH, PIERCE, FENNER, & SMITH, INC., GOLDMAN SACHS & CO., INC., ARTHUR ANDERSEN, L.L.P., WILLIAM F. ALDINGER, DAVID A. SCHOENHOLZ, GARY GILMER, J.A. VOZAR, ROBERT J. DARNALL, GARY G. DILLON, JOHN A. EDWARDSON, MARY JOHNSTON EVANS, J. DUDLEY FISHBURN, CYRUS F. FREIDHEIM, LOUIS E. LEVY, GEORGE A. LORCH, JOHN D. NICHOLS, JAMES B. PITBLADO, S. JAY STEWART, and LOUIS W. SULLIVAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this class action have sued defendants for securities fraud and allege in part that the fraudulent scheme involved Household International, Inc. and Household Finance Corp.'s (collectively "Household") predatory lending, loan reaging, and restructuring practices from July 30, 1999 to October 11, 2002 (the "Class Period").[1] Before the Court are plaintiffs' objections to Magistrate Judge Nan R. Nolan's order denying plaintiffs' motion to compel

---

[1] For a complete factual background, *see Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 8293, 2004 WL 574665, at *1-3 (N.D. Ill. Mar. 22, 2004).

discovery of certain post-Class Period information ("the Order"). For the reasons stated herein, the Court rejects plaintiffs' objections and adopts the Order in full.

**Background**

During discovery in this case, defendants have produced over four million pages of documents, including post-Class Period documents that relate to any state or federal investigation into Household's lending practices and policies, reaging practices and policies, and earnings restatements that occurred during the Class Period. (Order 1-2.) This included all documents that Household had produced during the Securities and Exchange Commission's ("SEC") investigation of Household, which encompassed documents relating to the post-Class Period. (*Id.* 2.)

Nonetheless, plaintiffs feel they are entitled to even more post-Class Period discovery. In particular, they seek further responses to Interrogatories Nos. 5-8 and 10-12, and even more documents. (*Id.*) As described by Magistrate Judge Nolan:

> Interrogatory Nos. 5-8(a) ask Defendants to identify by quarter for every business unit within each Household subsidiary: (a) the amount of revenues and net income for both owned and managed real estate secured loans that were derived from (5) finance charges; (6) discount points; (7) sale of single premium credit life insurance; and (8) prepayment penalties. Interrogatories 5-8(b) ask Defendants to identify by quarter for every business unit within each Household subsidiary: (b) the number of loans that were derived from (5) finance charges; (6) discount points; (7) sale of single premium credit life insurance; and (8) prepayment of penalties.
>
> In Interrogatory No. 10, Plaintiffs ask Defendants to identify by quarter the average revenue and net income for real estate secured loans, exclusive of those loans related to revenue and net income for which EZ Pay or any biweekly payment plan was employed. In Interrogatory No. 11, Plaintiffs ask Defendants to identify by quarter the percentage of both owned and managed real estate secured

2

loans that carried a second loan (secured or unsecured) with an interest rate of 20% or higher. Interrogatory No. 12 requests "[f]or each quarter during the Relevant Period, for all real estate secured loans that carried a second loan (secured or unsecured) with an interest rate of 20% or higher, state the amounts of the first real estate secured loan and the second loan (secured or unsecured).

(*Id.* 2-3 (citations omitted).)

In addition, plaintiffs sought more documents in response to twenty-four itemized requests spanning three separate requests to produce. (*Id.* 3.) As described by Magistrate Judge Nolan:

