## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, )<br><br>Plaintiffs, )<br><br>- *against* - )<br><br>HOUSEHOLD INTERNATIONAL, INC., ET AL., )<br><br>Defendants. ) | Lead Case No. 02-C-5893<br>(Consolidated)<br>CLASS ACTION<br>Judge Ronald A. Guzmán |

## DEFENDANTS' MOTION FOR JUDGMENT
## AS A MATTER OF LAW PURSUANT TO RULE 50(b)

Defendants Household International, Inc., William F. Aldinger, David A. Schoenholz and Gary Gilmer (collectively, "Defendants"), by and through their attorneys, hereby move for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure,[1] on each of the following grounds:

---

[1] No judgment can be (or has been) entered in this bifurcated proceeding until both liability and damages have been fully resolved. The time limitations for post-judgment motions do not begin to run until a separate document setting forth the judgment in compliance with Rule 58 has been entered. *Dunn v. Truck World, Inc.*, 929 F.2d 311, 313 (7th Cir. 1991). Defendants do not waive and expressly reserve the right to file additional post-trial motions, if necessary, as late as after the conclusion of the remainder of this bifurcated proceeding. However, pursuant to the Court's instructions on May 7, 2009, Defendants file this Motion to address the initial class-wide verdicts, with a supporting memorandum to follow not later than July 6, 2009.

1.    Defendants are entitled to judgment on all Rule 10b-5 claims[2] because Plaintiffs did not satisfy their burden of proving "both that the defendants' alleged misrepresentations artificially inflated the price of the stock and that the value of the stock declined once the market learned of the deception." *Ray* v. *Citigroup Global Markets, Inc.,* 482 F.3d 991, 995 (7th Cir. 2007) (emphasis added).[3]

(a)    The jury's purported finding of inflation based solely on the legally untenable "leakage theory" renders any finding of loss causation unsupportable as a matter of law. As Plaintiffs' expert Daniel Fischel admitted, the "leakage" model submitted to the jury included as inflation stock price movements that were "not at all fraud related." (Tr. 2959:24 - 2960:17.) This type of "leakage model" has been consistently rejected for failure to comply with the requirements of *Dura Pharmaceuticals* v. *Broudo*, 544 U.S. 336 (2005), most recently by the Tenth Circuit Court of Appeals. *See In re Williams Securities Litigation*, 558 F.3d 1130, 1135 (10th Cir. 2009). Moreover, the jury's finding that 23 of the 40 challenged statements were not actionable securities fraud further renders the "leakage" theory legally unsupportable because the jury applied the model in a manner that is inconsistent with the theory and the assumptions upon which it

---

[2]    References to Rule 10b-5 claims herein refer to claims under Section 10(b) and Rule 10b-5.

[3]    Plaintiffs' inability to satisfy the required element of loss causation has been repeatedly raised by Defendants and deferred by this Court. On August 30, 2007, Defendants filed their Motion for Implementation of Repose Bar Order (Dkt. 1120, 1121), based on Plaintiffs' judicial admission that their claims arise from alleged artificial inflation that was introduced into the price of Household stock during the period of repose, which this Court denied without prejudice pending further development of Professor Fischel's expected testimony. After further discovery, Defendants briefed the core issue of loss causation again in their May 12, 2008 Motion for Summary Judgment (Dkt. 1227), squarely challenging Plaintiffs' lack of proof that any alleged misstatement or omission during the Relevant Period had the requisite market effect. This Court likewise deferred ruling on Defendants' Motion for Summary Judgment. Yet this Court noted, "If [Plaintiffs] fail to prove a sufficient nexus between their losses and the untrue statements they allege, then they will not prevail." (March 16, 2009 Minute Order, Dkt. 1510); and "If [Plaintiffs'] expert fails to show that there was inflation in price [Defendants] win." (Pretrial Conference Tr. 160:24-25 (Mar. 13, 2009).) Plaintiffs have been fully heard on this issue, and the inescapable conclusion is that Defendants are entitled to judgment as a matter of law.

was conceived.  Plaintiffs' "leakage" theory also impermissibly allowed a finding that the total sum of inflation from Plaintiffs' three separate theories entered the stock price simultaneously as a result of a statement relating to only one of those theories, and led the jury impermissibly to find that inflation increased on days where actionable state- ments were not alleged (or where the jury *rejected* Plaintiffs' alleged false statement) and that inflation decreased on certain days before the fraud was allegedly revealed.  Because the jury rejected Professor Fischel's legally and factually defective "specific disclosures" model, its finding of loss causation as to any portion of the verdict was supported, if at all, only by the discredited "leakage" model.  Accordingly, Plaintiffs have failed to prove loss causation and thus Defendants are entitled to judgment as a matter of law.

