# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

```
-----------------------------------------------------------x
```
LAWRENCE E. JAFFE PENSION PLAN, ON
BEHALF OF ITSELF AND ALL OTHERS SIMILARLY
SITUATED,

                    Plaintiffs,

          *- against -*

HOUSEHOLD INTERNATIONAL, INC., ET AL.,

                  Defendants.
```
-----------------------------------------------------------x
```

: Lead Case No. 02-C-5893
: (Consolidated)
:
: CLASS ACTION
:
: Judge Ronald A. Guzmán
:
:

## <u>DEFENDANTS' RESPONSE TO PLAINTIFFS' POST-VERDICT SUBMISSION</u>

CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

        -and-

EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Ave.
Suite 1100
Chicago, Illinois  60604
(312) 660-7600
*Attorneys for Defendants Household*
*International, Inc., William F. Aldinger,*
*David A. Schoenholz and Gary Gilmer*

## *TABLE OF CONTENTS*

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT

    A.   Plaintiffs' Proposal Ignores Defendants' Right to Rebut the Presumption of Reliance ..... 2

    B.   Damages Must Be Calculated Using a Methodology that Does Not Provide Windfalls for Sales of Shares at Inflated Prices ............................................................ 4

    C.   LIFO Is the Appropriate Method for "Matching" All Purchases and Sales ...................... 9

    D.   Damages May Not Be Calculated Until After the Conclusion of Phase II ...................... 11

    E.   Plaintiffs' Proposed Notice and Claim Form Are Inadequate and Objectionable ........... 12

CONCLUSION ............................................................................................................ 14

*TABLE OF AUTHORITIES*

**Page**

| | |
|---|---|
| <u>Cases</u> | |
| *Abrahamson* v. *Fleschner*, 568 F.2d 862 (2d Cir. 1977), *cert. denied*, 436 U.S. 913 (1978) | 8 |
| *Argent Classic Convertible Arbitrage Fund L.P.* v. *Rite Aid Corp.*, 315 F. Supp. 2d 666 (E.D. Pa. 2004) | 7n |
| *In re ASK Securities Litigation*, No. C-85-20207(A)-WAI 1992 WL 278386 (N.D. Cal. Aug. 18, 1992) | 4n |
| *Associated Randall Bank* v. *Griffin, Kubik, Stephens & Thompson, Inc.*, 3 F.3d 208 (7th Cir. 1993) | 9 |
| *Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988) | 2 |
| *Blackie* v. *Barrack*, 524 F.2d 891 (9th Cir. 1975) | 8n, 11 |
| *Buchanan* v. *United States*, 82 F.3d 706 (7th Cir. 1996) | 11n |
| *In re Cendant Corp. Securities Litigation*, 454 F.3d 235 (3d Cir. 2006) | 10 |
| *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943 (N.D. Ill. 2001) | 6, 9 |
| *In re Comdisco Securities Litigation*, No. 01 C 2110, 2004 WL 905938 (N.D. Ill. Apr. 26, 2004) | 6, 10n |
| *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) | 5n |
| *Disher* v. *Information Resources, Inc.*, 691 F. Supp. 75 (N.D. Ill. 1988) | 7 |
| *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336 (2005) | 4-5, 8-9 |
| *Hill* v. *Tribune Co.*, No. 05 C 2602, 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) | 9 |
| *Kane* v. *Shearson Loeb Rhoades, Inc.*, No. 86-551-Civ-Marcus, 1989 U.S. Dist. LEXIS 19022 (S.D. Fla. May 3, 1989), *aff'd sub. nom.*, *Kane* v. *Shearson Lehman Hutton, Inc.*, 916 F.2d 643 (11th Cir. 1990) | 7n |
| *Knapp* v. *Gomez*, No. CV 87-0067 H(M), 1993 U.S. Dist. LEXIS 8581 (S.D. Cal. May 5, 1993) | 3, 11 |
| *Makor Issue & Rights, Ltd.* v. *Tellabs, Inc.*, 256 F.R.D. 586 (N.D. Ill. 2009) | 6, 9 |
| *In re Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845 (7th Cir. 1997) | 11n |
| *Nielsen* v. *Greenwood*, No. 91 C 6537, 1996 U.S. Dist. LEXIS 14441 (N.D. Ill. Sept. 27, 1996) | 11n |
| *Randall* v. *Loftsgaarden*, 478 U.S. 647 (1986) | 5, 7-9, 7n |
| *Richardson* v. *MacArthur*, 451 F.2d 35 (10th Cir. 1971) | 8n |
| *Salgado* v. *General Motors Corp.*, 150 F.3d 735 (7th Cir. 1998) | 5n |
| *In re Sepracor Inc. Securities Litigation*, 233 F.R.D. 52 (D. Mass. 2005) | 6n-7n |
| *SEC* v. *Bear, Stearns & Co.*, No. 03 Civ.2937(WHP), 2005 WL 217018 (S.D.N.Y. Jan. 31, 2005) | 10 |
| *Spicer* v. *Chicago Board Options Exchange, Inc.*, No. 88 C 2139, 1990 WL 16983 | |

