**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HOUSEHOLD INTERNATIONAL, INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Lead Case No. 02-C-5893
(Consolidated)

<u>CLASS ACTION</u>

Judge Ronald A. Guzman
Magistrate Judge Nan R. Nolan

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS' RECOMMENDATIONS FOR PHASE II PROCEEDINGS, IF NEEDED AND DEFENDANTS' RESPONSE TO PLAINTIFFS' POST-VERDICT SUBMISSION</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ..............................................................................................................3

      A.    Defendants' Truth-on-the-Market Defense Was Litigated at Trial and
           Defendants Have Failed to Identify Any Relevant Evidence That Could be
           Obtained Through Further Discovery ........................................................................3

      B.    The Court Can Decide the Formula to Calculate Damages ....................................8

III.  OBJECTIONS TO DEFENDANTS' NOTICE ..................................................................9

IV.   DEFENDANTS HAVE NO RIGHT TO JURY TRIAL ...................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
315 F. Supp. 2d 666 (E.D. Pa. 2004) ..........................................................................4, 5

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..........................................................................................1, 3, 5

*Davis v. USN Communs.*,
189 F.R.D. 391 (N.D. Ill. 1999)......................................................................................2

*Freeland v. Iridium World Communs., Ltd.*,
233 F.R.D. 40 (D.D.C. 2006)...........................................................................................5

*Ganesh, LLC v. Computer Learning Centers, Inc.*,
183 F.R.D. 487 (E.D. Va. 1998) .....................................................................................5

*Houseman v. United States Aviation Underwriters*,
171 F.3d 1117 (7th Cir. 1999) ......................................................................................11

*In re Ask Sec. Litig.*,
No. C-85-20207(A)-WAI, 1992 U.S. Dist. LEXIS 14944
(N.D. Cal. Aug. 18, 1992).............................................................................................12

*In re Bally Mfg. Sec. Corp. Litig.*,
141 F.R.D. 262 (N.D. Ill. 1992)..................................................................................3, 5

*In re Initial Public Offering Sec. Litig. ("IPO")*,
227 F.R.D. 65 (S.D.N.Y. 2004) ..................................................................................4, 5

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009).....................................................................................5

*In re Oxford Health Plans Inc. Sec. Litig.*,
199 F.R.D. 119 (S.D.N.Y. 2001) .....................................................................................2

*In re Priceline.com Sec. Litig.*,
236 F.R.D. 89 (D. Conn. 2006)........................................................................................4

*In re Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ....................................................................................6, 11

*In re Royal Ahold NV Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003)....................................................................................2, 4

Page

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ............................................................... 6

*In re Scott Paper Co. Sec. Litig.*,
    142 F.R.D. 611 (E.D. Pa. 1992) ........................................................................... 5

*In re W. Union Sec. Litig.*,
    120 F.R.D. 629 (D.N.J. 1988) ............................................................................. 5

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .................................................................. 2, 4, 5

*Jaroslawicz v. Engelhard Corp.*,
    724 F. Supp. 294 (D.N.J. 1989) .......................................................................... 5

*Levie v. Sears Roebuck & Co.*,
    496 F. Supp. 2d 944 (N.D. Ill. 2007) .............................................................. 1, 3

*Moskowitz v. Loop*,
    128 F.R.D. 624 (E.D. Pa. 1989) ....................................................................... 4, 5

*Schleicher v. Wendt*,
    No. 02-CV-1332-DFH, 2009 U.S. Dist. LEXIS 24810
    (S.D. Ind. Mar. 20, 2009) ............................................................................... 4, 5

*Zlotnick v. Tie Communications*,
    836 F.2d 818 (3rd Cir. 1988) .............................................................................. 5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b) ................................................................................................................ 9

Plaintiffs respectfully submit this memorandum in response to defendants' "Recommendations for Phase Two Proceedings, if Needed" and defendants' "Response to Plaintiffs' Post-Verdict Submission."

## I.    INTRODUCTION

In this seven year old case, the jury has finally spoken. Defendants' post-verdict motions are replete with arguments already made by defendants and rejected by this Court and the jury. Therefore, the Court should begin the process of identifying and validating class members' claims.

