**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated,<br><br>       Plaintiff,<br><br> vs.<br><br>HOUSEHOLD INTERNATIONAL, INC., et al.,<br><br>       Defendants. | Lead Case No. 02-C-5893<br>(Consolidated)<br><br><u>CLASS ACTION</u><br><br>Judge Ronald A. Guzman<br>Magistrate Judge Nan R. Nolan |

**<u>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF<br>MOTION FOR ENTRY OF JUDGMENT</u>**

I.  **ARGUMENT**

Plaintiffs' motion for entry of judgment is premised on this Court's acceptance of plaintiffs' proposal regarding the "Phase II" proceedings. If the Court agrees with and adopts plaintiffs' proposal regarding the "Phase II" proceedings, entry of judgment is appropriate. In late May 2009, plaintiffs proposed that the Court approve a notice to be sent to class members advising them of the verdict and their right to file a claim for recovery. Plaintiffs' Post-Verdict Submission, Docket No. 1622, Exs. 2-4. In approving the Notice proposed by plaintiffs, the Court would adopt a damages formula that would be applied to each submitted claim. In addition, the claim form proposed by plaintiffs asks claimants whether they still would have purchased Household stock, notwithstanding actual knowledge of the fraud committed by defendants. This question would resolve any remaining issue with regard to reliance.

In stark contrast, defendants apparently view the trial as a non-event. They believe that they are now entitled to extensive discovery of absent class members and a second trial, or a series of mini-trials, as to each class members' reliance and claim amount.[1] However, as demonstrated in plaintiffs' post-verdict briefs, defendants cannot rebut the presumption of reliance. *See* Docket No. 1622 at 6-14; Docket No. 1633 at 3-8. Defendants admitted they provided no material, non-public information to any investors except Wells Fargo. *Id*. Defendants also litigated at trial – and lost – their claim that the truth was in the market. *Id*. A third means to rebut the presumption mentioned

---

[1] For example, Dr. Bajaj, defendants' expert at trial whose views were completely rejected by the jury in this case, claims that class member discovery is necessary to see the extent by which different investors "rely on the integrity of the market price to different degrees," including whether it "based its assessment that the stock price was different from the stocks fundamental value and thus represented a profitable trading opportunity." Bajaj Declaration, Docket No. 1683, ¶¶2, 10. Bajaj claims support for this proposition in the academic literature but provides no citations to any finance literature or case law. In any event, Bajaj's theory ignores the fact that the jury found investors were defrauded and paid too much money per share as a consequence. As usual, defendants forget that they lost at trial. Regardless, defendants' attempt to use Bajaj's silly argument to create a "discovery" issue for class members should be rejected.

in *Basic Inc. v. Levinson*, 485 U.S. 224, 247-48 (1988) – that an investor would have purchased the stock even if it knew of the fraud – seems illogical in almost every instance, and can be covered in the claim form. *See* Docket No. 1622 at 1-2.[2] The jury also determined per share inflation for each day of the Relevant Time Period. The only remaining task is to apply the damages formula, as set forth in the Notice, to class members' submitted claims.

In sum, if the Court agrees with plaintiffs' "Phase II" proposal, entry of judgment is appropriate since all that will be left is a mechanical application of the claims of class members to the damages formula. *See Buchanan v. United States*, 82 F.3d 706, 709 (7th Cir. 1996); *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir. 1985); Docket No. 1672 at 7-9. Therefore, in their Phase II briefings, plaintiffs had indicated their intention to file a motion for entry of judgment. *See* Docket No. 1622 at 31. Plaintiffs did not file their motion for entry of judgment immediately, based on their understanding that the Court would proceed with the Phase II proceedings contemporaneously with the post-trial briefing. Trial Transcript at 4811-4812.

However, HSBC's curious financial transactions and even more curious public statements forced plaintiffs to file the motion at this time. The fact remains that defendant Household has been transferring assets to its parent HSBC's other subsidiaries as this case proceeded towards trial and has continued to engage in this conduct post-verdict. In response, Household asserts that all such "transfers" were effected at fair value, "beyond any question." Defs' Opp. at 10. The documents Household provides to support its argument fall short. For example, Household asserts that the $12.4 billion dollars in assets that it transferred to HSBC were valued at "fair market value" by

---

[2] Defendants argue once again that prior Court orders disallowing discovery by defendants of certain plaintiffs and their investment advisors left the issue for post-trial proceedings. However, the Court order rejecting this type of discovery indicated that this discovery was not necessary in order for defendants to rebut the presumption of reliance by showing truth on the market since they could do so by taking discovery of third-party analysts. *See* Docket 1633 at 7-8; January 29, 2007 Order, Docket No. 935.

518336_1

independent third parties. *Id.* at 10-11. But the PriceWaterhouseCoopers reports (PWC) relied on by Household are, at best, equivocal. They calculate valuations based on "major assumptions" provided by Household management, such as the "forecast cash flows provided by Management [that] reflect their best estimates with respect to the operations, financial forecast and valuation assumptions." Declaration of Michael Reeves, Docket No. 1678, Ex. 3 at 5. PWC was in essence resting its analysis on values provided by Household. Needless to say, plaintiffs are dubious of any analysis that relies on Household's management representations. As the jury verdict in this case confirms, Household management is not worthy of such trust.

