### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, on behalf of itself and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: 02 C 5893 |
| v. | ) ) ) | Judge Ronald A. Guzmán |
| HOUSEHOLD INTERNATIONAL, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

### ORDER

For the reasons stated above, Defendants' post-trial motions [1866] are denied and Plaintiffs' motion for entry of judgment pursuant to Rule 54(b) and prejudgment interest [1868] is granted in part. Plaintiffs are to be awarded prejudgment interest at the average prime rate compounded annually from October 11, 2002 to the date of judgment. The Court expressly determines that there is no just reason for delay and directs that a final judgment be entered in favor of the List 1 claimants in the amounts specified in the Special Master's Report and Recommendation of July 11, 2013 (Dkt. # 1860-1)[1] plus prejudgment interest as specified herein. Plaintiffs to submit a proposed judgment order no more than 5 days from the date of entry of this order. Parties are to appear for a status on October 23, 2013 at 9:30 a.m. to discuss the status of the claims on Lists 2, 3, and 4.

### STATEMENT

This case involves a certified class action brought under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and the rules and regulations promulgated thereunder, including Securities Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5. After an over five-week jury trial from March 30, 2009 to May 7, 2009 ("Phase I"), a jury found various Defendants liable for violations of federal securities laws. Specifically, the jury found that certain Defendants made false public statements or failed to disclose material information regarding their business, financial results and credit quality of their loans, which Plaintiffs, as

---

[1] The Court notes that the Special Master indicated in his July 11, 2013 Report and Recommendation that some movement may occur among the lists of claimants as the parties worked through disputed issues. (Dkt. # 1860, at 3.) Thus, any reference to List 1 in this order refers to the List 1 attached the July 11, 2013 Report and Recommendation as well as any supplements thereto. As a result, any references in this order to amounts due to List 1 claimants, either for liability or prejudgment interest, are approximations and may be subject to change based on a final resolution of the lists.

investors, had a right to know.[2] (Dkt. # 1545-2, PageID # 41372.) Defendants' renewed motions for judgment as a matter or law or, in the alternative, a new trial, are before the Court as is Plaintiffs' motion for entry of judgment pursuant to Federal Rule of Civil Procedure ("Rule") 54(b) and prejudgment interest. For the reasons stated below, Defendants' post-trial motions are denied, Plaintiffs' motion for entry of judgment under Rule 54(b) and prejudgment interest is granted in part.

Defendants' Post-Trial Motions

A court may grant judgment as a matter of law when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party." Fed. R. Civ.P. 50(a)(1); *see Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 300–01 (7th Cir. 2009). The Court "do[es] not weigh evidence or assess the credibility of witnesses. Instead, [it] draw[s] all reasonable inferences in favor of the nonmoving party." *Thomas*, 604 F.3d at 300–01 (citations omitted). Under Rule 59, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). A motion for a new trial is granted only if the verdict is against the manifest weight of the evidence, the damages are excessive, or other reasons exist as to why the trial was unfair to the moving party. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010). "A verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (citing *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)).

Defendants contend that the Court should grant their motion for judgment as a matter of law for the following reasons:

> (1) Plaintiffs' "leakage model" failed to establish loss causation as a matter of law because it: (a) failed to identify the misrepresentation alleged to have introduced inflation into Household's stock price; (b) failed to establish a causal connection between an alleged misrepresentation and a loss; (c) failed to account properly for stock price declines resulting from non-fraud firm-specific factors; and (d) has numerous additional infirmities that reinforce the model's structural errors.
>
> (2) The jury's finding that the March 23, 2001 statement introduced the leakage model's sum total of inflation into the stock price precludes, as a matter of law, either materiality or application of the "fraud on the market" presumption of reliance as to the other statements. Independently, because the jury found that all inflation in the market price of Household stock was attributable to the March 23, 2001 statement, but that defendant

---

[2] The jury rendered a verdict on each of forty statements allegedly made by the defendants and indicated on the jury verdict form which of four defendants was liable as to each statement. (Dkt. # 1611.)

Schoenholz was not liable for that statement, Defendant Schoenholz is entitled to judgment as a matter of law.

(3) There was no legally tenable basis for the jury to find the three theories of fraud present by Plaintiffs–restatement, predatory lending, and re-aging–to be actionable. As a matter of law, the record evidence fails to meet the requisite standards of scienter to sustain a finding of liability in a private securities fraud cause of action.

(4) Plaintiffs' failure to prove a primary violation of § 10(b) and Rule 10b-5 by any Defendant renders Plaintiffs' § 20(a) claims for controlling person liability against Defendants Aldinger and Schoenholz subject to dismissal as a matter of law. In addition, the evidence was insufficient as a matter of law to support the imposition of § 20(a) liability as to the statements at issue.

