**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAWRENCE E. JAFFE PENSION PLAN, on behalf of itself and all others similarly situated,** | ) | **02 C 5893** |
| **Plaintiff,** | ) | **Judge Jorge L. Alonso** |
| **v.** | ) | |
| **HOUSEHOLD INTERNATIONAL, INC., et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

On May 21, 2015, the Seventh Circuit reversed the judgment entered in favor of plaintiffs, and issued a mandate that states: "The judgment of the District Court is **REVERSED**, with costs, and the case is **REMANDED**, in accordance with the decision of this court entered on this date." (*See* Mandate.) Defendants ask the Court to award them a total of $13,281,282.00 in appeal costs–the $455 appeal filing fee and $13,280,827 in supersedeas bond premiums–pursuant to Federal Rule of Appellate Procedure ("Rule") 39. *See* Fed. R. App. P. 39 (a), (e) (stating that "if a judgment is reversed, costs are taxed against the appellee" and that taxable costs include "premiums paid for a supersedeas bond" and "the fee for filing the notice of appeal").

A cost must be "reasonable" to be recoverable under Rule 39. *See Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005) (per curiam) (stating that Rule 39 is "[t]he counterpart to Rule 54(d) of the [Federal Rules of Civil Procedure]"); *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (per curiam) (only reasonable costs can be recovered under Federal Rule of Civil Procedure 54); *see also Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 450 (7th Cir. 2007) (assessing the reasonableness of costs sought under Rule 39(e)). Plaintiffs contend that

the supersedeas bond premiums are not reasonable costs because a less-costly alternative, an escrow account with a guaranty by Household's parent corporation, was available to defendant. However, plaintiffs do not cite and the Court has not found any case stating that an appellant must forego recovery of bond costs if it could have obtained a less expensive form of security. *See BASF AG v. Great Am. Assur. Co.*, 595 F. Supp. 2d 899, 902 (N.D. Ill. 2009) (noting the lack of precedent for the notion that "a court could decline to award [appellate bond] costs based on the availability of less costly alternatives"). Thus, the Court rejects plaintiff's assertion that the bond costs are unreasonable. Even if the costs are reasonable, plaintiffs urge the Court to exercise its discretion to deny their recovery. *See Republic Tobacco*, 481 F.3d at 448 ("[A] district court has discretion not to award a party costs under Federal Rule of Appellate Procedure 39(e), despite an order by the appellate court awarding costs to that same party.") (citing *Guse v. J.C. Penney Co.*, 570 F.2d 679, 681 (7th Cir. 1978)). However, as the Seventh Circuit has said in the analogous context of Federal Rule of Civil Procedure 54 costs, "[i]n the spectrum of decisions embraced by the . . . 'abuse of discretion' standard . . . , the decision to deny costs . . . is near the end that merges into the standard of simple error used in reviewing decisions of questions of law." *Coyne-Delany Co. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 392 (7th Cir. 1983). "In deciding whether to withhold costs," the *Coyne-Delany* court said, "the district court [is] to be guided by the implicit presumption in [the] Rule[] . . . in favor of awarding them" and "objective factors–such as the resources of the parties . . . and the outcome of the underlying suit," which are "accessible to the judgment of a reviewing court." *Id.*

Plaintiffs do not argue that they lack the resources to pay a cost award, but they contend that such an award is inappropriate because defendant did not achieve total victory on appeal. The Court

disagrees. Though the Seventh Circuit rejected many of defendant's appellate arguments, it ultimately agreed that the judgment had to be entirely reversed. That reversal was a victory for defendant, which is not diminished by the Seventh Circuit's failure to adopt defendant's reasoning wholesale.

Plaintiffs also argue that "the complex[ity] [of] issues of law and fact raised in this close and difficult case" and the fact that plaintiffs sued in good faith militate against an award of costs. (Pls.' Opp'n Def.'s Mot. Costs at 9.) There is no doubt, as the Seventh Circuit recognized, that this was a "complex and difficult case," *Glickenhaus v. Household Int'l, Inc.*, 787 F.3d 408, 423 n.8 (2015), or that plaintiffs litigated in good faith. There is no case law from this circuit, however, that suggests those factors are relevant to determining the propriety of an award of costs. In fact, the *Coyne-Delany* court expressly stated that "[t]he losing party's good faith and proper conduct of the litigation" do not justify denying costs. *Coyne-Delany*, 717 F.2d at 390 (quotation omitted). Thus, complexity and good faith, though not disputed, are not appropriate bases for denying costs.

Alternatively, plaintiffs argue that a cost award would chill future securities litigation and inequitably burden lead plaintiffs, who, if they ultimately succeed, will recover only a fraction of the total judgment. The Seventh Circuit has not, as far as this Court is aware, held that the potential chilling effect is a reason to deny a cost award, and it has rejected the equity argument plaintiffs raise:

> Rule 54 says that the prevailing party recovers costs, and nothing in Rule 23 suggests that cost-shifting is inapplicable to class actions. . . . Eight persons caused this litigation to be brought, caused the costs to be incurred, and should make the prevailing party whole. Now it's true, as the plaintiffs stress–and as we recognized in *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991)–that class actions are designed to aggregate claims of many persons with small stakes, and that a representative who has himself only (say) $1,000 to gain from success will be unwilling to carry the load for the rest of the class. . . . The absent class members

> are free riders on the representative plaintiffs' legwork, and making the representatives' position financially risky would discourage class actions across the board.
>
> It does not follow from this, however, that the prevailing defendant must bear the costs. Entrepreneurial attorneys already supply risk-bearing services in class actions. They invest legal time on contingent fee, taking the risk of failure in exchange for a premium award if the class prevails. A suit such as this, designed to generate a substantial financial return, induces lawyers to compete for the opportunity to represent the class. What we held in *Rand* is that, without violating ethical standards, attorneys may agree to bear the risk of a costs award, as well as the risk that their time will go uncompensated. By moving the risk of loss from the representative plaintiffs to the lawyers (who spread that risk across many cases and thus furnish a form of insurance) counsel can eliminate the financial disincentive that costs awards otherwise would create. . . .
>
> Plaintiffs have not cited, and we have not found, any case holding that responsibility for costs must be parceled out so that no member of a class pays more than a *pro rata* share. . . .

*White v. Sundstrand Corp.*, 256 F.3d 580, 585-86 (7th Cir. 2001). Accordingly, neither is a reason to deny defendant its appellate costs.

In addition to the inhospitable legal landscape, the facts surrounding the provision of appeal security cut against plaintiffs' position. Plaintiffs carefully considered and rejected the bond alternative offered by defendant, an escrow account without a third-party guaranty, though they knew they could be held liable for the bond premiums if they lost on appeal. (*See* Pls.' Opp'n Def.'s Mot. Costs, Ex. 1, 10/16/13 Letter from Burkholz to Stoll (stating that the legal uncertainty surrounding the status of a non-guaranteed escrow account should defendant file for bankruptcy made plaintiffs unable to agree to that form of security); Def.'s Reply Supp. Mot. Costs, Ex. A, 10/21/13 Letter from Stoll to Burkholz ("We will seek the recovery of the premiums paid for the supersedeas bond in accordance with . . . Rule 39(e).")). Having opted for a bond, with full awareness of the potential consequences, plaintiffs must now live with that decision.

In short, the Court grants defendant's motion for costs [2047] and orders plaintiffs to pay defendant a total of $13,281,282.00 in appellate costs.

**SO ORDERED.** **ENTERED: November 5, 2015**

**HON. JORGE L. ALONSO**
**United States District Judge**