**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, | ) | |
| on Behalf of Itself and All Others Similarly | ) | |
| Situated, | ) | Case No. 02 C 5893 |
| Plaintiff, | ) | |
| | ) | Judge Jorge L. Alonso |
| | ) | |
| v. | ) | |
| | ) | |
| HOUSEHOLD INTERNATIONAL, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
TO STRIKE THE REBUTTAL REPORTS OF DEFENDANTS' EXPERTS**

Defendants respectfully submit this response in opposition to Plaintiffs' motion to strike

the December 21, 2015 rebuttal reports of Defendants' loss causation experts, Professors Allen

Ferrell, Christopher James, and Bradford Cornell. (Dkt. No. 2086.) As set forth below, the filing

of the December 21 reports complied with the Seventh Circuit's directive regarding the

proceedings on remand and the corresponding pretrial framework set forth in this Court's

September 8 Order. (Dkt. No. 2042.) The filing of the December 21 reports, furthermore, does

not prejudice Plaintiffs in any conceivable way. Expert discovery is proceeding to its orderly

completion consistent with the retrial of all causation and damages issues in June 2016. The

Court, therefore, should deny Plaintiffs' motion.

**BACKGROUND**

The Seventh Circuit vacated the prior judgment and ordered a new trial on loss causation

because it found that Plaintiffs' expert's "leakage" model did not "adequately account for the

possibility that firm-specific, nonfraud related information may have affected the decline in

Household's stock price during the relevant time period." *Glickenhaus v. Household Int'l, Inc.*, 787 F.3d 408, 423 (7th Cir. 2015). The Seventh Circuit specified the following procedure to be employed on remand to determine the *threshold issue* of whether Plaintiffs could remedy the defects in the leakage model and render it *admissible*:

> If the plaintiffs' expert testifies that no firm-specific, nonfraud related information contributed to the decline in stock price during the relevant time period and explains in nonconclusory terms the basis for this opinion, then it's reasonable to expect the defendants to shoulder the burden of identifying some significant, firm-specific, nonfraud related information that could have affected the stock price. If they can't, then the leakage model can go to the jury; if they can, then the burden shifts back to the plaintiffs to account for that specific information or provide a loss-causation model that doesn't suffer from the same problem, like the specific-disclosure model.

*Id.* at 422.

On remand, this Court expressly rejected Plaintiffs' assertion that the retrial should be limited to the narrow issue of whether "their 'loss causation and damages expert adequately accounted for company-specific non-fraud factors.'" (September 8 Order (Dkt. No. 2042) at 1.) The Court noted that the Seventh Circuit had "clearly said" that the defect in Plaintiffs' leakage model "'warranted [a new trial] on the loss-causation issue.'" (*Id.* (quoting *Glickenhaus*, 787 F.3d at 423).) The Court, therefore, stated: "Thus, in the new trial, plaintiffs must prove that defendants' misrepresentations were 'a substantial cause of the economic loss that plaintiffs suffered.'" (*Id.* (quoting Jury Instructions at 32).)

With respect to scheduling, the Court noted that "the parties largely agree . . . with the goal of retrying this case in May or June 2016," and "also agree that the first step in the pretrial process is the disclosure of Dr. Fischel's supplemental report." (*Id.* at 5.) The Court further noted that the parties "disagree, however, about what should happen next." (*Id.*) As summarized by the Court: "Plaintiffs contend that all expert reports should be served and expert depositions should

be taken, after which all pretrial motions, including any *Daubert* challenge to Dr. Fischel's

supplemental report or testimony, should be filed," while "Defendants contend that their *Daubert*

motion, if any, as to Dr. Fischel should be filed and decided before they serve their expert

report." (*Id.*) In resolving this dispute, the Court concluded: "The Seventh Circuit agrees with

defendants." (*Id.*) The Court then wrote:

