# EXHIBIT 2

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 2 of 8 PageID #:84121

Frank Ferrell, III

Lawrence E. Jaffe Pension Plan vs. Household International, Inc.

**Page 1**

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF ILLINOIS
 3                    No. 1:02-CV-05893
 4   - - - - - - - - - - - - - - - - - - - -
 5   LAWRENCE E. JAFFE PENSION PLAN, on behalf
 6   of itself and all others similarly situated,
 7                   Plaintiffs,
 8    vs.
 9   HOUSEHOLD INTERNATIONAL, INC., et al.,
10                   Defendants.
11   - - - - - - - - - - - - - - - - - - - -
12              VIDEOTAPED DEPOSITION OF
13              FRANK ALLEN FERRELL, III
14        Saturday, February 27, 2016 9:02 a.m.
15                  Skadden Arps LLP
16       500 Boylston Street, Boston, MA 02116
17
18
19
20
21   Reported by:
22   Janet Sambataro, RMR, CRR, CLR
23   Job No. 10022056
24
25
```

**Page 2**

```
 1
 2
 3
 4
 5                February 27, 2016
 6                    9:02 a.m.
 7
 8
 9
10       Videotaped deposition of FRANK ALLEN
11   FERRELL, III, held at the offices of Skadden Arps
12   LLP, 500 Boylston Street, Boston, Massachusetts,
13   pursuant to Agreement before Janet Sambataro, a
14   Registered Merit Reporter, Certified Realtime
15   Reporter, Certified LiveNote Reporter, and a
16   Notary Public within and for the Commonwealth of
17   Massachusetts.
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1   APPEARANCES:
 2
 3
 4   ROBBINS, GELLER, RUDMAN & DOWD LLP
 5   (By Luke O. Brooks, Esquire)
 6   Post Montgomery Center
 7   One Montgomery Street
 8   San Francisco, California 94104
 9   415.288.4534
10   lukeb@rgrdlaw.com
11   Counsel for the Plaintiffs
12
13   - and -
14
15   ROBBINS, GELLER, RUDMAN & DOWD LLP
16   (By Michael J. Dowd, Esquire)
17   655 W. Broadway
18   San Diego, California 92101
19   619.231.1058
20   miked@rgrdlaw.com
21   Counsel for the Plaintiffs
22
23
24    - Continued -
25
```

**Page 4**

```
 1   APPEARANCES:   (Continued)
 2
 3   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
 4   (By Patrick Fitzgerald, Esquire, and
 5   Andrew J. Fuchs, Esquire)
 6   155 N. Wacker Drive
 7   Chicago, Illinois 60606
 8   312.407.0700
 9   patrick.fitzgerald@skadden.com
10   andrew.fuchs@skadden.com
11   Counsel for the Defendant, Household
12   International, Inc.
13
14   - and -
15
16   WILLIAMS & CONNOLLY
17   (By Steven M. Farina, Esquire, and
18   Leslie Cooper Mahaffey, Esquire)
19   725 Twelfth Street, N.W.
20   Washington, D.C. 20005
21   202.434.5526
22   sfarina@wc.com
23   lmahaffey@wc.com
24   Counsel for the Defendant, Household International,
25   Inc.
```

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 3 of 8 PageID #:84122

Frank Ferrell, III

Lawrence E. Jaffe Pension Plan
vs. Household International, Inc.

**Page 5**

```
 1  APPEARANCES:  (Continued)
 2
 3  MCDERMOTT, WILL & EMERY LLP
 4  (By David S. Rosenbloom, Esquire) (Via Telephone)
 5  227 West Monroe Street
 6  Chicago, Illinois 60606-5096
 7  312.372.2000
 8  drosenbloom@mwe.com
 9  Counsel for the Defendant, Gary Gilmer
10
11
12  KATTEN MUCHIN ROSENMAN LLP
13  (By Dawn M. Canty, Esquire)  (Via Telephone)