> First Request No. 10 seeks "[a]ll documents and communications concerning Household's policies and practices relating to loan delinquencies, charge-off and reaging of loans." Second Request Nos. 5 and 6 seek all documents and communications relating to Household's Audit Committee meetings and internal audits of the Consumer Lending, Mortgage Services, Retail Services, Auto Finance, and Credit Card Services business units. Second Request No. 8 seeks all documents and communications relating to or reflecting Household's use of discount points in its real estate loans. Second Request No. 9 seeks all documents . . . relating and communications relating to "the setting aside of reserves for delinquent or defaulting loans." Second Request No. 32 seeks all documents and communications relating to the Credit Risk Committee.
>
> Third Request Nos. 1 and 2 seek documents supporting Household's credit loss reserves calculations for both owned and managed receivables. Third Request Nos. 3-5 seek documents reflecting or demonstrating that the loan (portfolio) performance data, loss and delinquency trends, and roll rate models for each business unit at Household were revised or modified "contemporaneous with or subsequent to the SEC's determination that Household's disclosures regarding Household's reaging or restructuring policies were false and misleading." Third Request No. 6 seeks documents supporting "the recorded gain or loss on sale, credit loss reserves under the recourse provisions, servicing revenue and excess spread, as a result of securitization of receivables." Third Request Nos. 9-13 seek documents that track, analyze, or describe (a) prepayment penalties, (b) sales of single premium credit life insurance, (c) discount points, (d) EZ Pay accounts, and (e) second loans with an interest rate in excess of 20%. Third Request Nos. 21-24 seek monthly reports that track (a) average interest rate for personal home loans, personal equity loans, first loans, and second loans, (b) revenue recognized on origination fees, and total points charge on loans, (c) net interest margin, and (d) average loan to value ratio.

3

> Third Request No. 25 seeks documents that "assess the financial impact of the multi-state Attorneys General settlement relating to discount points, single premium credit life insurance, and prepayment penalties." Third Request Nos. 27 and 30 seek monthly reports concerning or related to (a) the allocation of insurance revenue and/or profit provided by Insurance Services, and (b) the analyses of the imposition or reversal of finance charges. Finally, Third Request No. 31 seeks documents that track or analyze rewrites or rewritten loans separately from restructures.

(*Id.* 3-4 (citations omitted).)

Plaintiffs argued before Magistrate Judge Nolan that such information is "pertinent to the Class' claims as it addresses predatory lending practices committed during the Class Period and their impact on Household's financial performance" and is "critically relevant to the Class' allegation that Household's arbitrary reaging and restructuring practices during the Class Period defrauded investors." (Class' Stmt. Regarding Post-Class Period Info. Submitted Pursuant Ct.'s Mar. 9, 2006 Direction ("Class' Stmt.") 4.) According to plaintiffs, documents created after the SEC consent order and the settlement with state Attorneys General may reveal: (1) whether Household actually implemented the changes it was required to implement; (2) Household's knowledge of its earlier improper policies and practices; and (3) the financial impact of those practices. (*Id.*) By comparing Class Period and post-Class Period documents, including any deterioration in Household's financial situation after the Class Period, plaintiffs hope to be able to show that Household's Class Period practices were insufficient to result in the solid financial situation Household claimed it was in, and that Household's false statements misled investors. (*Id.*) In short, plaintiffs contend that such information is relevant to the securities fraud elements of scienter, materiality, and damages. (*Id.*)

4

Magistrate Judge Nolan denied plaintiffs' motion to compel such discovery. (Order 1, 10, 11.) While agreeing with the general proposition that post-Class Period information may be discoverable in certain circumstances, *see id.* 5, Magistrate Judge Nolan held that "the burden imposed on Household in repeating its already extensive document search and production to locate post-Class Period documents outweighs any likely benefit to Plaintiffs." (*Id.* 9.) In particular, Magistrate Judge Nolan noted that plaintiffs have already received over four million pages of documents, including thousands of documents from the post-Class Period. (*Id.* 8-10.) Magistrate Judge Nolan also found that plaintiffs' request for post-Class Period discovery rested in large part on a discredited legal theory, *i.e.*, that by merely showing that Household's revenues and stock values declined after it ceased certain fraudulent practices, plaintiffs could prove that the higher revenues and higher stock prices during the Class Period must be the result of those fraudulent practices. (*Id.* 10 (citing *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 343 (2005)).) Accordingly, Magistrate Judge Nolan found that "[p]laintiffs have not satisfied the court that post-Class Period information responsive to [plaintiffs' requests at issue here] will serve to advance this case or otherwise assist plaintiffs in any meaningful way." (*Id.* 10.) Moreover, given the parties' unwillingness to cooperate to resolve any discovery disputes without court intervention, Magistrate Judge Nolan stated that "the court suspects that extending the scope of discovery at this late stage will serve only to create further unnecessary delay and to impose further strain on the court's limited resources." (*Id.*)