       (b)     Professor Fischel failed to identify, by analysis or otherwise, any day when the alleged inflation entered the stock price.  Instead, both of his models showed that the entire amount of alleged inflation existed (i) on the first day of the Rele- vant Period and (ii) on each day of the Relevant Period *before* the jury found any action- able false statement.  Professor Fischel's analysis also showed that only **one** of the doz- ens of statements that Plaintiffs alleged to be false actually caused the amount of artificial inflation in the price of Household stock to increase.  (Tr. 2873:20-2875:10, 2899:7- 2900:9, 2901:17-2919:20).  Because the loss causation analysis must prove, *inter alia,* "that the defendants' alleged misrepresentations artificially inflated the price of the stock," *Ray*, 482 F.3d at 995, this dispositive admission entitles all Defendants to judg- ment as a matter of law on all but one of the alleged false or misleading statements.

       (c)     The absence of any proof that these statements introduced artificial inflation during the Relevant Period precluded the jury from finding the required nexus between the alleged misrepresentations and the decline in Household's stock price which occurred near the end of the Relevant Period.[4]  Plaintiffs therefore failed to prove, as they were required for each allegedly fraudulent statement or omission, "a causal connec- tion between the alleged material misrepresentation and the loss." *Tricontinental Indus-*

---

[4]    The Relevant Period is "between July 30, 1999 and October 11, 2002."  Memorandum and Order of February 28, 2006 (Dkt. 434).

*tries, Ltd.* v. *PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007) (citation omitted).

(d)    Testimony from Plaintiffs' experts established that Plaintiffs did not prove the required causal connection between an alleged material misrepresentation and a loss *during* the Relevant Period allegedly arising from their "reaging" theory of fraud.  In particular, both Plaintiffs' accounting expert Harris Devor and Professor Fischel admitted that the falsity of certain alleged fraudulent statements in Household's 2001 10-K (filed March, 2002) was not revealed until Household filed an amended 2001 10-K in March 2003, some five months *after the end of the Relevant Period*.  Moreover, even if it were assumed that certain minor misstatements made in the course of the April 9, 2002 Financial Relations Conference were material (which Defendants dispute), the undisputed facts demonstrated that they were *never* revealed to be "false" during the Relevant Period.  These admissions and undisputed facts preclude a finding of loss causation with regard to the "reaging" statements at issue.

2.    Defendants are entitled to judgment on all Rule 10b-5 claims under the Statute of Repose.  Plaintiffs' loss causation analysis showed that the price of Household stock allegedly became inflated during the period of repose, and Professor Fischel admitted that with one transient exception, any inflation that allegedly dissipated towards the end of the Relevant Period was **not** introduced by any of the Relevant Period misstatements that Plaintiffs alleged.  These judicial admissions entitle Defendants to judgment pursuant to this Court's ruling that Plaintiffs may not proceed on any "§ 10(b) claims based on any misrepresentation or omission that occurred before July 30, 1999 in connection with the sale or purchase of a security."  (February 28, 2006 Memorandum Opinion and Order at 6 (Dkt. 434).)

3.    Defendants are entitled to judgment on all Rule 10b-5 claims in view of Plaintiffs' failure to prove materiality.  Professor Fischel's admission that, with only a minor exception, the allegedly fraudulent statements at issue did not introduce inflation in the price of Household stock precluded a finding of materiality because "if a company's disclosure of infor-

mation has no effect on stock prices, 'it follows that the information disclosed . . . was immaterial as a matter of law.'" *Oran* v. *Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (citation omitted).

      4.     Defendants are entitled to judgment with respect to Plaintiffs' Rule 10b-5 claims arising from Household's August 14, 2002 restatement. Plaintiffs proved nothing beyond the mere fact of the restatement, and as a matter of law (as Plaintiffs have acknowledged in this action), proof of alleged GAAP violations or a restatement of income standing alone is not sufficient to support a finding of securities fraud. The jury's finding that each of the identically presented financial statements was non-fraudulent from 1999 through January 2001 but fraudulent thereafter further confirms Plaintiffs' failure of proof with respect to scienter. Plaintiffs adduced no proof or explanation as to how scienter regarding the restatement could have suddenly arisen between January and March, 2001. Furthermore, the jury's impermissible finding that the second quarter 2002 10-Q, filed on August 14, 2002 using the newly revised accounting treatment, was misleading as to the restatement suggests that it determined that the restatement "fraud" continued after August 14, 2002 and was never corrected within the Relevant Period (entitling Defendants to judgment as a matter of law on loss causation). The Court's refusal to include Arthur Andersen in the verdict form's "percentage of responsibility" calculation not only violated PSLRA requirements, but also highlights Plaintiffs' failure of proof, because the holding that there was insufficient evidence as to Andersen's scienter, *vel non*, was equally applicable to the identical restatement claims against Defendants.

      5.     Household's recognition of actual revenues and growth from consumer lending activities is not actionable as securities fraud. Although the Court recognized this in its March 23, 2009 Minute Order regarding Defendants' *Daubert* Motion to Exclude the Expert Testimony of Harris Devor (Dkt. 1528), Plaintiffs were nevertheless allowed to proceed on the

indistinguishable theory that a large percentage of Household's revenue during the Relevant Period was "attributable" to undisclosed "predatory lending," notwithstanding the lack of any proof that reported lending revenues and growth were not actually achieved. The Court's ruling that Defendants had a duty to disclose in certain of Household's public filings that Household engaged in "predatory lending" practices was incorrect as a matter of law, and general denials of "predatory lending" practices (such as the March 23, 2001 remark stating that unethical lending practices were abhorrent to Household) are not actionable as securities fraud.