**Page**

| | |
|---|---|
| (N.D. Ill. Jan. 31, 1990) | 7 |
| *Wolf* v. *Frank*, 477 F.2d 467 (5th Cir. 1973) ............................................................. | 8n |
| | |
| Internet Resources | |
| | |
| Daniel R. Fischel *et al.*, *The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation:  An Update*, 10 National Legal Center for the Public Interest, *Briefly* (Mar. 2006), *available at* www.aei.org1docLib/20070809—Aggregate—Damages-pdf | 12n |
| Rules | |
| | |
| Fed R. Civ. P. | |
| 26(a) | 5n |
| 26(a)(2) | 5n |
| 26(e) | 5n |
| 37 | 5n |
| 37(c)(1) | 5n |
| | |
| Statutes | |
| | |
| Securities Act of 1933 | |
| § 12(2), 15 U.S.C. § 77l(2) (2006) | 7n |
| | |
| Securities Act of 1934 | |
| § 10(b), 15 U.S.C. § 78j(b) (2006) | 2, 7n |

**INTRODUCTION**

Plaintiffs argued in favor of bifurcated proceedings in their successful effort to postpone discovery regarding individual issues until after the trial on class-wide issues. Based on the Court's prior rulings, the parties thereafter proceeded on the understanding that individual issues would be pursued through discovery and resolved in a separate phase after class-wide liability issues had been tried. This is the law of the case and Plaintiffs are judicially estopped from now insisting upon a truncated, discovery-free Phase II. Nevertheless, Plaintiffs' recent Post-Verdict Submission urges the Court to collapse the required adjudication of individual damages and reliance issues into a "ministerial" claims procedure with no discovery or trial and to enter judgment thereafter as though there were a negotiated settlement with no outstanding issues to resolve. For the reasons discussed in Defendants' Recommendations for Phase Two Proceedings (Dkt. 1623), such an administrative short-cut would violate the Court's prior rulings and Defendants' due process rights, including their Seventh Amendment right to have all material factual disputes determined by a jury. [1]

Plaintiffs' recommendation ignores the Court's reservation of potentially dispositive legal issues, and their assertion that there are no outstanding issues of fact ignores the undisputed fact that the class-wide trial did not address or resolve *any* individual issues of reliance and damages. Notwithstanding the entry of a verdict on class-wide issues, no individual class member has established a right to recover (which necessarily depends on proving the element of damages on an individual basis), and Defendants have not been allowed to exercise their right to rebut the presumption of reliance.

---

[1]    Defendants reiterate that Phase II cannot reasonably proceed until this Court has ruled on the post-verdict motions that were filed on May 21, 2009. *See* Defendants' Recommendations for Phase Two Proceedings (Dkt. 1623).

It is also evident from the parties' submissions, including the opinions of Plaintiffs' previously undisclosed and unexamined expert, that the issues surrounding the proper calculation of damages and application of Professor Fischel's "leakage model" (which is itself fundamentally flawed as set forth in Defendants' challenges *sub judice*)  are anything but straightforward and mechanical.  Furthermore, Plaintiffs' opposition to the required netting of inflation-related gains and proposed use of FIFO (rather than LIFO) for matching transactions run directly contrary to the precedents of this Court.  Like Defendants' right to rebut questions of individualized reliance, the determination of actual net damages is not a "ministerial" issue, but rather is a required element for prevailing on a claim under Section 10(b).

The "limited" post-verdict proceedings that Plaintiffs advocate would result in an incomplete and insufficient vetting of the required elements and deny Defendants their Constitutional rights.  Defendants' proposal of a focused request for information from class members, efficient discovery in appropriate cases, and trial of any material factual dispute is the appropriate framework for the resolution of these Phase II issues.

## ARGUMENT

**A.    Plaintiffs' Proposal Ignores Defendants' Right to Rebut the Presumption of Reliance**

Plaintiffs cannot dispute that any individual plaintiff who trades without regard to market integrity is not entitled to the benefit of any presumption of reliance.  *See Basic Inc.* v. *Levinson*, 485 U.S. 224, 249-50 (1988).  Their argument that the litigation of class-wide issues in Phase I mooted the need for discovery and adjudication of matters Plaintiffs previously asserted to be relevant only in Phase II is disingenuous on its face.  Defendants were not allowed to propound discovery regarding individual reliance during Phase I discovery, and the class-wide trial did not resolve or even address this issue as to any named Plaintiff or any absent class member.  At Plaintiffs' own insistence, class-wide and individual issues were explicitly separated and the latter deferred to Phase II.  Plaintiffs' speculation and predictions about their likelihood of suc-

-2-

cess in Phase II provide no basis for simply skipping the process they themselves advocated. Moreover, contrary to Plaintiffs' prediction of "thousands of mini-trials," Defendants have no incentive, intention or need to proceed in an inefficient manner (especially given the high concentration of stock ownership in the hands of a small number of institutional investors), and they have represented to the Court that they will isolate and pursue only material contested facts.