A notice and claim form needs to be approved by the Court and sent to class members. Although plaintiffs and defendants disagree on the methodology, the parties agree that the Court should determine the damages formula to be used in calculating class members' claims based on Household common stock trading data submitted by claimants and the jury's determination of daily inflation. Based on the clear evidence at trial that no investors were told of the fraud, and the jury's verdict that rejected defendants' truth-on-the-market defense, the only issue left regarding the presumption of reliance is whether class members "would have" still purchased Household stock if they knew about the fraud. Obviously, investors would not knowingly purchase stock at a price that was inflated by defendants' fraud. Nevertheless, since the *Basic* Court identified this unlikely scenario as a means to rebut the presumption, the question can be addressed in the claim form.

Defendants' attempt to rebut the presumption of reliance does not warrant the extensive discovery of class members proposed by defendants. The "questionnaire" defendants propose will not lead to the discovery of any relevant evidence. The information sought in defendants' questionnaire – whether the class member was an options trader, short-seller, day trader, or used a hedging strategy, index trading strategy, automatic dividend reinvestment program, or a proprietary trading model – is not necessary. All Household investors relied on the integrity of the market and evidence of any of these trading strategies would not rebut the presumption of reliance. *See Levie v.*

*Sears Roebuck & Co.*, 496 F. Supp. 2d 944 (N.D. Ill. 2007) (day traders, short sellers and options traders rely on integrity of market); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 296 (S.D.N.Y. 2003) (index or computer model trading does not defeat presumption of reliance); *Davis v. USN Communs.*, 189 F.R.D. 391, 396-97 (N.D. Ill. 1999) (class members' short sales do not preclude reliance); *In re Royal Ahold NV Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) (day traders and all types of investors rely on integrity of market); *In re Oxford Health Plans Inc. Sec. Litig.*, 199 F.R.D. 119 (S.D.N.Y. 2001) (same).

In their initial submission, plaintiffs set forth the appropriate methodology for calculating damages for the Damages Period (March 23, 2001 – October 11, 2002) (the "Damages Period"). The Court should apply the "FIFO" method. The only offsets to recoverable damages should be for gains on sales that take place after November 14, 2001. Plaintiffs' proposed methodology is consistent with the loss causation principles of *Dura* that state that only loss transactions completed after the first partial disclosure (November 14, 2001) should be considered as damages. This is consistent with plaintiffs' prior position that only sales *after* November 14, 2001 should be considered for offsetting purposes. The Court should also reject defendants' proposal to use Damages Period sales of pre-Damages Period purchases to offset damages.

The defendants' claim of a right to a jury trial is misplaced. Defendants had a jury trial on all relevant issues in this case. There is simply no jury trial right to rebut the presumption of reliance where the facts regarding truth on the market and actual knowledge were litigated at trial.

Finally, defendants' proposed notice is improper. The Court should adopt plaintiffs' proposed notice, and provide class members with sufficient time (120 days) to obtain trading records and to submit a claim. In many cases the notice will not go directly to class members, but will be sent to nominees who held class members' shares in "street name." The nominees will need to send the notice to class members. Some class members have moved and additional time is needed to

- 2 -

reach these claimants.  Following receipt, retrieval of purchase and sale information for transactions

seven or eight years ago will take additional time.  In fairness, class members will need 120 days to

have sufficient time to file a claim.  Defendants' request that class members provide trading

information for other Household securities (*i.e.*, options) should be rejected since gains or losses

from option trades have no relevance to any damage formula or reliance issue.  Claimants should

only be required to produce information regarding their Household stock transactions during the

Damages Period.

## II.    ARGUMENT

### A.    Defendants' Truth-on-the-Market Defense Was Litigated at Trial and Defendants Have Failed to Identify Any Relevant Evidence That Could be Obtained Through Further Discovery

In their Proposed Trading Questionnaire, defendants seek information about class members'

trading patterns, including information regarding: (1) other securities issued by Household or

derivative contracts such as put options or call options; (2) hedging strategy; (3) index tracking

strategy; (4) automatic dividend reinvestment programs; and (5) proprietary trading models.