More importantly, neither PWC nor any other party states that the consideration Household obtained in exchange for the assets it transferred was "fair." The two agreements Household asserts were used to execute the $12.4 billion credit card transaction do not support the conclusion that the consideration Household received from HSBC was fair. One sale "for a total payment of $6,155,645,387," Reeves Decl. at 3, ¶7, was executed pursuant to a Purchase Agreement indicating Household only received $638 million. Reeves Decl., Ex. 2 at 2. The other sale "for a total payment of $5,962,138,070," *id.* at 4, ¶10, was executed pursuant to a Purchase Agreement indicating Household received only $669 million. Reeves Decl., Ex. 6 at 2. Household submits no declaration from PWC analyzing whether the transactions Household executed were fair from an economic perspective or otherwise explaining these discrepancies.[3] Household may have transferred assets that were fairly valued, but Household's "proof" does not analyze the value of ***any*** consideration Household received in return.

---

[3] The same problem affects the "$3.0 billion sale of auto finance receivables." Declaration of Joan Coppenrath, Docket No. 1679, at 2, ¶5. Household represents that it received "a total payment of $2,758,019,446.64," *id.*, ¶6, but attaches a Sale and Purchase Agreement that does not indicate what the purchase price really was. The agreement indicates the "Purchase Price" is set forth at "Exhibit A" but no such exhibit is attached to the agreement.

518336_1

In conclusion, defendants' opposition to plaintiffs' motion is voluminous, but short on substance. Defendants have failed to demonstrate that they actually received fair value in the suspect transactions. Plaintiffs request that this Court adopt plaintiffs' proposal for the Phase II proceedings and thereafter enter judgment in plaintiffs' favor.[4]

## II. CONCLUSION

Plaintiffs respectfully request entry of judgment.

DATED:  April, 26, 2010

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
MICHAEL J. DOWD (135628)
SPENCER A. BURKHOLZ (147029)
DANIEL S. DROSMAN (200643)
MAUREEN E. MUELLER (253431)


s/SPENCER A. BURKHOLZ
SPENCER A. BURKHOLZ

---

[4] Defendants' attack on plaintiffs' expert Bjorn I. Steinholt, who provided an opinion regarding aggregate damages, is misleading and irrelevant and should be disregarded. Defs' Opp. at 7 n.5. First, the *Flowserve* opinion cited by defendants is bad law – it was vacated and reversed by the Fifth Circuit which approved Steinholt's loss causation methodology and analysis. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F. 3d 221, 231 (5th Cir. 2009). Second, the court's comments in *BankAmerica Corp. Securities Litigation,* 210 F.R.D. 694 (E.D. Mo. 2002) were not, as defendants suggest, based on the validity of Steinholt's economic analysis. Nor did they relate to aggregate damages. Instead, the Court found that Steinholt's use of a "simplifying" assumption regarding the total potential *per share* damages ignored the "risk[s] of proceeding to trial." *Id.* at 708-709. Of course, the parties here have already gone to trial, and Steinholt's analysis makes no assumptions regarding the per share damages, because plaintiffs ***proved*** that amount to the jury. Finally, in *Barrie v. Intervoice-Brite, Inc.*, No. 3:01-CVI071 (N.D. Tex. Mar. 27, 2008), the court expressly denied the defendants' *Daubert* motion seeking to disqualify Steinholt. Ex. A hereto. And, as in *Flowserve,* the Fifth Circuit granted plaintiffs' Rule 23 (f) petition for review of the district court's decision on loss causation. That appeal is pending.

- 4 -

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS (90785469)
JASON C. DAVIS (253370)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

Liaison Counsel

LAW OFFICES OF LAWRENCE G.
  SOICHER
LAWRENCE G. SOICHER
110 East 59th Street, 25th Floor
New York, NY 10022
Telephone: 212/883-8000
212/355-6900 (fax)

Attorneys for Plaintiff

DECLARATION OF SERVICE BY ELECTRONIC MAIL AND BY U.S. MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Diego, State of California, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 W. Broadway, Suite 1900, San Diego, California 92101.

2.     That on April 26, 2010, declarant served by electronic mail and by U.S. Mail to the parties PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT.

The parties' e-mail addresses are as follows:

| | |
|---|---|
| TKavaler@cahill.com | NEimer@EimerStahl.com |
| PSloane@cahill.com | jtheis@eimerstahl.com |
| PFarren@cahill.com | MMiller@MillerLawLLC.com |
| LBest@cahill.com | LFanning@MillerLawLLC.com |
| DOwen@cahill.com | |

and by U.S. Mail to:

Lawrence G. Soicher, Esq.          David R. Scott, Esq.
Law Offices of Lawrence G. Soicher  Scott & Scott LLC
110 East 59th Street, 25th Floor    108 Norwich Avenue
New York, NY 10022                  Colchester, CT  06415

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 26th day of April, 2010, at San Diego, California.

                                                      /s/ Mo Maloney
                                                      MO MALONEY