With respect to the motion for a new trial, Defendants assert the following:

(1) The jury's ad hoc partial adoption of the Plaintiffs' leakage model resulted in an irrational and unsupported verdict. The jury's finding that a March 23, 2001 statement concerning solely "predatory lending" introduced the leakage model's total sum of inflation into the stock price is legally impossible and foreclosed by the model itself and resulted in a wholly unsupported and irrational verdict.

(2) The jury instruction on the first element of Plaintiffs' claim misstated the law on this element, as established by *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011).

(3) The jury was improperly instructed on the element of scienter as a consequence of the Court's *sua sponte* and erroneous insertion of a "knew or should have known" standard.

(4) The verdict form contained fundamental errors of law, including (a) wrongly excluding Arthur Andersen from the set of those potentially at fault for Plaintiffs' losses, thereby rendering the apportionment verdict legally defective, and (b) failing to require that § 20(a) liability be assessed with respect to specific statements for which liability was found, thereby rendering the § 20(a) verdict legally deficient, unsupported and irrational.

(5) The aggregate impact of erroneous evidentiary rulings resulted in an unfair trial. The Court erred in admitting prejudicial and unsupported expert testimony, including that of Fischel, Ghiglieri, Cross, and Devor, and Plaintiffs misused hearsay evidence for improper substantive purposes and improperly circumvented exclusion orders.

(6) The Phase II proceedings deprived Defendants of the right to a proper adjudication of the element of reliance. The limited discovery permitted as to certain claimants in Phase II demonstrated a lack of reliance and the Phase II proceedings improperly constrained

Defendants from a full and fair opportunity to rebut the presumption of reliance.

The Court addresses separately the motion for a new trial with respect to the allegedly improper jury instruction because the argument is based on a purported change in the law due to the Supreme Court's holding in *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011). The jury instruction at issue summarized the Rule 10b-5 elements and directed the jurors to address whether:

> the defendant made, *approved, or furnished information to be included in* a false statement of fact or omitted a fact that was necessary, in light of the circumstances, to prevent a statement that was made from being false or misleading during the relevant time period . . . .

(Tr. 4714:5-10) (emphasis added). Defendants objected to the emphasized language. Tr. 3853, 3862. They assert that *Janus* restricted 10b-5 liability only to those who actually "made" the allegedly fraudulent statements and thus the additional language "approved, or furnished information to be included in" misstated the law.

In *Janus*, the Supreme Court addressed whether a mutual fund investment adviser "made" statements in the prospectus filed by its mutual fund client. The investment adviser provided the fund with investment management and advisory services, "but the two entities maintain[ed] legal independence." *Janus,* 131 S. Ct. at 2299. In addition, all of the officers of the mutual fund were also officers of the investment advisor, but only one member of the fund's board of directors was associated with the investment adviser. *Id*. The fund issued prospectuses "describing the investment strategy and operations of its mutual funds to investors," which a class of investors alleged contained materially false statements. The Supreme Court held that "[f]or purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2302. The *Janus* court went on the state that "[w]ithout control, a person or entity can merely suggest what to say, not 'make' a statement in its own right" and "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Id*.

To receive a new trial based on erroneous jury instructions, "a defendant must show both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled." *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (internal quotation marks and citation omitted). "When assessing whether prejudice has resulted, the Court must consider the instructions as a whole, along with all the evidence and arguments in the case, and then decide whether the jury was misinformed about the applicable law." *Warfield v. City of Chi.*, 679 F. Supp. 2d 876, 884 (7th Cir. 2010).

The Court concludes that the instruction above did not misstate the law. Indeed, "*Janus* did not change the longstanding rule that corporate officials are liable for misstatements to which they give their imprimatur." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 164 (S.D.N.Y. 2012) (citing *Janus*, 131 S. Ct. at 2302 ("[I]n the ordinary case, attribution within a

4

statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed.")). As noted by another court, "*Janus Capital* addressed whether one corporate entity could be held liable for the false statements of another corporate entity, and thus is distinguishable on the facts from this case, as the [audit committee] Defendants here are charged with responsibility for false statements made by the Company itself." *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 477 n.16 (S.D.N.Y. 2013). Because the instant case dealt with corporate insiders versus a third party entity, Defendants' assertion that the summary jury instruction included a misstatement of the law based on *Janus* is rejected.