> *Consistent with the Seventh Circuit's instructions*, the Court sets the following schedule:
>
> **September 23, 2015** - Plaintiffs serve Dr. Fischel's [Plaintiffs' expert's] supplemental report
>
> **October 23, 2015** - Defendants (1) file a *Daubert* motion, if appropriate, explaining the perceived flaws in Dr. Fischel's analysis with respect to "firm-specific, nonfraud related information" and any other flaws that they perceive in his analysis that were not raised before and rejected by Judge Guzmán; and (2) serve their expert report responding to Dr. Fischel's supplemental report and, if appropriate, identifying "some significant, firm-specific, nonfraud related information that could have affected the stock price."
>
> **November 23, 2015** - Plaintiffs (1) file their response to the *Daubert* motion with respect to Dr. Fischel, if any; and (2) serve their expert report in rebuttal to defendants' expert report, which, if appropriate, "account[s] for the specific information [identified by defendants] or provid[es] a[n] [alternate] loss-causation model"
>
> **December 21, 2015** - Defendants (1) file a reply in support of their *Daubert* motion with respect to Dr. Fischel, if any; and (2) if plaintiffs provided an alternate loss causation model in their rebuttal report, serve their expert's rebuttal to that report.
>
> **January 20, 2016** - Expert depositions are completed
>
> **February 10, 2016** - Remaining pretrial motions are filed
>
> **March 2, 2016** - Responses to remaining pretrial motions are filed
>
> **March 16, 2016** - Replies in support of remaining pretrial motions are filed
>
> **June 6, 2016** - Trial begins

(*Id.* at 6 (emphasis added).)

## ARGUMENT

**I.      The Filing of the December 21 Reports Complied with this Court's September 8 Order.**

As both the Seventh Circuit and this Court recognized, whether Plaintiffs are able to cure the deficiencies in Dr. Fischel's leakage model that caused the Seventh Circuit to vacate the judgment and reverse for a new trial presents a *threshold issue*. Under the Seventh Circuit procedure for resolution of that threshold issue and the schedule set forth in this Court's September 8 Order, Defendants could not have known what adjustments Dr. Fischel would make in order to address the deficiencies that required reversal, or what final loss causation model he would seek to advance to prove loss causation in this retrial, until receiving his November 23, 2015 final report. As it turns out, Dr. Fischel made no corrections  and continues to advance both the legally insufficient leakage model *and* an alternate specific disclosure loss causation model.

Plaintiffs now assert Dr. Fischel's decision to adhere to the leakage and specific disclosure models that he presented in the first trial should preclude Defendants from submitting expert reports setting forth their affirmative opinions regarding loss causation and damages, as well as setting forth various criticisms of Dr. Fischel's analysis that go beyond those directed to the threshold admissibility determination established by the Seventh Circuit. That is an incorrect construction of the scope of the proceedings on remand. As set forth below, Defendants' submission of the December 21, 2015 reports was consistent with the pretrial framework in the Court's September 8 Order and was intended to ensure that the trial would commence on the June 6, 2016 date specified by the Court.

Consistent with the threshold *Daubert* procedure identified by the Seventh Circuit, the September 8 Order set forth a schedule for resolution of the issue of the admissibility of Dr. Fischel's leakage model, set a date for the completion of expert depositions, and set a date for

dispositive pretrial motions. However, as Plaintiffs acknowledge, the Court did not set dates for other pretrial matters, including a date for a Pretrial Order submission pursuant to the Court's Local Rules. (Pls.' Mot. at 5.)

Notably, neither the Seventh Circuit's decision regarding the threshold *Daubert* procedure nor this Court's September 8 Order *limited* the trial or the pretrial proceedings to the threshold admissibility issue nor restricted Defendants from presenting expert testimony addressing their own loss causation analyses or enumerating flaws in Dr. Fischel's analysis that go beyond its legal sufficiency. To the contrary, this Court's Order indicated agreement with Defendants that the *Daubert* proceedings contemplated by the Seventh Circuit "should be filed and decided *before they serve their expert report*." (September 8 Order (Dkt. No. 2042) at 5 (emphasis added).)