14  525 West Monroe Street
15  Chicago, IL 60661-3693.
16  312.902.5200
17  dawn.canty@kattenlaw.com
18  Counsel for the Defendant, William F. Aldinger
19
20
21  ALSO PRESENT:
22  Mark LoSacco, HSBC (Via Videoconference)
23  Shawn Budd, Videographer
24
25
```

**Page 6**

```
 1                    I N D E X
 2  WITNESS                        DIRECT    CROSS
 3  FRANK ALLEN FERRELL, III
 4  By Mr. Brooks                    10
 5  By Mr. Fitzgerald                          304
 6
 7                  E X H I B I T S
 8  Number      Description                   Page
 9  Exhibit  1  Expert Report of Professor
10              Allen Ferrell                   11
11  Exhibit  2  Expert Rebuttal Report of
12              Professor Allen Ferrell
13              with exhibits                   11
14  Exhibit  3  United States Court of Appeals
15              for the Seventh Circuit Opinion,
16              No. 13-3532                     68
17  Exhibit  4  Cumulative Residual Price Change
18              on Fraud Related Event Dates
19              Identified in Company Investor
20              Relations Reports              155
21  Exhibit  5  Report of Daniel R. Fischel,
22              dated August 15, 2007          165
23  Exhibit  6  Exhibits to Professor Fischel's
24              August 15, 2007 report         173
25              - Continued -
```

**Page 7**

```
 1                  E X H I B I T S
 2  Number      Description                   Page
 3  Exhibit  7  Cornell and Morgan article in
 4              the "UCLA Law Review"
 5              June 1990                      208
 6  Exhibit  8  Article entitled "The Loss
 7              Causation Requirement for
 8              Rule 10b-5 Causes of Action:
 9              The Implications of Dura
10              Pharmaceuticals, Inc. v.
11              Broudo"                        215
12  Exhibit  9  Excerpt from Household
13              International, Inc. Form 10-K
14              for year ending
15              December 31, 2001              221
16  Exhibit 10  Sur-Rebuttal Report of
17              Daniel R. Fischel              232
18  Exhibit 11  CIBC World Markets Industry
19              Update entitled "Specialty
20              Finance - Third-Quarter 2002
21              Preview"                       240
22  Exhibit 12  A.G. Edwards report entitled
23              "Specialty Finance Quarterly
24              Fourth Quarter 2001"           249
25              - Continued -
```

**Page 8**

```
 1                  E X H I B I T S
 2  Number      Description                   Page
 3  Exhibit 13  Exhibit 2a, Exhibit 8a and 8B  255
 4  Exhibit 14  Second Rebuttal Report of
 5              Daniel R. Fischel              260
 6
 7
 8           PREVIOUSLY MARKED EXHIBITS
 9  Number      Description                   Page
10  Exhibit 820 Document Bates-stamped
11              HHS 03237027 through -7042    251
12  Exhibit 198 Document Bates-stamped
13              HHS 02075630 through -5650    277
14  Exhibit 199 Document Bates-stamped
15              HHS 02075738 through -5763    281
16
```

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 4 of 8 PageID #:84123

Frank Ferrell, III

Lawrence E. Jaffe Pension Plan
vs. Household International, Inc.

Page 33

1  the appellate order?
2      MR. FITZGERALD: Objection to form. Go
3  ahead.
4      A. I'm sorry. So in the sense that I was
5  asked to assess the second supplemental report,
6  and my memory is Professor Fischel references the
7  appellate order in how he defines his scope in
8  the second supplemental report.
9  BY MR. BROOKS:
10     Q. Did you read the appellate order?
11     A. I did.
12     Q. Did you read it carefully?
13     A. Yes.
14     Q. Do you believe that you adhered to the
15 Seventh Circuit's opinion in performing your
16 analysis?
17     A. That calls for a legal opinion. I'm
18 not going to offer a legal opinion. All I can
19 say is this was the scope of my assignment, as
20 defined by counsel for Household.
21     Q. What did you do to prepare for the
22 deposition today?