## Discussion

In reviewing a discovery-related order issued by a magistrate judge, a district judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed R. Civ. P. 72(a); *see also Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). Under this review standard, a judge will not overturn a magistrate judge's ruling unless "the district court is left with the definite and firm conviction that a mistake has been made. *Weeks*, 126 F.3d at 943; *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2004 WL 609326, at *3 (N.D. Ill. Mar. 23, 2004).

Plaintiffs contend that Magistrate Judge Nolan misapplied the law when she: (1) failed to follow Seventh Circuit precedent holding that post-Class Period information is relevant; (2) overlooked the fact that defendant's prior production was not responsive to the requests at issue here; and (3) improperly relied upon the volume of prior production in holding that the requested discovery would impose an undue burden on defendants and cause undue delay. (Mem. Supp. Class' Objection Magistrate Judge's June 15, 2006 Order Post-Class Period Discovery ("Objection") 1.) Plaintiffs also contend that Magistrate Judge Nolan's ruling will prejudice them because it allows defendants to "selectively produce" certain post-Class Period information while "withholding negative documents and information." (*Id.*) The Court respectfully disagrees and rejects plaintiffs' objections.

First, Magistrate Judge Nolan gave appropriate deference to precedent holding that post-Class Period information is relevant. Magistrate Judge Nolan stated expressly that "[t]he court agrees with the general proposition that post-Class Period documents may be relevant in

certain circumstances." (Order 5.) However, Magistrate Judge Nolan held that the cases cited by plaintiffs were easily distinguishable because in this case plaintiffs have already received thousands of pages of documents from the post-Class Period relating to the investigations by, and settlement with, state attorneys general, including documents relating to implementation and monitoring of, and communications concerning, changes to Household's policies and/or practices following the settlement ("prior post-Class Period production"). (*See id.* 2, 5-6 (noting that several cases were decided at the pleading stage and none involved an additional request for discovery after prior discovery on par with that conducted in instant case).) Thus, the magistrate judge did not draw an arbitrary temporal line in the sand with regard to discovery in this case. She merely found that plaintiffs were not entitled to additional discovery beyond that which they had already received. This Court finds no error in her analysis.

Plaintiffs' argument assumes that relevance is the only factor to be considered when determining whether to compel discovery. However, it is well-settled that the district courts have broad discretion in deciding discovery matters, to both ensure that a party is not burdened with producing insufficiently probative information and to ensure that the court's resources are allocated in a manner most conducive to producing justice. *See Montgomery v. Davis*, 362 F.3d 956, 957 (7th Cir. 2004). Discovery may be limited if it is "unreasonably cumulative or duplicative . . . [or if] the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case." Fed. R. Civ. P. 26(b)(2). Thus, contrary to plaintiffs' contention, the mere fact that further discovery might be relevant does not mean that plaintiffs are entitled to that discovery. Magistrate Judge Nolan held that the burden on Household in having to produce the documents sought is immense due to the sheer breadth of the

plaintiffs' requests and the burden on the Court in having to police contentious discovery battles over the marginally probative information that plaintiffs seek will impose further strain on the Court's limited resources.