6.      Defendants are entitled to judgment with respect to all alleged "credit quality concealment" claims under Rule 10b-5 because Household fully, candidly and accurately disclosed its evaluation of probable loan losses, typically in the same portions of public filings from which Plaintiffs elicited out-of-context reports of "2+" delinquency statistics.

7.      The public awareness of Household's business model, challenged practices and related investment risks precluded a finding of fraudulent concealment because the "securities laws do not require companies to 'disclose' information that is already in the public domain." *Higginbotham* v. *Baxter International, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007). The market was fully aware of all material information regarding Household's business operations and attendant risks.

8.      Defendants are entitled to judgment on all Rule 10b-5 claims because Plaintiffs did not introduce evidence sufficient to support a finding that any Defendant acted with scienter, defined as  "a mental state embracing intent to deceive, manipulate or defraud." *Tellabs*, *Inc. v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499, 2507 (2007).

(a)      The jury's finding that none of the challenged statements up to and including the January 17, 2001 press release was fraudulent highlights Plaintiffs' failure of

proof.  Although the jury found that the 2000 10-K filed on March 28, 2001 was action-able under each of Plaintiffs' three theories as to all four Defendants, the non-fraudulent January 17, 2001 and fraudulent March 28, 2001 statements were essentially the same: both announced earnings and net income, applauded growth, profitability and improved credit quality, and set out chargeoff and delinquency statistics.  There is no evidence in the record that any facts that might have given rise to scienter or materiality occurred dur-ing the two-month period between those statements (either generally, or as to each theory and each Defendant).

(b)      The jury impermissibly found primary liability on the part of various indi-viduals for statements made by others throughout the period, notwithstanding the fact that no primary liability can attach to a non-speaking actor.  *See Stoneridge Investment Part-ners, LLC v. Scientific-Atlanta*, 128 S.Ct. 761 (2008).  For example, the jury impermissi-bly found Mr. Aldinger primarily liable for a statement he did not make -- Mr. Gilmer's March 23, 2001 statement regarding predatory lending.

(c)      The jury impermissibly found that the Company and Mr. Aldinger acted "knowingly" as to Mr. Gilmer's March 23, 2001 statement, while finding that Mr. Gilmer himself was only reckless with regard to that same statement.  A finding that Mr. Aldinger knowingly made a false statement (that he did not make) while the actual speaker (who had direct responsibility for the business unit whose practices were ad-dressed in the statement) was at most reckless is not supported by the evidence.

(d)      Furthermore, finding that Mr. Aldinger and the Company acted knowingly with respect to the March 23, 2001 statement -- the *only* knowing violation found by the jury -- cannot be reconciled with the finding that all later actionable statements (including

the one dated March 28, 2001) were made at most recklessly. Either Mr. Aldinger and everyone else at the Company with applicable knowledge forgot that the Company was "predatory" over those five days (notwithstanding a lack of evidence to that effect), or the verdict demonstrates a glaring and impermissible internal inconsistency. This inconsistency entitles Defendants to judgment as a matter of law that the March 23, 2001 statement was not made with actual knowledge of falsity.

9.      Defendant Gary Gilmer is entitled to judgment on all Rule 10b-5 and Section 20(a) claims because Plaintiffs introduced no evidence from which the jury could find that he had responsibility for preparing, approving or issuing any of the financial reports the jury found to be false and misleading, and the only statement attributed to him — a 2001 remark to the effect that unethical lending practices were abhorrent to Household and its employees and customers — is not actionable as securities fraud. Mr. Gilmer cannot be held liable for false statements relating to the restatement theory because those statements related to a different business unit of the Company that Mr. Gilmer had no involvement with or responsibility for, and (as the jury found) Mr. Gilmer was not a control person under Section 20(a) as to any other Defendant.

10.      All Individual Defendants are entitled to judgment on all Section 20(a) claims because Plaintiffs failed to prove any predicate violation under Rule 10b-5.

Judgment is required on each cited ground because Plaintiffs' evidence was insufficient as a matter of law to support a jury finding in their favor and/or because Plaintiffs relied on erroneous legal theories to circumvent the deficiencies in their proof. Furthermore, the general insufficiency of the evidence at trial entitles Defendants to judgment as a matter of law.

WHEREFORE, Defendants respectfully request that this Court resolve all claims in Defendants' favor and grant Defendants' Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b).

Dated:  May 21, 2009

Respectfully submitted,

Cahill Gordon & Reindel LLP

By:      /s/  Thomas J. Kavaler
Thomas J. Kavaler
 Bar No. 1269927
Howard G. Sloane
 Bar No. 1197391
Patricia Farren
 Bar No. 1198498
Susan Buckley
 Bar No. 1198696
Landis C. Best
David R. Owen

80 Pine Street
New York, New York  10005
(212) 701-3000

- and-

EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue
Chicago, Illinois  60604
(312) 660-7600

*Attorneys for Defendants Household
International, Inc., William F. Aldinger,
David A. Schoenholz and Gary Gilmer*