Plaintiffs rely on *Knapp* v. *Gomez,* No. CV 87-0067 H(M), 1993 U.S. Dist. LEXIS 8581 (S.D. Cal. May 5, 1993), as supposed authority for the notion that individual reliance can be resolved by propounding a single rhetorical question to class members. However, the court in *Knapp* recognized that the defendants had a right to rebut the presumption of reliance, noting that "[m]any of the individual class members may not be entitled to the presumption of reliance," and citing as an example an investor that had conducted independent research into the company before investing in its IPO. *Id.* at *2. The court distinguished between class-wide assumptions made for purposes of class certification and the requirements for actual individual recovery, observing that "the class was not defrauded nor did it sustain injury. The individuals comprising the class did." *Id.* at *6-*7. The court refused to enter an order of final judgment prior to resolution of individual reliance issues because it was inappropriate to render judgment for class members "who ultimately may not recover." *Id.* at *7. **"Because the action was bifurcated, not a single class member has thus far established a right to recover."** *Id.* at *1 (emphasis added).

The same is true here. To establish the relevant facts on reliance, Defendants are entitled to discovery from those claimants whose questionnaire answers and/or trading records demonstrate the kinds of investment choices that may be inconsistent with the presumption of reliance and/or who may assert substantial claims that warrant further analysis. For example, Wells Fargo not only elected to retain but substantially *increased* its large holdings in Household stock in 2002 after reviewing non-public information that supposedly revealed systematic reaging fraud. Similarly, a class member's involvement in the 2001 and 2002 shareholder initiatives

to tie executive compensation to eliminating so-called "predatory" practices may give rise to facts rebutting the presumption of reliance. Moreover, the "leakage" theory chosen by the jury raises additional highly relevant areas of discovery with respect to individual reliance. Putting aside the many problems with "leakage" that are presently before the Court, the leakage model is premised upon an (unproven) assumption that various investors in Household stock learned about unspecified pieces of fraud-related information which affected the stock price on a day-by-day basis. If in fact (as posited by the leakage model) an individual class member became aware of the alleged fraud prior to other class members and nevertheless continued to purchase shares, any presumption of reliance on market "integrity" by that investor would self-evidently be un-warranted.

Defendants' due process rights, jury trial rights and entitlement to discovery on contested individual issues were not eliminated by the certification of a class for purposes of trying common issues, and nothing in the jury verdict on class-wide issues estops Defendants from attempting to rebut the presumption of reliance that was merely assumed for purposes of trying class-wide issues.[2]

## B. Damages Must Be Calculated Using a Methodology that Does Not Provide Windfalls for Sales of Shares at Inflated Prices

As the Supreme Court made clear in *Dura,* windfall gains have no place in recoveries for claimed losses from securities fraud. *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005) (purpose of the securities laws is "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations

---

[2]  Plaintiffs have provided no authority to refute Defendants' right under the Seventh Amendment to a jury trial. The only case Plaintiffs cite involved a request to bifurcate the issues of liability and reliance "on the very eve of trial" and did not raise any Seventh Amendment questions. *See In re ASK Securities Litigation*, No. C-85-20207(A)-WAI, 1992 WL 278386 (N.D. Cal. Aug. 18, 1992). Those facts are distinguishable from our case where the Court ordered bifurcation in 2005 (four years before trial), and all preparation for trial was conducted with this understanding.

actually cause"). Under relevant authority, any determination of damages must net all inflation-related gains against losses and use LIFO for the matching of transactions.

Consistent with *Dura*'s principles, Plaintiffs previously represented that they intended to use a netting approach for all class members who purchased stock during the Class Period.[3] Now, in an attempt to obtain what they freely admit to be a "windfall" recovery (Pls. Submission at 20, citing *Randall* v. *Loftsgaarden*, 478 U.S. 647 (1986)), Plaintiffs propose to offset only those shares purchased from November 15, 2001 through October 11, 2002. Without any supporting legal authority,[4] Plaintiffs now assert that November 15, 2001 should be the first day that netting should apply, simply because that is the first day Professor Fischel asserted that the truth began to "leak" out of the stock price -- even though this period is significantly shorter than the Class Period (July 30, 1999 - October 11, 2002) and begins well after the start of what Plaintiffs call the "Damages Period." This new and arbitrary cut-off date flatly contradicts Plaintiffs' previous representation that they intended to apply an offset for *all* transactions at inflated prices during the Class Period. (*See* n.2, *supra*.)

---

[3]    "Lead Plaintiffs intend to use a netting approach for Class members who profited from some trades of Household's common stock acquired during the Class Period [July 30, 1999 - October 11, 2002] and sold after November 14, 2001, but suffered losses from other trades of Household's common stock during this same period." Lead Plaintiffs' Supplemental Statement Regarding Damages Pursuant to the Court's October 17, 2007 Order, at 2 (Oct. 24, 2007) (attached to Declaration of Thomas J. Kavaler dated May 28, 2009, Ex. A (Dkt. 1623)).

[4]    In support of their novel limited netting theory, Plaintiffs offer the declaration of Bjorn I. Steinholt, CFA, a purported expert who was never disclosed to Defendants pursuant to Rule 26(a)(2), who did not testify in this case, and whose opinions have never been subject to testing under *Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), or discovery by Defendants. Under Rule 37, a party that has failed to make a timely disclosure of the identity of an expert witness as required by Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence *on a motion*, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1) (emphasis added). Because Plaintiffs' violation is neither justified (and Plaintiffs make no attempt at any justification) nor harmless, "the sanction of exclusion is automatic and mandatory." *Salgado* v. *General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). The declaration of Mr. Steinholt should thus be stricken and should not be considered by this Court.