Defendants appear to be arguing that class members who purchased Household stock and also

engaged in certain trading strategies cannot rely on the presumption of reliance.[1]  However, under

*Basic*, the presumption of reliance extends to all types of investors, regardless of their particular

trading patterns.  *See Levie*, 496 F. Supp. 2d at 949 (holding day traders, short sellers, and put and

call option traders may rely on the presumption of reliance); *In re Bally Mfg. Sec. Corp. Litig.*, 141

F.R.D. 262, 269 n.6 (N.D. Ill. 1992) ("'[the roster] of shareholders of every large, publicly traded

corporation includes institutional investors, short-sellers, arbitrages, etc.  The fact that these traders

---

[1]    Any options gains or losses are not part of any class members' claim.  The fact that certain class members may ***also*** have engaged in options trades does not rebut the presumption.

have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making.'") (quoting *Moskowitz v. Loop*, 128 F.R.D. 624, 631 (E.D. Pa. 1989)).[2]

As noted in these cases, whether an investor used an index tracking, hedging, or proprietary trading strategy, they relied on the price of Household common stock being free of fraud.  For example, the *WorldCom* court rejected the claim that different investment strategies – such as reliance on sophisticated investment managers or "passive" investment by use of a computer model – rebut the presumption of reliance, holding "[t]his argument can be swiftly rejected.  Each of these methods of making investment decisions is representative of methods used by many other investors. Each of the methods reflects an evaluation of the publicly available information about WorldCom, whether by the named plaintiff, the advisor, or a computer model.  There is no suggestion that any of the named plaintiffs had access to non-public information and learned that there was a fraud afoot and decided nonetheless to invest in WorldCom.  None of the different strategies . . .  will defeat the presumption."  219 F.R.D. at 281-82.

The cases defendants cite are not binding on this Court or do not support their position.  In *Bally Manufacturing*, the Court cited *Moskowitz, supra,* for the proposition that all traders, including arbitragers, were entitled to the presumption of reliance and the only way to rebut the presumption

---

[2]      Numerous other courts have held likewise.  *WorldCom,* 219 F.R.D. at 296 (short sellers, index or computer model investor may use fraud on the market presumption); *Royal Ahold*, 219 F.R.D. at 354-55 (rejecting argument that day trader could not be lead plaintiff because "day traders allegedly do not rely on the financial statements or the fundamental value of a company as the rest of the market does.  But where false information and misleading omissions pollute the market, all types of investors are injured."); *In re Initial Public Offering Sec. Litig. ("IPO")*, 227 F.R.D. 65, 108 (S.D.N.Y. 2004) (day traders); *In re Priceline.com Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006) (options traders and other traders of securities may use the fraud-on-the-market presumption of reliance); *Schleicher v. Wendt*, No. 02-CV-1332-DFH, 2009 U.S. Dist. LEXIS 24810, *24-*29 (S.D. Ind. Mar. 20, 2009) (applying fraud on the market presumption to short sellers); *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 676 (E.D. Pa. 2004) (same).

was to show "convincing proof that price played no part whatsoever in their decision-making." 141 F.R.D. at 269 n.6.  In *In re Scott Paper Co. Sec. Litig.*, 142 F.R.D. 611 (E.D. Pa. 1992) (Defs' Phase II Brf. at 9), the court did not endorse defendants' assertion that the presumption had been rebutted because plaintiff purchased through an automatic dividend reinvestment plan, but simply noted that, even if this was assumed to be correct, it was irrelevant.  142 F.R.D. at 617.  *Jaroslawicz* is a non-binding district court opinion that focused on rejecting plaintiffs' request for an aggregate damage award and pointed out that many reliance issues (such as truth-on-the-market) can be litigated on a class-wide basis.  *Jaroslawicz v. Engelhard Corp.*, 724 F. Supp. 294, 302 (D.N.J. 1989).