Moreover, even assuming *arguendo* that the instruction included a misstatement, Defendants cannot show prejudice. In assessing whether a purported erroneous jury instruction requires a new trial, the Court must consider the instructions as a whole. Here, the specific instruction as to the first element of 10b-5 claim excluded the *approved, or furnished information to be included in* language that was used in the summary instruction provided by the Court. (Tr. 4714:22-4715:1 ("To meet the first element of their 10b-5 claim against any defendant, plaintiffs must prove the during the relevant time period, the defendant *made* a false or misleading statement of fact . . . .") (emphasis added).) In addition, the evidence supported a finding by the jury that Household and the individual defendants were properly found responsible for the statements for which they were held liable because they had "ultimate authority" over the statements. *Janus*, 131 S. Ct. at 2302.

For all of these reasons, the Court denies Defendants' motion for a new trial based on *Janus*. With respect to the other arguments made by Defendants in their post-trial motions, the Court has carefully reviewed all of the filings and can discern no basis for relief. Therefore, the motions [1866] are denied.

Plaintiffs' Motion for Entry of Judgment and Prejudgment Interest

*Rule 54(b) Certification*

Plaintiffs seek entry of judgment as those claimants identified in List 1 of the Special Master's July 11, 2013 Report and Recommendation, whose claims are valued at $1,476,490,844.00. Defendants do not oppose entry of judgment as to these claimants in the event their post-trial motions are denied and the Court concludes that entry of judgment under Rule 54(b) is appropriate.

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." To determine if Rule 54(b) certification is appropriate, the Court must make two determinations: first, it must determine if judgment is final; then, the Court must decide if there is any just reason to delay the appeal. *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980).

As to the first determination, it is clear that the judgment against the List 1 claimants is final. The parties agree that the jury's verdict established liability as to these claimants and that no issues remain with respect to the amounts of their claims. Because there has been a decision upon a cognizable claim for relief as to the List 1 claimants and it is final in that no issues of liability or amount remain, the Court finds that it is dealing with a final judgment. *Id.* at 7. The Court also finds that there is no just reason for delay because the equities and judicial administrative interests favor immediate entry of judgment as to the List 1 claims. The Court has no concerns about wasting judicial resources at the appellate level as the legal issues associated with List 1 claimants are dispositive of the entire class. (Defs.' Resp., Dkt. # 1875, at 7.) Nor does the Court ascertain any basis on which the List 1 claimants' claims will be mooted by future events associated with the other class members. Moreover, given the length of time this case has been pending, allowing the judgment for the List 1 claimants to proceed to appeal and final resolution is advantageous to all involved.

For these reasons, and as permitted by Rule 54(b), this Court expressly determines that there is no just reason for delay and directs that a final judgment be entered in favor of the List 1 claimants in the amounts specified in the Special Master's Report and Recommendation of July 11, 2013 (Dkt. # 1860-1).

*Prejudgment Interest*

Plaintiffs also seeks prejudgment interest on their liability award of $1,474,490.844.00. "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). "[P]rejudgment interest should be presumptively available to victims of federal law violations." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). While the decision to award prejudgment interest is in the court's discretion, the Seventh Circuit has noted, in assessing whether single or compound interest is to be awarded, that "compound prejudgment interest is the norm in federal litigation." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co.*, 325 F.3d 924, 937-38 (7th Cir. 2003) (internal quotation marks and citation omitted).

Defendants do not argue that prejudgment interest should not be awarded; instead, they assert that the Court should use the interest rate set by Congress in the postjudgment interest statute, which is a "rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. The Seventh Circuit, however, has stated that this amount is "too low, because there is no default risk with Treasury bills." *Gorenstein*, 874 F.2d at 437.

The Seventh Circuit went on to state that while "[w]e have chosen the prime rate for convenience[,] a more precise estimate would be the interest rate paid by the defendant for

unsecured loans." *Id*. According to Defendants, if the Court chooses not to use the statutory postjudgment interest rate just discussed, it should use the interest rate paid by them for unsecured loans. Defendants state that because Household "was a financially stable company with excellent credit ratings," it was "able to borrow on a short-term unsecured basis at rates well below the prime rate." (Defs.' Resp., Dkt. # 1875, at 15.) Specifically, Defendants state that the average interest rate that Household paid during the period 2002 through 2012 on its commercial paper[3] was 2.13636%. Compounding interest annually at this rate would result in a multiplier of 1.25657567 and an award of prejudgment interest of approximately $378,831,771.00.