The September 8 Order, however, did specify that expert depositions were to be completed by January 20, 2016. (*Id.* at 6.) Accordingly, in a good faith effort to respect the expert deposition deadline and ensure that pretrial proceedings advanced consistent with the June trial date, Defendants served their complete expert reports, addressing both the deficiencies of the flawed leakage model presented by Dr. Fischel, as well as Defendants' affirmative views regarding loss causation measurement, on December 21, 2015.[1]

As Plaintiffs would have it, Defendants were required to file their expert reports addressing all causation and damages issues on October 23, 2015, *before even receiving Dr. Fischel's final report*. That is incorrect and would not be fair to Defendants. Dr. Fischel had until

---

[1] Plaintiffs recently informed Defendants that they were willing to extend the deadline for completion of the expert depositions until February 26, 2016. On January 14, 2016, the parties filed an agreed motion for entry of a stipulation and pretrial order proposing dates for the remaining pretrial proceedings, including an extension of the date to complete expert depositions to February 26, 2016. (Dkt. No. 2095.)

November 23, 2015 to decide whether he would continue to defend his leakage model, modify that model, or propose an entirely new model. Prior to November 23, 2015, Defendants had no way of knowing what Dr. Fischel would do (or what model Defendants' experts would ultimately need to address). The mere fact that Dr. Fischel failed to make *any* correction to his deficient leakage model, yet *also* continued to attempt to advance *both* his legally insufficient leakage model *and* an alternative specific disclosure model, cannot provide a basis to preclude Defendants from submitting their own expert reports regarding the loss causation and damages issues that must be retried. (Dkt. No. 2067-1.)[2]

Given the Court's agreement that, under the Seventh Circuit's decision, Defendants' *Daubert* motion "should be filed and decided before [Defendants] serve their expert report" (Dkt. No. 2042 at 5), Defendants understood that expert reports addressing issues beyond those identified in Defendants' *Daubert* motion could not have been due on October 23, 2015, as Plaintiffs contend. (Pls.' Mot. at 3-5.)

Furthermore, as Plaintiffs themselves acknowledge, the December 21 reports are not merely criticisms of Dr. Fischel's failure to adequately account for "firm-specific, nonfraud information"; they also set forth Defendants' own affirmative position on proper loss causation modeling; adjustments that would be required to Dr. Fischel's specific disclosure model; and additional issues impacting Dr. Fischel's specific disclosure model, including the flawed "estimation" period and the failure of his regression analysis to account for the "structural break"

---

[2]     The Seventh Circuit decision expressly contemplated that Plaintiffs would *either* attempt to provide a corrected leakage model that properly "account[ed] for that specific information *or* provide a loss-causation model that doesn't suffer the same problem, *like the specific disclosure model*." 787 F.3d at 422 (emphasis added). Plaintiffs instead have sought *both* to continue to advance the deficient leakage model *and* to present an alternative specific disclosure model.  Given this strategic attempt to continue to advance *both* models in the alternative in their November 23, 2015 report, Defendants had the right to file responses on December 21, 2015 in any event.

in the markets that occurred in the wake of the September 11, 2001 terrorist attacks. (Pls.' Mot. at 3-5.) [3]

Defendants appropriately sought to reconcile the timing of their expert submissions with the January 20, 2016 deadline for completing expert depositions set forth in the September 8 Order by filing complete rebuttal reports on December 21, 2015, which included Defendants' experts' own affirmative opinions, so that all expert report submissions would be completed sufficiently in advance of the expert deposition deadline. Defendants' good faith efforts to proceed in accordance with the timeline set forth in the September 8 Order for the completion of expert depositions do not "violate" this Court's September 8 Order.