23     A. I reviewed my reports. I reviewed
24 Professor Fischel's reports. I listened to
25 Professor Fischel's deposition. I reviewed the

Page 34

1  surreply report. I looked at underlying
2  documents, and I met with counsel.
3      Q. When did you meet with counsel?
4      A. So I met with counsel yesterday. And I
5  met with counsel several times in person before
6  that, as well.
7      Q. To prepare for the deposition?
8      A. Correct.
9      Q. How many times?
10     A. So I met with counsel in Chicago a few
11 days ago. I remember meeting with counsel -- I'm
12 just going to blank on the location, but I did
13 also, prior to Chicago, meet with counsel in
14 person, as well. So that's three meetings. So
15 there might be a fourth. I just -- I don't have
16 a clear recollect --
17     Q. How long --
18     A. -- a clear recollection.
19     Q. How long was the meeting before the
20 Chicago meeting?
21     A. I want to say a day or a part of a day.
22     Q. How about the meeting in Chicago?
23     A. So I -- so that was two days, but just
24 to be clear, I met -- I believe it was two days.
25 I can be misremembering the exact length of time.

Page 35

1  I do remember meeting with counsel in Chicago for
2  a day and then the second day I was listening to
3  Professor Fischel.
4      Q. So you met on Tuesday and listened to
5  Professor Fischel's deposition on Wednesday?
6      A. Yes. And now you reminded me. I
7  actually didn't meet the entire day. I flew out
8  Tuesday morning. So I actually -- now that I
9  remember, I got to Chicago midday on Tuesday.
10 And then you can remind -- my memory is that --
11 then that Professor Fischel was deposed the
12 following day, the Wednesday.
13     Q. That's my memory too.
14     Was anyone at these meetings, other than
15 counsel for the defendants?
16     A. Yes.
17     Q. Who else was there?
18     A. There was -- I don't know. I'm not
19 exactly clear on how you define counsel for
20 defendants. But counsel from HSBC was there as
21 well.
22     Q. Anyone else?
23     A. No.
24     Q. How many lawyers were at these
25 meetings, approximately?

Page 36

1      A. I mean, it varied.
2      Q. What was the most?
3      A. So counsel present here were at some of
4  the meetings, and the other person that comes to
5  mind is Ryan Stoll from Skadden Arps.
6      Q. So five or six?
7      A. Well, just to be clear, all five or six
8  were not present in every meeting. So it was --
9  but those -- as well as counsel for HSBC. But
10 I'm not saying they were all present for every
11 meeting. That's not accurate.
12     Q. Do you know Dr. Mukesh Bajaj?
13     A. I do not.
14     Q. Do you understand he was Household's
15 prior expert in this case on loss causation and
16 damages?
17     A. I believe that's right.
18     Q. You read his reports and transcripts,
19 right?
20     A. I did.
21     Q. So you know he was their expert, don't
22 you?
23     A. Yes. I was just pausing, because I
24 don't remember how he characterized who he was --
25 whether he was retained by counsel or by

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 5 of 8 PageID #:84124

Frank Ferrell, III

Lawrence E. Jaffe Pension Plan
vs. Household International, Inc.

Page 37

1  Household directly; but yes, he performed those
2  types of analysis.
3     Q.  So you read all of his reports.  Is
4  that right?
5     A.  Yes.
6     Q.  And you read his trial testimony.
7  Correct?
8     A.  I did.
9     Q.  You read his deposition testimony.
10 Correct?
11    A.  I did.
12    Q.  And was there anything that stood out
13 to you about his methodology that was incorrect,
14 in your opinion?
15       MR. FITZGERALD:  Objection to scope
16 here.
17    A.  So you can look at Paragraph 14 in my
18 original report and Paragraph 7 of my second
19 report.  That was not within the scope of my
20 assignment.  So you can direct me to particular
21 portions of what he said, but it was something
22 that I did not focus on.
23 BY MR. BROOKS:
24    Q.  You read all his stuff.  Right?
25    A.  I did read it back in the summer, last

Page 38

1  year.  But again, assessing his work is outside
2  the scope of these two reports.