Second, although plaintiffs opine that Magistrate Judge Nolan erred by failing to consider that the prior post-Class Period production was not made in response to the requests at issue here, *see* Objection 11-12, they do not explain specifically how the additional requested documents will further their case. Indeed, the closest plaintiffs come to such an explanation is their reliance on a discredited legal theory. Plaintiffs hope to prove their case by showing that it would have been impossible for defendants to earn the revenues they did during the Class Period, and thus impossible to obtain an inflated stock purchase price, without their fraudulent misrepresentations. (*See* Class' Stmt. 4.) Plaintiffs would like to do so by showing that post-Class Period revenue decreased, and in turn, resulted in a deflated stock purchase price, after defendants ceased their fraudulent misrepresentations. (*Id.*) However, merely showing that defendants achieved lower revenues which were reflected in a deflated stock price after disclosure of defendants' misrepresentations is insufficient to establish a securities fraud action. *See Dura*, 544 U.S. at 343. As the *Dura* Court noted, a lower stock price may be caused by a host of market factors unrelated to fraudulent misrepresentations, including "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* Thus, it was not clearly erroneous for Magistrate Judge Nolan to conclude that any additional post-Class Period information was of only "marginal probative value." (Order 10.)

Third, although plaintiffs object to Magistrate Judge Nolan's reliance on the total volume of documents already produced in determining the burden on defendants, *see* Objection 10, it is clear that the volume of past discovery is a relevant consideration. A voluminous prior production makes it considerably more likely that further discovery will be duplicative. *See* Fed. R. Civ. P. 26(b)(2)(i). Also, the volume of prior discovery is a useful reference for estimating the burden that will be imposed on defendants by requiring them to repeat procedures similar to those that resulted in the prior production. (Mem. Household Defs. Opp'n Class' Stmt. 4-5; *see* Order 9.) Thus, Magistrate Judge Nolan properly considered the volume of prior production when attempting to balance the usefulness of any further discovery against the burden of its production. In so doing, she found the burden of further production "immense." (Order 10.) Considering the broad scope and exhaustive depth of plaintiffs' requests, this Court agrees. Accordingly, it does not find her conclusion clearly erroneous or contrary to law.

Magistrate Judge Nolan also found that conserving the Court's limited resources militated against compelling the discovery plaintiffs seek. (*See id.*) In particular, Magistrate Judge Nolan noted the inability of plaintiffs and defendants to cooperate in resolving even minor discovery disputes, and she found that extending discovery would only cause "unnecessary delay" and "further strain the court's limited resources." (*Id.*) Because the Court must preserve its resources so they can be used to promote justice, *see Montgomery*, 362 F.3d at 957, such a finding is relevant. And that finding is perfectly reasonable in light of the factual background and behavior of the parties in this case.

Finally, plaintiffs assert that allowing Magistrate Judge Nolan's decision to stand will prejudice them by allowing defendants to "cherry-pick" for production only those documents that

are of no use to plaintiffs. (*See* Objection 1, 11-12.) As noted above, defendants in this case have already provided plaintiffs with all of the documents Household produced during the SEC investigation and all post-Class Period information relevant to any other state or federal investigation. In light of this fact, plaintiffs' argument that they will be prejudiced because defendants can simply withhold incriminating documents rings hollow. The simple fact that defendants have entered into a Consent Order with the SEC and have settled with the Attorneys General, supports the proposition that those entities received documents from defendants that incriminated them. If not, the Court cannot comprehend how the SEC could conclude that defendants' statements regarding the practices at issue here were "false and misleading." (Objection, Ex. F, Order Instituting Cease-and-Desist Proceedings, Making Findings, and Imposing Cease-and-Desist Order at 3.) Given that plaintiffs now possess those documents, this Court will not allow plaintiffs to troll already chartered waters.

In sum, plaintiffs have already received post-Class Period documents that relate to the Class Period, relied on a discredited legal theory to support their motion to compel, and failed to show (beyond restating that post-Class Period documents may be relevant to securities fraud class actions) how further production will meaningfully advance their case. For these and all other reasons discussed above, the Court holds that Magistrate Judge Nolan's denial of plaintiffs' motion to compel was not clearly erroneous or contrary to law. Accordingly, the Court rejects plaintiffs' objections.

## Conclusion

For the foregoing reasons, the Court rejects plaintiffs' objections and adopts in full Magistrate Judge Nolan's order denying plaintiffs' motion to compel discovery of certain post-Class Period information.

**SO ORDERED**               ENTERED: 11/22/06

**HON. RONALD A. GUZMAN**
**United States Judge**