The "transactional approach" that Plaintiffs propose admittedly is intended to produce windfall recoveries for class members by considering only their purchases during the "Damages Period" while ignoring sales of artificially inflated shares. As discussed in the accompanying declaration of Dr. Mukesh Bajaj, attached hereto as Exhibit A,[5] class members are entitled only to net damages, so that failing to base recoverable damages on each class member's complete experience as a holder of Household stock affected by the claimed fraud will impermissibly calculate damages in a biased manner. *See* Declaration of Mukesh Bajaj, June 2, 2009 ("Bajaj Decl.") at 2-4.

Besides being economically unsound and inconsistent with their prior representations, Plaintiffs' self-serving proposal to begin the "netting" period on November 15, 2001 is also contrary to applicable law, which mandates an offset for *all* sales of the subject stock at inflated prices. In this Court, it is well-settled that all inflationary gains from sales during the relevant period must be netted against recoverable losses. *See Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009) (St. Eve, J.) (holding that where proposed lead plaintiff purchased shares before the class period but sold those shares for a gain at inflated prices during the class period, thus offsetting any claimed losses, plaintiff was an inadequate class representative); *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (Shadur, J.) (proposed lead plaintiff was inadequate class representative because its sales of pre-class period shares at inflated prices during the class period demonstrated a net gain rather than any net loss); *In re Comdisco Securities Litigation*, No. 01 C 2110, 2004 WL 905938, at *2-*3 (N.D. Ill. Apr. 26, 2004) (Shadur, J.) (finding no gain or loss if an investor with a pre-fraud stake in a company buys and sells the same number of shares during the class period).[6]

---

[5]     Defendants properly disclosed Dr. Bajaj as their damages expert and he testified at trial.

[6]     In fact, Plaintiffs cite several cases dealing with offsets that are entirely unrelated to the inflationary gains at issue in this case. In *Sepracor*, the issue was whether profitable transactions in one type of security (*i.e.,* stocks) should be offset against unprofitable transactions in another type of

Footnote continued on next page.

Any sale of shares at inflated prices on or after March 23, 2001 delivered inflation-related profits to the sellers who otherwise would have sold shares at substantially lower prices in the absence of the claimed fraud. This Court has consistently applied the principle that all profits and losses that occurred after the fraud was committed "must be netted against each other" in securities fraud cases. *See Disher* v. *Information Resources, Inc.*, 691 F. Supp. 75, 79 (N.D. Ill. 1988) (Hart, J) (holding that the plaintiff could not demonstrate damages where the profit he realized due to the alleged fraud exceeded his claimed losses); *Spicer* v. *Chicago Board Options Exchange, Inc*., No. 88 C 2139, 1990 WL 16983, at *10 (N.D. Ill. Jan. 31, 1990) (Will, J.) (although the fair price of securities must be established individually during the damages stage of trial, "plaintiff class members have a right only to their net losses").

Plaintiffs' reliance on *Randall* v. *Loftsgaarden* as justification for a "windfall" to class members is misplaced because its narrow holding addressed only whether tax benefits could be used to offset damages in a rescission case under the securities laws. 478 U.S. at 649.[7] The Court held that tax benefits were not a direct product of the securities and, thus, did not need to be credited. *Id.* at 658-659. *Randall* does not apply here because Defendants do not propose

---

Footnote continued from previous page.

security (*i.e.,* bonds) where both sets of transactions occurred during the class period. *In re Sepracor Inc. Securities Litig*ation, 233 F.R.D. 52 (D. Mass. 2005). In *Argent*, the issue was whether transactions occurring after the damages period on which the plaintiff made money should be netted against transactions during the damage period on which it lost money. *Argent Classic Convertible Arbitrage Fund L.P.* v. *Rite Aid Corp*., 315 F. Supp. 2d 666 (E.D. Pa. 2004). Plaintiffs' inclusion of cases that discuss netting losses against unrelated gains is misguided at best, if not affirmatively misleading.

[7]    *Randall* also expressly reserved judgment as to whether § 10(b) provided a rescissionary measure of damages. 478 U.S. at 666. Its holding does not apply to this case because Plaintiffs do not seek rescission -- and such a measure of damages would be inappropriate because the class in a fraud-on-the-market case is comprised of open market purchasers (*i.e.,* there is no privity between the purchaser and the issuer of shares justifying rescission, as there was in *Randall*). Because a rescissionary measure of damages is irrelevant, Plaintiffs' reliance on *Kane* v. *Shearson Loeb Rhoades, Inc.,* No. 86-551-Civ-Marcus, 1989 U.S. Dist. LEXIS 19022 (S.D. Fla. May 3, 1989), *aff'd sub. nom. Kane* v. *Shearson Lehman Hutton, Inc.*, 916 F.2d 643 (11th Cir. 1990), is also inapplicable. The Eleventh Circuit's decision in *Kane* hinged on an analogy between Florida law and the § 12(2) element of the case. 916 F.2d at 646.

any offset for tax benefits unrelated to the alleged fraud, but rather are entitled to the netting of inflationary gains against losses where both result from the same disclosure defects causing alleged inflation.  Defendants cannot find — nor have Plaintiffs provided — any Seventh Circuit authority applying *Randall*'s tax benefits holding to netting of inflated shares in an out-of-pocket damages case.