The other non-binding cases cited by defendants, *Zlotnick v. Tie Communications,* 836 F.2d 818 (3rd Cir. 1988) and *Ganesh, LLC v. Computer Learning Centers, Inc.,* 183 F.R.D. 487 (E.D. Va. 1998), have been "almost unanimously rejected" by other courts.  *IPO,* 227 F.R.D. at 109 (courts "have almost unanimously rejected the *Zlotnick* exception") (citing *Argent Classic*, 315 F. Supp. 2d at 676 n.13); *see also Schleicher*, 2009 U.S. Dist. LEXIS 24810, at *25-*26 (discussing and rejecting *Zlotnick* and *Ganesh*); *Moskowitz*, 128 F.R.D. at 630-31; *In re W. Union Sec. Litig.,* 120 F.R.D. 629, 637 (D.N.J. 1988).  Significantly, *Zlotnick* predates the U.S. Supreme Court's fraud-on-the-market presumption established in *Basic Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988).  *IPO*, 227 F.R.D. at 109.

Defendants also argue that certain class members' purchases after partial disclosures of the fraud (during the period November 14, 2001 – October 11, 2002), including Lead Plaintiff Glickenhaus & Company, require discovery and could rebut the presumption of reliance because these investors must have known about the fraud.  Yet "Courts have held that where the fraud is only partially revealed . . . the presumption is not defeated and the class can contain members who purchased both before and after the alleged corrective disclosure."  *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 528 (N.D. Cal. 2009) (citing *WorldCom*, 219 F.R.D. at 307; *Freeland v. Iridium World*

*Communs., Ltd.*, 233 F.R.D. 40, 43-44 (D.D.C. 2006); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1326-28 (N.D. Ga. 2007)). Further, defendants' argument is simply a veiled attempt to relitigate their truth-on-the-market defense that was rejected by the jury.

Defendants asserted that "investors knew" throughout the Relevant Time Period. *See* Plaintiffs' Post-Verdict Submission regarding Phase II at 6-12 (discussing defendants' efforts at trial to show that investors knew), Docket No. 1622. The jury rejected defendants' contention and thus, defendants cannot now relitigate before a second jury whether any individual investor "knew" of the fraud because of a partial disclosure that preceded their purchase. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (district court's bifurcation between multiple juries impermissible under the Seventh Amendment where second jury would consider factual issues that overlapped with factual issues resolved by first jury). Put simply, the jury has already rejected defendants' arguments by finding that the stock remained inflated after the partial disclosures. As such, the discovery defendants seek, whether from Glickenhaus or absent class members, is irrelevant. Purchases that follow a partial disclosure do not rebut the presumption.

With one exception, defendants provide this Court with no reason to believe that their proposed discovery would yield anything other than delay. Defendants argue that Wells Fargo had access to inside information, which raises "significant questions" (Defs' Phase II Brf. at 18) about any claim that Wells Fargo may file. However, defendants' purported basis for seeking further discovery of Wells Fargo is unsupported by the facts. Defendants claim that Wells Fargo "maintained" its Household stock after the failed merger and later "increased" its holdings. Defs' Phase II Brief at 18. Actually, the publicly available information shows that Wells Fargo ***decreased*** its holdings of Household stock in 2002. By December 31, 2002, Wells Fargo had only 1.4 million shares, having divested over 1.8 million shares during 2002. *See* Defendants' Trial Exhibit 701, attached as Ex. A. Yet, due to Wells Fargo's unique situation in this case where it obtained non-

public information from Household as part of the merger discussions, it may be appropriate to allow limited discovery of Wells Fargo. Specifically, defendants should be permitted to serve discovery designed to ascertain if Wells Fargo traded based on inside information. However, since no other class member obtained non-public information from Household, discovery should be limited to any claim by Wells Fargo.