Plaintiffs, on the other hand, ask the Court to use the prime rate for the period in question. According to the affidavit attached to Plaintiffs' prejudgment interest request, this rate ranged anywhere from a low of 3.25% (the prime rate from January 2009 to July 2013) to a high of 8.25% (the prime rate from July 2006 to August 2007). (Pls.' Mot. Entry J., 7/25/13 Steinholt Decl., Dkt. # 1871, Ex. A.) Using the prime rate and compounding annually from October 2002 to July 2013 leads to a prejudgment interest amount of $967,849,095.00. Using the prime rate and compounding monthly over the same period leads a prejudgment interest amount of $998,000,783.00. Plaintiffs challenge the use of the commercial paper rate for several reasons:

- It would not fully compensate them because the litigation has gone on for over 11 years, exposing them to greater risks and for far longer than Household's commercial paper lenders;
- Household (now known as HSBC Finance) has a lower cost of borrowing because its parent (HSBC) supports it and implicitly guarantees its debt;
- Using Household's commercial paper rate does not incorporate the borrowing costs of the three individual defendants;
- The "average borrowing rate for the overwhelming majority of class members on List 1 undoubtedly exceeded the prime rate, which warrants using the prime rate in the calculation of prejudgment interest."

(Pls.' Reply, Dkt. # 1883, at 1, 7, 8.) In addition, Plaintiffs' expert notes that Household indicates in its public filings that it ended new commercial paper issuances in the second quarter of 2012 and no longer had any new commercial paper issuances outstanding as of December 31, 2012. (Pls.' Reply, Dkt. # 1884, 9/12/13 Steinholt Decl., ¶ 9.) Thus, the 2012 commercial paper rate noted by Defendants of .3% is inaccurate and, the Court adds, borrowing rates for 2013 are not reflected in Defendants' calculation. (*Id*.)

Plaintiffs' expert notes other weaknesses with using Household's commercial paper rate

---

[3] Commercial paper is "short-term unsecured discounted paper usually sold by one company to another for immediate cash needs." http://www.merriam-webster.com/dictionary/commercial%20paper (last visited October 2, 2013).

7

but the Court need not discuss them as it concludes, based on the reasons stated above, that using Household's commercial paper rate does not represent an accurate market rate of interest that would fully compensate Plaintiffs for their lost use of money. Therefore, the Court, in its discretion, elects not to engage in refined rate setting and instead use the average prime rate during the relevant period. *Cement Div., Nat. Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998) ("Our cases have consistently indicated . . . that the district court has the discretion not to engage in the kind of 'refined rate-setting' advocated by [the defendant] and to 'use the prime rate for fixing prejudgment interest where there is no statutory rate.'") (citation omitted). *See also First Nat. Bank of Chi. v. Standard Bank & Trust,* 172 F.3d 472, 480 (7th Cir. 1999) ("We hold today that to . . . award something other than the prime rate is an abuse of discretion, unless the district court engages in . . . a refined calculation").

Moreover, Plaintiffs ask that the amount be compounded monthly versus annually. While some courts have awarded monthly compound interest, the Court concludes that annual compounding will sufficiently compensate Plaintiffs for the lost use of their money and not result in a windfall. *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 164 (S.D.N.Y. 2012) (in securities class action, awarding prejudgment interest compounded annually). *See also In re Oil Spill by Amoco Cadiz*, 954 F.2d at 1337 (awarding prejudgment interest compounded annually).

Finally, the Court finds that the prejudgment interest should begin to accrue as of the last date of the class period and the date on which inflation of the stock price returned to zero, which was October 11, 2002. *In re Vivendi Universal,* 284 F.R.D. at 163-64 (in securities class action, noting "plaintiffs request that interest be calculated from August 14, 2002, the last day of the class period because the calculation of interest based on the last day of the class period has been held to be fair and appropriate" and setting prejudgment interest to begin as of that date).

**Conclusion**

For the reasons stated above, Defendants' post-trial motions [1866] are denied and Plaintiffs' motion for entry of judgment pursuant to Rule 54(b) and prejudgment interest [1868] is granted. Plaintiffs are to be awarded prejudgment interest at the average prime rate compounded annually from October 11, 2002 to the date of judgment. The Court expressly determines that there is no just reason for delay and directs that a final judgment be entered in favor of the List 1 claimants in the amounts specified in the Special Master's Report and Recommendation of July 11, 2013 (Dkt. # 1860-1) plus prejudgment interest as specified herein. Plaintiffs to submit a proposed judgment order no more than 5 days from the date of entry of this order. Parties are to appear for a status on October 23, 2013 at 9:30 a.m. to discuss the status of the claims on Lists 2, 3, and 4.

**Date**: October 4, 2013

**United States District Judge**
**Ronald A. Guzmán**