Through their motion to strike the December 21 reports, Plaintiffs are attempting to use their unilateral decision to adhere to their deficient leakage model, without correction, as a sword to improperly restrict the scope of the retrial and avoid a full and fair challenge to their expert's causation and damages models (thereby inviting error yet again). The prior proceedings in this matter were infected by a legally deficient loss causation model introduced by Plaintiffs. The Seventh Circuit could have directed that judgment be entered for Defendants due to Plaintiffs' failure to carry their burden on this essential element, but it allowed Plaintiffs a second chance to establish loss causation and "to also prove 'the amount of per share damages, if any to which plaintiffs are entitled.'" (Dkt. No. 2042 at 2). Having been given this opportunity, Plaintiffs nonetheless consistently attempt to narrowly circumscribe the contours of the proceedings on remand with respect to loss causation and damages—and to limit Defendants' right to put on a

---

[3]   If the Court grants Defendants' *Daubert* motion to exclude the leakage model, Professor Cornell would not be an expert for trial purposes. Professor Cornell's expert opinions address solely the flaws in Dr. Fischel's leakage model.

proper defense supported by expert testimony. That is inappropriate and unjust, and this Court should deny Plaintiffs' motion.

**II.      Plaintiffs Have Not Been Prejudiced in Any Way by the Filing of the December 21 Reports.**

Plaintiffs do not (and cannot) contend that they were in any way prejudiced by the filing of the December 21 expert reports. As noted above, the parties since have agreed to extend the deadline for expert depositions until February 26, 2016 (subject to this Court's granting an agreed motion to extend the expert deposition completion date). Thus, if the Court grants that motion, Plaintiffs will have nearly two months to evaluate the December 21 reports before defending Dr. Fischel's deposition or deposing Defendants' experts. And, clearly, Plaintiffs will have a full and fair opportunity to take discovery of the experts months before the June 6, 2016 commencement of the trial.

**CONCLUSION**

For the reasons set forth herein, the Court should deny Plaintiffs' motion to strike the rebuttal reports of Defendants' loss causation experts.

Dated: January 14, 2016

Respectfully submitted,

*/s/R. Ryan Stoll*
Patrick J. Fitzgerald
R. Ryan Stoll
Donna L. McDevitt
Andrew J. Fuchs
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM
155 North Wacker Drive
Chicago, IL   60606
(312) 407-0700

8

Dane H. Butswinkas
Steven M. Farina
Leslie C. Mahaffey
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.   20005
(202) 434-5000

Attorneys for Defendant
Household International, Inc.

Gil M. Soffer, Esq.
Dawn M. Canty, Esq.
KATTEN MUCHEN ROSENMAN LLP
525 West Monroe Street
Chicago, IL   60661

Attorneys for Defendant
William F. Aldinger

Tim S. Leonard, Esq.
JACKSON WALKER LLP
1401 McKinney Street
Suite 1900
Houston, TX   77010
Attorneys for Defendant
David A. Schoenholz

David S. Rosenbloom, Esq.
McDERMOTT WILL & EMERY, LLP
227 West Monroe Street
Chicago, IL   60606
(312) 984-7759
Attorneys for Defendant
Gary Gilmer

9

## CERTIFICATE OF SERVICE

R. Ryan Stoll, an attorney, hereby certifies that on January 14, 2016, he caused true and correct copies of the foregoing Defendants' Response to Plaintiff's Motion to Strike the Rebuttal Reports of Defendants' Experts to be served via the Court's ECF filing system on the following counsel of record in this action:

Michael J. Dowd, Esq.
Daniel S. Drosman, Esq.
Spencer A. Burkholz, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA   92101

Marvin A. Miller, Esq.
Lori A. Fanning, Esq.
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL   60603

Gil M. Soffer, Esq.
Dawn M. Canty, Esq.
KATTEN MUCHEN ROSENMAN LLP
525 West Monroe Street
Chicago, IL   60661

Stewart T. Kusper, Esq.
THE KUSPER LAW GROUP, LTD.
20 North Clark Street, Suite 3000
Chicago, IL   60602

Tim S. Leonard, Esq.
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX   77010

David S. Rosenbloom, Esq.
McDERMOTT WILL & EMERY, LLP
227 West Monroe Street
Chicago, IL   60606

/s/ R. Ryan Stoll
R. Ryan Stoll