3     Q.  So I'm not asking you whether it was in
4  the scope of your reports.  I'm asking whether
5  there was anything you disagreed with from a
6  methodological perspective about Dr. Bajaj's
7  reports?
8        MR. FITZGERALD:  I object.  Going down
9  the line of inquiry, if he's not retained to
10 analyze Dr. Bajaj's testimony, you have an
11 expert, asking him to do it on the fly doesn't
12 seem to me to be appropriate.
13       MR. BROOKS:  Are you going to instruct
14 him not to answer?  I think I'm entitled to ask.
15       MR. FITZGERALD:  You're asking him to
16 critique somebody he wasn't asked to critique
17 before on the fly, which I don't think is
18 appropriate.
19       MR. BROOKS:  You can instruct him not
20 to answer.  I don't think it's proper.  But I
21 don't want to get in a big discussion with you.
22       MR. FITZGERALD:  Why don't we move on
23 from this.  Let me talk to co-counsel at a break
24 as to what the understanding is, so we can
25 revisit it.  I just don't -- I just don't think

Page 39

1  you have a right to take an expert who is
2  testifying about a topic, then make your expert
3  analyze something else.  But why don't we talk
4  about it at a break, so I don't run the clock on
5  you?  You move on and we'll come back.
6        MR. BROOKS:  I mean, he's testifying
7  about loss causation and damages.  That's what
8  Dr. Bajaj testified about.  Right?
9        MR. FITZGERALD:  Right.
10       MR. BROOKS:  It's the same topic.
11 BY MR. BROOKS:
12    Q.  In performing your work, did you
13 believe it was important to stay consistent with
14 Dr. Bajaj's prior opinions?
15    A.  No.  My understanding of my role is I
16 was to provide my own independent expert analysis
17 within the scope, as defined in Paragraph 7 of
18 my -- of my rebuttal report, and Paragraph 14 of
19 my original report.
20    Q.  You understand that Dr. Bajaj worked
21 with Cornerstone, just like you're working with
22 Cornerstone, don't you?
23    A.  That, I didn't know.
24    Q.  His deposition?
25    A.  You know, that could well be the case,

Page 40

1  but I don't have a recollection of that.
2     Q.  So you didn't think it was important to
3  stay consistent with Dr. Bajaj's opinions because
4  that wasn't the scope of your work.  Is that your
5  testimony?
6        MR. FITZGERALD:  Objection to form.
7  You can answer.
8     A.  My -- my role, as I understand it, is
9  to provide my -- my own best independent analysis
10 within the scope of my assignment, as defined in
11 Paragraph 14 of my original report and
12 Paragraph 7 of my rebuttal report.
13 BY MR. BROOKS:
14    Q.  So whether or not you conflicted with
15 prior evidence that Household had put on at the
16 previous trial was not your concern?
17       MR. FITZGERALD:  Objection --
18 BY MR. BROOKS:
19    Q.  Is that fair to say?
20       MR. FITZGERALD:  -- to form.
21    A.  That's not fair to say.  I reviewed the
22 evidence and provided an independent analysis of
23 the evidence within the scope.  And the scope,
24 again, is to assess -- reading from my original
25 report, to assess Professor Fischel's second

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 6 of 8 PageID #:84125

Frank Ferrell, III                                                                 Lawrence E. Jaffe Pension Plan
                                                                                   vs. Household International, Inc.

Page 161

1  date that's not confounded with the caveat that
2  there's a November 9th disclosure.
3  BY MR. BROOKS:
4      Q.  If it was not fraud-related, it would
5  not be a specific disclosure date.  Right?
6          MR. FITZGERALD:  Objection to form.
7      A.  So I'm assuming in the report that this
8  is corrective information, but -- but -- let me
9  put it this way:  In my report, this is not a
10 confounded day.  The issue that I raise with this
11 date is the November 9th.  And there's nothing
12 else I have to say about November 9th --
13 November 15th.
14 BY MR. BROOKS:
15     Q.  Why are you so reluctant to say whether
16 this is fraud-related information or not?