In *Dura*, the Supreme Court cited *Randall* for the general proposition that private actions under the federal securities laws serve the purpose of deterring fraud.  544 U.S. at 345. However, the Court noted that "the statutes make these [private] actions available, not to provide investors with broad insurance against market losses, **but to protect them against those economic losses that misrepresentations actually cause**."  *Id.* at 345 (emphasis added).  Offsetting inflationary gains against losses is required because both result from the same course of alleged fraudulent conduct.  It is clear that a plaintiff in a securities fraud case cannot recover for losses and while ignoring profits where both result from a single wrong.  Instead, a plaintiff can recover only for *net* losses occurring after the fraud was committed, as is the case with all shares sold at inflated prices during the relevant period.  *See, e.g., Abrahamson* v. *Fleschner,* 568 F.2d 862, 878-79 (2d Cir. 1977), *cert. denied*, 436 U.S. 913 (1978).[8]  As the Supreme Court observed in *Dura*, "if . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."  544 U.S. at 342.  It follows that if pre-class period shares are sold during a period of inflation, the misrepresentation will have led to a gain that must be netted against any subsequent losses.

Netting of inflation-related gains against losses is required because class members are entitled only to "actual damages" -- *i.e.*, their out-of-pocket losses, measured by "the differ-

---

[8]     The Courts of Appeals for the Fifth, Ninth, and Tenth Circuits have also taken the position that gains and losses stemming from different transactions must be offset.  *See Blackie* v. *Barrack*, 524 F.2d 891, 908–11 (9th Cir. 1975); *Wolf* v. *Frank*, 477 F.2d 467, 478–79 (5th Cir. 1973); *Richardson* v. *MacArthur*, 451 F.2d 35, 43–44 (10th Cir. 1971).

ence between the price of the stock and its value on the date of the transaction if the full truth were known." *Associated Randall Bank* v. *Griffin, Kubik, Stephens & Thompson, Inc*., 3 F.3d 208, 214 (7th Cir. 1993). The concept of "out-of-pocket-losses," which Plaintiffs acknowledge is the proper measure of damages, would be meaningless if some of the gains that accrued to Plaintiffs' benefit as the result of the inflation of the stock price are ignored in quantifying any harm suffered by a particular shareholder as a result of that inflation. Plaintiffs' argument that a windfall must be granted to certain plaintiffs in order to avoid an alleged windfall to Defendants is unfounded because class members purchased shares from other shareholders in the open market, not as initial purchasers of shares offered by the company (as in *Randall,* 478 U.S. at 650-51). The counter-parties are the investors who sold their shares at the inflated price, not Defendants. Plaintiffs' approach would improperly ensure windfall recoveries to sellers who benefited from sales at an inflated price because such investors improperly obtain *both* a recovery for inflation-related purchases and the benefit of the sale of their shares at an inflated price -- a result that contradicts the Supreme Court's instruction in *Dura*.

## C.    LIFO Is the Appropriate Method for "Matching" All Purchases and Sales

Plaintiffs' reliance on a handful of cases from outside this Circuit for their proposed use of the FIFO method for matching ignores prior holdings of this Court, most recently in the *Tellabs* case. This Court follows the majority view: that securities fraud losses are calculated using LIFO. *See Makor Issues & Rights, Ltd.* v. *Tellabs, Inc*., 256 F.R.D. 586, 599 (N.D. Ill. 2009) (St. Eve, J.) (rejecting FIFO in favor of LIFO analysis as the appropriate method for determining loss due to securities fraud); *Hill* v. *Tribune Co*., No. 05 C 2602, 2005 WL 3299144, at *2 (N.D. Ill. Oct. 13, 2005) (Hart, J.) ("The current majority view . . . is that securities fraud losses should be calculated using LIFO."); *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (Shadur, J.) (rejecting plaintiff's "attempted FIFO construct in favor of a calculation [LIFO] that properly nets out purchases and sales *during* the class period and determines gains or losses in those terms").

Plaintiffs' proposed use of FIFO highlights a critical inconsistency in their position. Plaintiffs propose ignoring pre-November 15, 2001 purchases for purposes of netting gains while simultaneously claiming that those same purchases (including pre-Damages Period purchases) should be matched with sales during the Damages Period under FIFO. This arbitrary and logically inconsistent construct is cynically engineered to match a greater number of early sales at inflated prices with pre-Damages Period purchases and maximize the number of those "ignored" sales for purposes of calculating net losses. *See* Bajaj Decl. at. 3-5, n.7.