Defendants likewise claim that any class members that supported the 2001 and 2002 proxy effort, which attempted to link executive compensation to ethical behavior, should also be subjected to discovery. Naturally, defendants do not take a position about the type of discovery that should be permitted, nor do they explain how a shareholder's interest in corporate governance could rebut the presumption of reliance. More importantly, however, defendants' theory has already been rejected by the jury. Defendants raised this claim at trial, arguing that the proxy filings demonstrated that investors "knew" of the predatory lending fraud at Household. In response to defendants' misguided argument at trial, plaintiffs pointed out that defendants denied that Household engaged in any predatory lending in its statement recommending a vote against the proxy measure, and failed to disclose its predatory lending practices. Once again, the jury already rejected defendants' argument that the truth was in the market due to the proxy filings. Therefore, investors who supported efforts to tie executive pay to good governance are entitled to the same recovery as the rest of the class.

Finally, defendants cannot predicate further discovery on this Court's prior rulings regarding defendants' attempts to depose the individual plaintiffs and their investment advisors. Those rulings dealt with the narrow issue of whether depositions of lead plaintiffs and their investment advisors were relevant to defendants' truth-on-the-market defense. January 29, 2007 Minute Order at 1, Docket No. 935 (Guzman, J.); November 13, 2006 Memorandum Opinion and Order, Docket No. 762 (Nolan, Mag. J.); Magistrate Nolan's April 18, 2005 Minute Order at 5, Docket No. 225 (Nolan, Mag. J.). This Court ruled that discovery of third party analysts could be obtained to support their

truth-on-the-market defense, and no discovery of plaintiffs or their investment advisors were required. *See* January 29, 2007 Order. To be sure, those Orders do mention the possibility of further discovery after trial on any unresolved issue of individual reliance. However, the Court's rulings were also made prior to the jury's rejection of defendants' truth-on-the-market argument and defendants' testimony that no investor, other than Wells Fargo, obtained non-public information from the defendants. *See* Plaintiffs' Post-Verdict Submission Regarding Phase II at 6-15. Thus, there is very limited post-verdict discovery required since, with the exception of Wells Fargo's acquisition of non-public information, all possible means of rebutting the presumption of reliance were addressed at trial.

**B.      The Court Can Decide the Formula to Calculate Damages**

In their initial submission, plaintiffs set forth their position on the damages formula the Court should adopt. Plaintiffs' proposal recognizes that certain offsets are legitimate and plaintiffs' calculations will permit the class to recover only actual damages. Defendants' proposal, on the other hand, is patently unfair. For example, since class members cannot recover damages for any purchases and sales prior to the first partial disclosure (November 14, 2001), it follows that any trading gains on similar transactions should not be used to reduce or offset damages. The only offset should be for purchases and sales between November 14, 2001 – October 11, 2002 that result in a profit.

In addition, defendants propose to calculate alleged gains from shares purchased prior to the Damages Period and sold during the Damages Period. Defendants allege that any damages suffered by class members should be offset by these alleged gains. Once again, defendants' proposal is unfair. First, purchases prior to the Damages Period are not used to calculate damages, so they should not be used to calculate alleged gains. Second, defendants' alleged gain calculation also

includes sales prior to November 14, 2001 which is improper as set forth above. *See* Supplemental Declaration of Bjorn I. Steinholt attached as Ex. B.

With respect to whether the Court should use FIFO or LIFO to "match" shares purchased and sold for calculating a loss or gain, the case law relied on by defendants arises in the context of calculating the "largest financial interest" for lead plaintiff selection under the PSLRA. The determination of damages under §10(b) is different than a loss calculation for purposes of lead plaintiff appointment under the PSLRA. The loss calculation under the PSLRA lead plaintiff calculation does not take into account inflation per share or loss causation principles but rather calculates the "losses" based on the market prices of a company's stock. In contrast, as discussed in plaintiffs' initial submission, the vast majority of settlement plans of allocation use the FIFO method, as does the IRS in the treatment of taxes on stock transactions. Therefore, there is ample support for the Court to adopt FIFO in the context of damage calculations.

## III.    OBJECTIONS TO DEFENDANTS' NOTICE

Plaintiffs object to defendants' proposed notice. Among other things, plaintiffs object to the following provisions:

1.     Introduction paragraph – defendants' reference to the statement that purchasers of Household International, Inc. common stock from July 30, 1999 through October 11, 2002 "may be eligible to receive an award" is misleading and wrong since, based on the verdict, only claimants who purchased between March 23, 2001 and October 11, 2002 are eligible to file a claim.