17         MR. FITZGERALD:  Objection to form.
18     A.  Because I wasn't asked to opine on what
19 the fraud was.  I was -- I'm assuming the -- the
20 misrepresentations in the jury verdict, without
21 opining on it.  So that was my hesitation, is not
22 to be viewed as providing an opinion on what --
23 on what the fraud actually is, if there is any,
24 rather than just noting -- merely noting what's
25 on the jury verdict, without providing an opinion

Page 162

1  on that.
2  BY MR. BROOKS:
3      Q.  Do you agree that in order to determine
4  whether something is fraud-related or not, one
5  has to understand the fraud?
6      A.  I agree with that.
7      Q.  Skipping down to December 3rd, 2001,
8  this is an entry discussing "articles published
9  by "Barron's" and "Business Week" that alleged
10 Household's strong results were in part driven by
11 aggressive chargeoff policies."  Do you agree
12 that this is a fraud-related disclosure?
13         MR. FITZGERALD:  What day are we on?
14 12/3/01?
15         MR. BROOKS:  Yeah.
16     A.  You know --
17         MR. FITZGERALD:  Thank you.
18     A.  -- I don't have the investor relations
19 report.  You know, I -- I feel uncomfortable
20 commenting on a sentence that's been cut and
21 pasted from a larger report without knowing the
22 context.  So I'm just not going to provide an
23 opinion on the investor relation report without
24 being given an opportunity to read the whole
25 thing, what the basis is for this in the report.

Page 163

1  I do talk about December 3rd in my report,
2  and I'll be happy to talk about what I do say
3  about December 3rd.
4  BY MR. BROOKS:
5      Q.  Well, yeah.  I mean, I'm asking you
6  about the disclosures, as summarized here.
7  Right?  So you understand that there were
8  disclosures on December 3rd, 2001, don't you?
9      A.  I have in my report a discussion of
10 December 3rd.  That's correct.
11     Q.  And a discussion of disclosures on
12 December 3rd?
13     A.  I believe so.
14     Q.  And were those --
15     A.  You know, hold on a second.  So there's
16 a lot of dates here.  I mean, I do have in my
17 Exhibit 3a, December 3rd.  So let me -- let me
18 restate my answer.
19     So I do have December 3rd in my Exhibit 3a.
20 And I just don't remember if I have a specific
21 discussion of that.  I have to -- let me flip
22 through my report.
23     I certainly reviewed Professor Fischel's
24 claimed disclosures on that date.  But I'm
25 flipping through my report to see, beyond my

Page 164

1  Exhibit 3a, if I have a discussion of that.  So
2  I'm looking at my initial report.
3      It looks like my first specific disclosure
4  date is December 12th.  And I'm looking at my
5  rebuttal.  And I'm looking at Page 32 of my
6  rebuttal.  Oh, so I do have December -- are we
7  talking about December 12?  So it's on page --
8      Q.  We're not talking about December 12.
9      A.  I'm sorry.  December 3rd.  So I won't
10 eat up any more time.  I'm just flipping through
11 it.  I can't readily find December 3rd, but I do
12 have, on Exhibit 3a, the statistical significance
13 on that date.  And I did review Professor
14 Fischel's discussion and citations on this date.
15     Q.  Did you review the "Barron's" and
16 "Business Week" articles?
17     A.  I believe so.
18     Q.  And --
19     A.  My memory is certainly the "Barron's"
20 is discussed in Fischel.  I reviewed a lot of
21 articles.  I -- I -- I probably reviewed it.  I
22 certainly reviewed it if it's discussed in
23 Professor Fischel, but I certainly reviewed this
24 date.
25         MR. FARINA:  The lunch is here if you

Page 161..164

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 7 of 8 PageID #:84126

Frank Ferrell, III

Lawrence E. Jaffe Pension Plan vs. Household International, Inc.

Page 165

1 guys want to break for lunch at a convenient
2 point.