Plaintiffs' invocation of the use of FIFO for allocating settlement funds in certain plans is irrelevant because this case does not involve the allocation of an agreed, fixed settlement fund. (It also bears noting that the *Cendant* plan of allocation cited by Plaintiffs also included a netting provision subtracting all stock sale profits from any claimed losses, *In re Cendant Corp. Securities Litigation*, 454 F.3d 235, 245-47 (3d Cir. 2006)).[9] Many courts have used LIFO instead of FIFO to calculate final damages awards in the context of allocating settlements. *See, e.g., SEC* v. *Bear, Stearns & Co.*, No. 03 Civ.2937(WHP), 2005 WL 217018, at *7 (S.D.N.Y. Jan. 31, 2005) (approving a settlement plan expressly calculating eligible losses "on a last-in, first-out ('LIFO') accounting basis"). That courts have previously approved certain parties' choice to use an alternate method in a settlement context does not trump prevailing precedent in this Court holding that LIFO is the preferred approach for matching.

---

[9]     The IRS's use of FIFO was rejected as irrelevant to a 10b-5 class action in *Comdisco*, where Judge Shadur explained the distinction: "In light of the long-term trend of increasing values in stocks, plus the facts (1) that FIFO rather than LIFO therefore typically increases the measurement of currently recordable gains and (2) that stocks held until death get a stepped-up basis while at the same time escaping income taxation entirely, what other approach might be expected from taxing authorities who are properly interested in maximizing [tax revenue]?" *In re Comdisco Securities Litigation*, No. 01 C 2110, 2004 WL 905938, at *2-*3 (N.D. Ill. Apr. 26, 2004).

-10-

### D.    Damages May Not Be Calculated Until After the Conclusion of Phase II

Contrary to Plaintiffs' assertion, this Court may not determine damages in a "mechanical fashion," and no such determination would be ripe until after all outstanding legal issues and post-verdict motions have been resolved, and (if any part of the class-wide verdict is sustained) until all issues as to individual reliance and actual entitlement to recovery (including netting) have been resolved in the second phase.[10]  Because a plaintiff is entitled only to "actual damages" under the securities laws (15 U.S.C. § 78bb(a)), "[t]he amount of damages is invariably an individual question."  *Blackie* v. *Barrack*, 524 F.2d 891, 908 (9th Cir. 1975).  In this case, the identity of hundreds of potential claimants, the amount of net loss (if any) each suffered, and the time period(s) in which each is eligible to collect for those losses (not to mention damages' issues such as netting, matching and the 90-day "look-back") have yet to be determined.  In *Knapp* (cited in Plaintiffs' submission) the court noted that: "[b]ecause the action was bifurcated, not a single class member has thus far established a right to recover.  The class has proven fraud, an inflated share value, and its members each enjoy the presumption of reliance, but no one is entitled to recover at this time."  *Knapp* v. *Gomez*, 1993 U.S. Dist. LEXIS 8581, at *1.[11]

---

[10]    The only case Plaintiffs cite in support of their contention that final judgment should be entered against Defendants is *Buchanan* v. *United States*, 82 F.3d 706 (7th Cir. 1996).  In *Buchanan* the Court of Appeals held that the failure to resolve when one plaintiff became eligible to collect damages during a two year period precluded entry of final judgment.  *Id.* at 707-8.

[11]    Because any discussion of final damages calculations is premature, so too is Plaintiffs' request for pre-judgment interest.  Plaintiffs are not entitled to prejudgment interest as a matter of course, and Plaintiffs concede in their Submission that "[t]his court has *discretion* to award prejudgment interest to plaintiffs." (Pls. Submission at 27)(emphasis added).  *See, e.g.*, *In re Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir. 1997) (Easterbrook, J.) ("Doubtless judges have discretion to exercise when deciding whether to award prejudgment interest . . . ."); *Nielsen* v. *Greenwood*, No. 91 C 6537, 1996 U.S. Dist. LEXIS 14441, at *29 (N.D. Ill. Sept. 27, 1996) ("[A]n award of prejudgment interest is not automatic.  Rather, such an award falls within the sound discretion of this court.").  For example, prejudgment interest may be inappropriate when the plaintiffs themselves have caused delay, as this would unjustly penalize the defendant.  *See, e.g.*, *Milwaukee Cheese*, 112 F.3d at 849 ("Gratuitous delay by the party seeking the award . . . might be a reason to limit an award of interest.").  At the appropriate time Defendants will brief the manner in which Plaintiffs have caused unnecessary and gratuitous delay, and the reasons why Plaintiffs' deliberate and repeated impediments to the progress of this case dictate that pre-judgment interest should be denied.

E.    **Plaintiffs' Proposed Notice and Claim Form Are Inadequate and Objectionable**

For the reasons set forth in this Response and in Defendants' Proposal, Defendants object to Plaintiffs' proposed Class Notice, Summary Notice and Proof of Claim (Pls. Submission, Exs. 2, 3, 4) because they do not accurately describe the status of this action; they impermissibly indicate without qualification that class members will recover damages; they fail to request required information relating to outstanding reliance and damages issues; and they treat Phase II as if it were a ministerial claims administration procedure following upon a negotiated settlement that resolved all disputed issues.  Although Defendants reserve the right to fully brief the deficiencies and inaccuracies in Plaintiffs' proposed notice and claims forms at the appropriate time, some of the more glaring errors are listed below:

- Plaintiffs' proposed notice inaccurately states that the verdict results in actual entitlement to recover damages; that the jury awarded per share damages for each trading day, that the leakage "inflation table" shows the per share damages, and that damages are estimated in an amount over $2 billion.  In fact, no "damages" have been awarded, established or estimated, nor could they be at this stage.[12]

- The proposed notice inappropriately fails to take into account netting and matching using the LIFO method, and thus inaccurately describe a formula for calculating actual damages.