2.     The 45-day deadline for class members to submit claim forms and trading information is too short. Class members realistically need up to 120 days since many claimants will receive the notice from brokers or nominees, which can cause delays, and they also need time to collect responsive information that is eight years old.

3.      The repeated references to claimants being required to produce additional documents and undergo an examination by deposition are transparent attempts to discourage claims. Defendants' reference to a jury trial is also not supported by the law and is also calculated to discourage the filing of claims.

4.      Defendants' proposed Schedule of Transactions requests trades from July 30, 1999 – October 11, 2002.  Information relating to trades prior to March 23, 2001 (the first day of the Damages Period found by the jury) is not necessary.

5.      The information requested in the Trading Questionnaire is not necessary to compute a valid claim.  The request for any trades in other Household securities (such as Household debt, or put or call options) is not necessary since these trades will not be used to calculate damages.  (*See* Question 1).   As discussed *supra* in §II.A., Questions 2-6 relating to individual claimants' investment strategies have no relevance to the calculation of any claim or rebutting the presumption of reliance.

## IV.     DEFENDANTS HAVE NO RIGHT TO JURY TRIAL

While defendants harp on the fact that the Seventh Amendment guarantees them a right to a jury trial on individual reliance and damages issues, they neglect to consider the fact that these issues have already been examined by a jury.  On May 7, 2009, the jury in this case found on a class-wide basis that the truth regarding the alleged fraud was not "on the market" until October 11, 2002. Defendants reiterated several times at trial that they followed the securities laws, including Regulation F.D., and therefore each individual investor (except Wells Fargo) was privy to (and therefore knew) the same information regarding defendants' practices as every other investor.  As the Seventh Amendment makes clear, "no fact tried by a jury, shall be otherwise re-examined."  U.S.

Const. amend. VII.[3]  Since the jury found that plaintiffs proved reliance on a class-wide basis,

defendants cannot now be permitted to reargue the same issues on an individual basis.

In *Rhone-Poulenc Rorer Inc.*, the Seventh Circuit emphasized that while a district court may

bifurcate a lawsuit, "the judge must not divide issues between separate trials in such a way that the

same issue is reexamined by different juries." 51 F.3d at 1303.  The court continued, "[t]he right to a

jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable

issues determined by the first jury impaneled to hear them . . ., and not reexamined by another finder

of fact." *Id.*

In *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999), the

Court of Appeals provided further guidance on this issue.  The Seventh Circuit held that to avoid

conflict with the Seventh Amendment, "questions in a single suit can only be tried by different juries

if they are 'so distinct and separable from the others that a trial of [them] alone may be had without

injustice.'"  *Houseman*, 171 F.3d at 1126 (citation omitted).  The court further explained that

"[w]hile both juries can examine overlapping evidence, they may not decide factual issues that are

common to both trials and essential to the outcome." *Id.*  While the *Houseman* court determined that

bifurcation in that case did not conflict with the Seventh Amendment because the "claims against

each defendant [were] based on different legal theories and involve[d] distinct inquiries," (*id*. at

1127), the court noted that bifurcation did create a risk of a Seventh Amendment violation, but this

risk was rendered harmless by virtue of the initial jury verdict.  *Id.* at 1128 n.16.  *Houseman*

involved two juries deciding distinct questions in which the second jury could not have reexamined

the conclusions of the first.  *Id*. at 1128.  In our case, however, should a second jury be empanelled

---

[3]      The Seventh Amendment provides that: "In Suits at common law . . . the right of trial by jury shall be
preserved, and no fact tried by a jury, shall be otherwise re-examined." U.S. Const. amend. VII.

to determine individual reliance issues, as proposed by defendants, that jury will have to reexamine the conclusions related to class-wide reliance previously examined by the first jury.