3     MR. BROOKS: That's fine.
4     THE VIDEOGRAPHER: The time is 12:27.
5 Off the record.
6     (Lunch recess was taken.)
7     (Report of Daniel R. Fischel,
8  dated August 15, 2007 marked Exhibit 5.)
9     THE VIDEOGRAPHER: Okay. We are back
10 on the record. The time is 1:16.
11     MR. BROOKS: So before we get started,
12 I told Steve off the record, these aren't exact
13 quotes.
14     MR. FITZGERALD: Okay. Referring to
15 Exhibit --
16     MR. BROOKS: Exhibit 4. So I was
17 mistaken. There's -- quotes are exact, but then
18 there's some additional information. I'm just
19 going to set it aside.
20     MR. FITZGERALD: Okay. I appreciate
21 the correction. Thank you.
22 BY MR. BROOKS:
23     Q. Professor, do you understand the phrase
24 "headline risk"?
25     A. I've seen it referenced in the initial

Page 166

1 reports. So to that -- so I've seen it in that
2 context.
3     Q. In that context, was headline risk
4 associated with predatory lending a material
5 reason for Household's stock price decline during
6 the leakage period?
7     MR. FITZGERALD: Objection to form.
8     A. You'll have to point me to specific
9 documents. Because I know that -- my memory is a
10 headline risk referred -- was referenced in
11 various documents at various points. So I would
12 want to see what documents you have in mind in
13 answering that question.
14 BY MR. BROOKS:
15     Q. Defendants' previous expert, Dr. Bajaj,
16 testified that Household's stock price declined
17 during the leakage period because of headline
18 risk. Do you agree or disagree with that?
19     MR. FITZGERALD: Object to
20 characterizing his -- whether he agrees with
21 Bajaj or not. But you can ask the underlying
22 question.
23     A. I didn't focus on what Bajaj said or
24 the basis for what he said. So I would have to
25 review what he said and why he said it. I don't

Page 167

1 have an opinion on that.
2     MR. BROOKS: And are you continuing to
3 instruct him not to answer the questions about
4 Bajaj's methodologies?
5     MR. FITZGERALD: So -- yes. So no.
6 Let me clarify where you are. So you have
7 license to ask questions to a reasonable degree
8 about Bajaj as long as we understand he wasn't
9 engaged to review his methodology and the absence
10 of any criticism doesn't mean he's endorsing it.
11 And if he gives criticisms, it's not complete,
12 because he wasn't asked to do that. But if you
13 want to ask him questions about what he recalls
14 about the methodology or specific questions, you
15 may.
16 BY MR. BROOKS:
17     Q. You testified earlier that you read
18 Dr. Bajaj's reports and you read his trial and
19 deposition testimony. Right?
20     A. That's correct.
21     Q. Okay. And was there anything you
22 disagreed with, with respect to the methodology
23 that Dr. Bajaj applied in his analysis?
24     MR. FITZGERALD: I'll note the
25 continuing objection, but I'm not directing him

Page 168

1 not to answer.
2     A. I mean, I read it over the summer to
3 get an understanding of the context of the case.
4 But, you know, I was not asked to review or
5 assess what he did or didn't do. So if you have
6 a specific aspect of his methodology, you know,
7 it would be helpful for me to see it. But it was
8 just something I wasn't focused on.
9 BY MR. BROOKS:
10     Q. You indicated in your Exhibit B to your
11 report that you relied on Dr. Bajaj's reports and
12 testimony. What did you rely on that for?
13     A. To understand the context of the case.
14 So obviously there's been a lot of reports and
15 litigation well before I was retained, and so it
16 was for that purpose.
17     Q. Was there any other reason that you
18 relied on Dr. Bajaj's reports and testimony?
19     A. No.
20     Q. And as you're sitting here, you can't
21 think of something that stood out to you as
22 methodologically unsound about Dr. Bajaj's
23 analysis?
24     MR. FITZGERALD: Continuing objection.
25 Not directing him -- I'm not preventing him from

Case: 1:02-cv-05893 Document #: 2159-2 Filed: 05/06/16 Page 8 of 8 PageID #:84127

Frank Ferrell, III

Lawrence E. Jaffe Pension Plan vs. Household International, Inc.