- The proposed notice does not accurately inform class members that on February 28, 2006, the Court ruled that class members' claims based on disclosure defects before July 30, 1999 were barred under the applicable statute of repose.  Class members must be notified about this denial of claims in any new notice lest the sins of the past be repeated.

- The proposed notice fails to justify -- or even explain -- Plaintiffs' proposal that the Arthur Andersen settlement funds (which resolved claims covering the period beginning October 23, 1997) be allocated only to class members who purchased on or after March 23, 2001.

- The proposed notice prejudicially refers class members to the subtly-named website www.householdfraud.com for information concerning the litigation.  This is not a post-settlement situation as Plaintiffs continue to pretend.  The

---

[12]    As Professor Fischel has concluded, formulaic and mechanical attempts to estimate damages using trading models will overstate potential recovery by upwards of 600%.  *See* Daniel R. Fischel *et al.*, *The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: An Update*, 10 National Legal Center for the Public Interest, *Briefly* 1, 19-20 (Mar. 2006), *available at* www.aei.org1docLib/20070809_Aggregate_Damages.pdf.

value of seeking Court approval for class-wide notice in this still-pending litigation would be lost if class counsel were permitted to spread misinformation through the internet.

- The proposed notice fails to inform class members that the jury rendered a verdict against the class on 57.5% of the alleged disclosure defects.

- The proposed notice fails to inform class members that this Court reserved judgment on certain legal issues that may have a dispositive impact on Plaintiffs' claims, and that the Court's resolution of Defendants' post-verdict motions may result in dismissal of all claims as a matter of law, or in the alternative, require a new trial on class-wide issues.

- Plaintiffs' proposed proof of claim form fails to include any inquiry as to threshold issues that courts have considered relevant to individual reliance such as short selling or unusual trading activities.

- The proposed proof of claim form does not inform class members that they may be subject to discovery based on their responses.

- Plaintiffs' proposed notice and claim form do not accurately state that a class member's failure to provide the requested information on or before the Court-ordered deadline *will* disqualify that class member from pursuing a claim for damages -- only that it *could* result in delay or rejection.

- The proposed claim form inappropriately poses only a single question about reliance which is self-serving and rhetorical and prejudicially suggests the "correct" answer (which they incorrectly assume that Defendants will have no opportunity to test.).

These critical errors and omissions render Plaintiffs' proposed notice and claim form unsuitable for distribution to the class.

-13-

## CONCLUSION

Defendants respectfully request that this Court accept the Defendants' recommendations as to the timing, scope and administration of any Phase II proceedings.

Dated: June 4, 2009

Respectfully submitted,

Cahill Gordon & Reindel LLP

By:    /s/  Thomas J. Kavaler

Thomas J. Kavaler
  Bar No. 1269927
Howard G. Sloane
  Bar No. 1197391
Patricia Farren
  Bar No. 1198498
Susan Buckley
  Bar No. 1198696
Landis C. Best
David R. Owen
80 Pine Street
New York, New York  10005
(212) 701-3000
    - and-
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue
Chicago, Illinois  60604
(312) 660-7600
*Attorneys for Defendants Household
International, Inc., William F. Aldinger,
David A. Schoenholz and Gary Gilmer*

-14-

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

_____

| | |
|---|---|
| In re: Lawrence E. Jaffe Pension Plan | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Household International, Inc., et al | ) |
| | ) |
| | ) |
| Defendant, | ) |
_____)

Lead Case No. 02-C-5893

# DECLARATION OF MUKESH BAJAJ

June 2, 2009

I am a financial economist and Senior Managing Director leading the securities practice at LECG, LLC. LECG is an international consulting firm specializing in economics and financial analysis.  I have been retained by counsel for Household International Inc. ("Household" or the "Company") to review and comment on the Plaintiffs' Post-Verdict Submission dated May 28, 2009 ("Plaintiffs' Submission") and its Exhibits.

## I.    Background

Plaintiffs' Submission claims that "the calculation of damages is a mechanical function that is appropriately handled by the Claims Administrator" and provides a "formula"[1] to calculate recoverable damages.  As I discuss in this Declaration, the Plaintiffs Submission is critically flawed from an economics perspective and its proposed formula to calculate recoverable damages will result in a vast over-statement of damages.

## II.    Recoverable damages should be based on each class member's complete trading history, not simply on the shares purchased during the "Damage Period"

Plaintiffs' Submission notes that:[2]

> On May 7, 2009, the jury in this case rendered a verdict. The jury found that defendants Household International, Inc., William Aldinger, David Schoenholz and Gary Gilmer violated §10(b), Rule 10b-5 and §20(a) of the Securities and Exchange Act of 1934 ("1934 Act") with respect to statements made from March 23, 2001 to October 11, 2002. The jury determined the inflation per share from March 23, 2001 to October 11, 2002.