Defendants have not supplied sufficient support for their claim that further proceedings regarding individual reliance are necessary or that such proceedings must proceed in front of a new jury. As plaintiffs' opening brief explained, the court in *In re Ask Sec. Litig.*, No. C-85-20207(A)-WAI, 1992 U.S. Dist. LEXIS 14944 (N.D. Cal. Aug. 18, 1992) held that the court could consider rebuttal evidence post-verdict by means of the claims mechanism process to protect defendants' rebuttal rights. As part of the claims process, the issue can be resolved by adding a question in the claim form to be completed by all class members. Since the three class representatives are in the same position as all absent class members, there is no right (or need) to have a jury trial to answer this limited question of all class members.

Defendants' suggestion that they be entitled to a jury determination on damages issues cannot be reconciled with the jury's previous findings. In this case, the jury already determined the inflation per share for each day Household's stock was affected by defendants' fraud – March 23, 2001 to October 11, 2002. All that remains is determining the formula for calculating class members' claims, and calculating damages. An independent claims administrator can perform the

mechanical determination of each plaintiff's out-of-pocket damages following receipt of trading

information from the claimants.  Plaintiffs' Post-Verdict Submission Regarding Phase II at 18.

Defendants provide no authority as to why a subsequent jury trial on such issues is required or

necessary.

DATED:  June 11, 2009                              Respectfully submitted,

                                                   COUGHLIN STOIA GELLER
                                                     RUDMAN & ROBBINS LLP
                                                   PATRICK J. COUGHLIN (111070)
                                                   MICHAEL J. DOWD (135628)
                                                   SPENCER A. BURKHOLZ (147029)
                                                   DANIEL S. DROSMAN (200643)
                                                   MAUREEN E. MUELLER (253431)


                                                   _____/s/ Spencer A. Burkholz_____
                                                         SPENCER A. BURKHOLZ

                                                   655 West Broadway, Suite 1900
                                                   San Diego, CA  92101
                                                   Telephone:  619/231-1058
                                                   619/231-7423 (fax)

                                                   COUGHLIN STOIA GELLER
                                                     RUDMAN & ROBBINS LLP
                                                   AZRA Z. MEHDI (90785467)
                                                   D. CAMERON BAKER (154432)
                                                   LUKE O. BROOKS (90785469)
                                                   JASON C. DAVIS (253370)
                                                   100 Pine Street, Suite 2600
                                                   San Francisco, CA  94111
                                                   Telephone:  415/288-4545
                                                   415/288-4534 (fax)

                                                   Lead Counsel for Plaintiffs

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel

LAW OFFICES OF LAWRENCE G.
   SOICHER
LAWRENCE G. SOICHER
110 East 59th Street, 25th Floor
New York, NY  10022
Telephone:  212/883-8000
212/355-6900 (fax)

Attorneys for Plaintiff


S:\CasesSD\Household Intl\Trial\Post Trial\BRF00059736-Reply PV Submission.doc

<u>DECLARATION OF SERVICE BY ELECTRONIC MAIL AND BY U.S. MAIL</u>

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Diego, State of California, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 W. Broadway, Suite 1900, San Diego, CA 92101.

2.      That on June 11, 2009, declarant served by electronic mail and by U.S. Mail to the parties PLAINTIFFS' RESPONSE TO DEFENDANTS' RECOMMENDATIONS FOR PHASE II PROCEEDINGS, IF NEEDED AND DEFENDANTS' RESPONSE TO PLAINTIFFS' POST-VERDICT SUBMISSION.

The parties' email addresses are as follows:

| | |
|---|---|
| TKavaler@cahill.com | NEimer@EimerStahl.com |
| PSloane@cahill.com | ADeutsch@EimerStahl.com |
| PFarren@cahill.com | MMiller@MillerLawLLC.com |
| LBest@cahill.com | LFanning@MillerLawLLC.com |
| DOwen@cahill.com | |

and by U.S. Mail to:

Lawrence G. Soicher, Esq.              David R. Scott, Esq.
Law Offices of Lawrence G. Soicher     Scott & Scott LLC
110 East 59th Street, 25th Floor       108 Norwich Avenue
New York, NY 10022                     Colchester, CT  06415

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 11th day of June, 2009, at San Diego, California.

_____
                    /s/ Rika J. Ellis
                    RIKA J. ELLIS