Page 169

1 answering, but just noting the continuing
2 objection.
3    A.  You know, I read those reports last
4 summer, you know, in their entirety. I would
5 need to see the reports to express an opinion.
6 BY MR. BROOKS:
7    Q.  So it's true that nothing stands out in
8 your mind as methodologically unsound about
9 Dr. Bajaj's analysis. Right?
10       MR. FITZGERALD: Same continuing
11 objection.
12    A.  I don't have an opinion. It's just
13 something -- you know, I read the reports a while
14 ago. It was something I was not asked to assess.
15 So I would need to -- I'm not endorsing or not
16 endorsing anything that he did. I would need to
17 look at it because it was outside my scope.
18 BY MR. BROOKS:
19    Q.  So there's nothing that you're thinking
20 of right now that was methodologically unsound.
21 Correct?
22       MR. FITZGERALD: Same objection. And
23 asked and answered.
24    A.  I don't have a clear enough
25 recollection to have an opinion.

Page 170

1 BY MR. BROOKS:
2    Q.  Can you think of anything that he did,
3 as you're sitting here right now, that you
4 disagreed with from a methodological perspective?
5       MR. FITZGERALD: Same objections and
6 asked and answered.
7    A.  I have the same response. I don't have
8 a clear enough recollection of the report to have
9 an opinion on it, sitting here today. I was
10 asked to assess what Professor Fischel did. And
11 on that, I have opinions.
12 BY MR. BROOKS:
13    Q.  Did you ever develop an opinion about
14 Dr. Bajaj's methodologies?
15       MR. FITZGERALD: Same objection.
16    A.  No. Not -- not -- not -- the answer is
17 no, in the sense that I was asked to provide an
18 independent opinion and analysis of what
19 Professor Fischel said or what Professor Fischel
20 did. And so that was my focus.
21 BY MR. BROOKS:
22    Q.  Okay. You have Exhibit 5 in front of
23 you. This is Professor Fischel's original report
24 dated August 15th, 2007. Correct?
25    A.  August 15 -- yes. That's correct.

Page 171

1    Q.  And you've reviewed this report.
2 Right?
3    A.  I have.
4    Q.  In fact, this report is one of the
5 things you're responding to. Correct?
6    A.  Yes. Because he incorporates by
7 reference this report in his later reports. So
8 in that sense, the answer is yes.
9    Q.  So take a look at Paragraph 14 of
10 Professor Fischel's report.
11    A.  Okay. Okay.
12    Q.  And just for the record, Exhibit 5
13 doesn't have the exhibits, but I have them
14 available if you need them, okay, Professor?
15    A.  You have the exhibits for?
16    Q.  For this report available, if you need
17 them. They're voluminous, so --
18    A.  Thank you.
19    Q.  So you've directed your attention to
20 Paragraph 14 of Professor Fischel's report.
21    A.  Yes.
22    Q.  Is that correct?
23    A.  Yes.
24    Q.  Okay.
25    A.  Can you give me just a minute to read

Page 172

1 it?
2    Q.  Sure.
3    A.  I don't mean to interrupt. Sorry.
4    Q.  Go ahead.
5       (Witness complies.)
6    A.  I'm done reading it.
7 BY MR. BROOKS:
8    Q.  Okay. So Paragraph 14 discusses a
9 February 18, 2002 National Mortgage News article.
10 Correct?
11    A.  Yes.
12    Q.  And that article is about -- withdrawn.
13       That article provides detail about a class
14 action lawsuit alleging that Household's
15 California subsidiaries tricked and trapped
16 customers into high-cost mortgages. Do you see
17 that?
18    A.  I see those words.
19    Q.  Do you consider this article to be a
20 fraud-related disclosure?
21    A.  So if you're going to ask me to comment
22 on this article, I would like to see it and read
23 Exhibit 8.
24    Q.  Okay. Have you ever read Exhibit 8
25 before?