Notably, the daily inflation per share was determined to be <u>zero</u> for all dates prior to March 23, 2001 including the July 30, 1999 – March 22, 2001 period (the "Remainder of the Class Period"), and as calculated by Professor Fischel's Leakage Model from March 23, 2001 to October 11, 2002 ("Damage Period").

---

[1] Plaintiffs' Submission, page 16.
[2] Plaintiffs' Submission, page 1.

2

Plaintiffs argue that each class member's recoverable damages ("recovery per share") should be calculated as "the difference between: (i) the artificial inflation on the date of purchase, less (ii) the artificial inflation on the date of sale."[3]  Plaintiffs recognize that class members are only entitled to <u>net</u> damages, i.e., each class member's total recovery is net of any gains through sale of shares at prices that were more inflated than at the time of purchase.

Plaintiffs' methodology includes two critical assumptions: (1) Plaintiffs argue that such net recovery for each class member should be based only on the Household common stock that was <u>purchased</u> during the Damage Period;[4] and (2) in order to match the class member's sales to purchases, all his pre-Damage Period (and even Pre-Class Period stock holdings) should be included in a FIFO matching method.  Specifically, Plaintiffs note:[5]

> The FIFO method offsets sales during the class period with a plaintiff's pre-class period stock holdings by matching, in chronological order, the first shares sold during the class period with the shares held at the beginning of the Damages Period, if any, and then the first shares purchased during the Damages Period. This method of matching is consistent with the transactional approach discussed above, and will avoid inappropriate reductions to defendants' liability based on sales of shares purchased before the Damages Period.

Both of these assumptions introduce significant biases into the calculation of each class member's net aggregate damages caused by the fraud as the following hypothetical example illustrates. Consider a class member whose trading history is as shown in the table below.

---

[3] Additionally, Plaintiffs assume that recovery on (a) shares sold prior to November 15, 2001 is zero, and (b) shares retained at the end of October 10, 2002 is equal to the artificial inflation on the date of purchase. Plaintiffs also recognize that this recovery "is properly subject to certain limitations imposed by the "90-Day Bounce Back Rule" as described in Steinholt Decl. (Exhibit 5 of the Plaintiffs' Submission).  See Plaintiffs' Submission, page 16.
[4] Plaintiffs' Submission, pages 23-24.
[5] Plaintiffs' Submission, page 24.

3

| Date | No. of shares bought (sold) [1] | Daily Inflation [2] | Damage (gain) [3]=[1]x[2] |
|---|---|---|---|
| Pre-Damage Period (date 0) | 11 | $0.00 | $0.00 |
| Damage Period (date 1) | 1 | $1.00 | $1.00 |
| Damage Period (date 2) | (10) | $0.75 | ($7.50) |
| Post-Damage Period (date 3) | (2) | $0.00 | $0.00 |

**Total damage (gain)**                                    **($6.50)**

An economic question naturally arises, "What is this class member's aggregate damages that was caused by the alleged fraud?" To properly answer this question one should evaluate the aggregate damages caused by the fraud to the class member net of *all* the benefit that the *same* class member received as a result of the *same* fraud.

Thus, in the above example, if we considered the class member's entire trading history, it indicates that he sold 10 shares at an inflation of $0.75 per share (resulting in a benefit of $7.50) whereas he bought 1 share at an inflation of $1 per share(resulting in a damage of $1). Consequently, this class member's net aggregate damages accounting for all transactions during the Damage period is -$6.50 (i.e., a gain of $6.50). Note that such a calculation does not depend on whether or not a FIFO or LIFO method of matching sales to purchases is employed.

In contrast, if we were to consider the Plaintiffs' method, we would first have to match pre-Damage period purchases to subsequent sales using FIFO. This would result in the share bought during the Damage Period (on date 1) being matched to one of the 2 shares retained after the Damage Period ended, resulting in damage of $1 to the class member. Notably, the Plaintiffs' method, ignores the $7.50 benefit from the sale of 10 shares during the Damage Period, even though it recognizes that such shares were bought at uninflated prices under its FIFO matching method.[6]

---

[6] The 10 shares sold during the Damage Period at an inflation of $0.75 per share are matched to a purchase at zero inflation, thereby resulting in a benefit of $7.50.

4

If we were to use the LIFO method, then the "last-in" share bought during the Damage Period (at date 1) would be matched to the first-out share (i.e., sales on date 2), resulting in damage of $0.25. However, if the LIFO method was implemented using all shares, then again the class member's total damages would be properly calculated at -$6.50.

In short, to properly determine any *class member's* aggregate damages we must consider all transaction that this class member undertook in Household's common stock during the Damage Period, not simply some transactions, selected in a particular biased[7] manner, as the Plaintiffs have proposed.

Respectfully submitted,

_____

Mukesh Bajaj, Ph.D.

---

[7] The proposed method is biased because pre-Damage period stock holding are included in matching Damage period sales to prior purchases, but the resultant benefit to the class member from such a transaction is ignored. An additional bias arises because the inflation is relatively greater at the start of the damage Period. Under FIFO, the class member's early sales when inflation is relatively high (which conveys a benefit to the class member) are matched to pre-Damage period holding and then ignored in calculating the class member's net damages.

5