# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, | ) ) ) | Lead Case No. 02-C-5893 (Consolidated) |
| | ) | |
| Plaintiff, | ) ) | CLASS ACTION |
| | ) | |
| vs. | ) ) | Honorable Jorge L. Alonso |
| | ) | |
| HOUSEHOLD INTERNATIONAL, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## REPLY IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION TO EXCLUDE DEFENDANTS' EXPERTS

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................1

     A.    Ferrell and James Should Not Be Permitted to Testify About Firm-Specific, Nonfraud Information that Is Neither .......................................................1

          1.    Defendants Failed to Meet Their Burden of Production on Firm-Specific, Nonfraud Information .................................................................2

          2.    Ferrell's and James' Opinions Are Too Speculative ...................................4

          3.    Ferrell's and James' Opinions Contradict the Evidence............................5

     B.    Defendants' Decision to Shield Ferrell from the Fraud and Federal Rules Violations in Furtherance of that Tactic Warrant Exclusion ...................................5

     C.    Ferrell Violated Fed. R. Civ. P. 26(a)(2) ................................................................8

     D.    James Should Be Excluded Because He Has No Methodology ...........................10

     E.    Cornell Should Be Excluded Because He Has No Basis for His Opinion.............12

     F.    Defendants Should Be Precluded from Offering Cumulative Expert Testimony ...........................................................................................................14

     G.    The Court Did Not Reject Plaintiffs' Argument that Defendants' Experts Should Be Precluded from Offering Opinions for the First Time in Their Rebuttal Reports..................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barris v. Bob's Drag Chutes & Safety Equip., Inc.*,
685 F.2d 94 (3d Cir. 1982)..........................................................................13

*Caremark, Inc. v. Coram Healthcare Corp.*,
113 F.3d 645 (7th Cir. 1997) .........................................................................6

*Clark v. Takata Corp.*,
192 F.3d 750 (7th Cir. 1999) .......................................................................12

*Dura Auto Sys. of Ind. Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ...................................................................1, 12

*Estate of Burns v. Williamson*,
2015 WL 4464708 (C.D. Ill. July 21, 2015)................................................13

*Gipson v. Wells Fargo Bank, N.A.*,
460 F. Supp. 2d 9 (D.D.C. 2006) .................................................................11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................... *passim*

*Harbor Ins. Co. v. Cont'l Bank Corp.*,
1991 WL 222260 (N.D. Ill. Oct. 25, 1991)..................................................14

*Heller Int'l Corp. v. Sharp*,
1994 WL 386421 (N.D. Ill. July 19, 1994)................................................4, 7

*Janopoulos v. Harvey L. Walner & Assocs., Ltd.*,
866 F. Supp. 1086 (N.D. Ill. 1994) ..............................................................13

*Johnston v. Chestnut*,
2011 WL 4348144 (N.D. Ind. Sep. 16, 2011)..............................................12

*Key v. Sullivan*,
925 F.2d 1056 (7th Cir. 1991) .................................................................4, 7

*Lapsley v. Xtek, Inc.*,
689 F.3d 802 (7th Cir. 2012) .......................................................................11

*Lewis v. CITGO Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009) .........................................................................4

*Lutheran Homes, Inc. v. Lock Realty Corp. IX*,
2015 WL 8180196 (N.D. Ind. Dec. 7, 2015) ..............................................11

**Page**

*Manpower, Inc. v. Ins. Co. of Pa.*,
   732 F.3d 796 (7th Cir. 2013) ...............................................................................4, 11

*Metavante Corp. v. Emigrant Sav. Bank*,
   619 F.3d 748 (7th Cir. 2010) ...................................................................................11

*Norelus v. Denny's, Inc.*,
   628 F.3d 1270 (11th Cir. 2010) .................................................................................7

*Ong v. Sears, Roebuck & Co.*,
   459 F. Supp. 2d 729 (N.D. Ill. 2006) .......................................................................6

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
   2015 WL 5307483 (N.D. Ill. Sept. 10, 2015) ........................................................10

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
   2015 WL 7008132 (N.D. Ill. Nov. 10, 2015) .........................................................11

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
   308 F.R.D. 162 (N.D. Ill. 2015)...............................................................................12

*Rabin v. Cook County*
   2015 WL 1926420 (N.D. Ill. Apr. 27, 2015) ...........................................................9

*Redwood v. Dobson*,
   476 F.3d 462 (7th Cir. 2007) .....................................................................................8

*SEC v. Mudd*,
   11 Civ. 9202 (PAC) (S.D.N.Y. May 4, 2016) .......................................................12

*Sloan Valve Co. v. Zurn Indus., Inc.*,
   2013 WL 3147349 (N.D. Ill. June 19, 2013) .........................................................15

*Sunstar, Inc. v. Alberto-Culver Co., Inc.*,
   2004 WL 1899927 (N.D. Ill. Aug. 23, 2004) ........................................................14

*United States Gypsum Co. v. Lafarge N. Am. Inc.*,
   670 F. Supp. 2d 748 (N.D. Ill. 2009) .....................................................................11

*United States v. Barnes*,
   660 F.3d 1000 (7th Cir. 2011) ...................................................................................3

*United States v. Conn*,
   297 F.3d 548 (7th Cir. 2002) ...................................................................................11

- iii -

**Page**

*United States v. Parker*,
101 F.3d 527 (7th Cir. 1996) ...................................................................................3

*Walker v. Soo Line R.R.*,
208 F.3d 581 (7th Cir. 2000) .............................................................................11, 13

*Wilson v. Sundstrand*,
2003 WL 21961359 (N.D. Ill. Aug. 18, 2003) .........................................................8

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) ....................................................................3, 5, 11, 12

**STATUTES, RULES AND REGULATIONS**

17 C.F.R.
§240.10b-5 ...............................................................................................................11

Federal Rules of Civil Procedure
Rule 26 .....................................................................................................................10
Rule 26(a) .................................................................................................................13
Rule 26(a)(2) .......................................................................................................8, 10
Rule 30(d)(4) .............................................................................................................8
Rule 37(c)(1) ............................................................................................................13

Federal Rules of Evidence
Rule 104(a) .................................................................................................................4
Rule 702 ................................................................................................3, 5, 10, 14
Rule 702(b) ................................................................................................................5
Rule 703 ...................................................................................................................13

Local Rules
Rule 16.1.1 ...............................................................................................................13
Rule 16.1.4 ...............................................................................................................14

**SECONDARY AUTHORITY**

Ferrell and Saha,
The Loss Causation Requirement for Rule 10b-5 Causes of Action: The
Implications of *Dura Pharms. Inc. v. Broudo*,
63 Bus. Law. 163 (Nov. 2007) ...............................................................................11

- iv -

## I.    INTRODUCTION

Defendants oppose plaintiffs' *Daubert* motion, but their opposition is not responsive to many of the issues plaintiffs raised. Defendants' studied avoidance of the issues actually raised by plaintiffs serves only to highlight their merit. For example, defendants ignore entirely that they improperly and repeatedly instructed Ferrell not to answer questions at his deposition. And defendants say nothing at all about Ferrell's refusal to testify whether he considered information "fraud-related." Likewise, defendants disregard that their experts failed to meet their burden of production because they did not "shoulder their burden of identifying some significant, firm-specific, nonfraud related information that could have affected the stock price." Nor do defendants even acknowledge the local rule that prohibits cumulative testimony, citing out-of-circuit cases instead. Finally, defendants do not explain why they should be permitted to offer new opinions in their rebuttal reports, pretending instead that the Court already ruled on this issue. Whether they run from or face plaintiffs' arguments, defendants fail to rebut them; thus, their experts should be excluded.

## II.    ARGUMENT

### A.    Ferrell and James Should Not Be Permitted to Testify About Firm-Specific, Nonfraud Information that Is Neither

The Court of Appeals vacated the judgment in this case because it viewed plaintiffs' expert's opinion with respect to firm-specific, non-fraud related information as too conclusory, stating:

> In light of *Dura*, however, we conclude that the evidence at trial did not adequately account for the possibility that firm-specific, nonfraud related information may have affected the decline in Household's stock price during the relevant time period. As things stand, the record reflects only the expert's general statement that any such information was insignificant. That's not enough.

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 423 (7th Cir. 2015). In so holding, the Court of Appeals also made clear that Fischel's models, other than his "very general" opinion as to firm-specific, non-fraud related information, were sound:

> Fischel's models controlled for market and industry factors and general trends in the economy – the regression analysis took care of that. But the leakage model, which the jury adopted, didn't account for the extent to which firm-specific, nonfraud related information may have contributed to the decline in Household's share price.

*Id.* at 421.

- 1 -

In short, the issue left open for retrial by the Court of Appeals was the impact of "firm-specific, nonfraud related information." *Glickenhaus*, 787 F.3d at 413 ("The remaining challenges fail. A new trial is warranted on these two issues only.").[1] This ruling came despite the fact that, at the first trial, defendants never challenged Fischel's opinion with respect to firm-specific, nonfraud information either on cross-examination or through a contrary opinion from their expert Bajaj. On remand, the reason that defendants failed at the first trial to present evidence of firm-specific, non-fraud related information became clear: there is none. *See* 2/1/16 Order (Dkt. No. 2102).

Instead of identifying significant, firm-specific, nonfraud related information, defendants, through Ferrell and James, identify market information that they allege disproportionately affected Household and a "handful of other companies in the subprime sector" and other information that is related to the fraud. *Id.* But the Seventh Circuit's opinion forecloses this attack because the court held that Fischel's models accounted for market and industry information. *Glickenhaus*, 787 F.3d at 421. This is now the law of the case and cannot be relitigated. Furthermore, defendants cannot present market and industry information to the jury and call it company specific – which is precisely what Ferrell and James do in their reports – because it is unhelpful, unreliable and would unfairly prejudice plaintiffs and confuse the jury.

1. **Defendants Failed to Meet Their Burden of Production on Firm-Specific, Nonfraud Information**

The Seventh Circuit set up a protocol on remand to implement the approach it "sketched" in its opinion. *Glickenhaus*, 787 F.3d at 422-23. Fischel complied with the first step of the protocol by explaining in non-conclusory terms the basis for his opinion that no adjustment is required to the leakage quantification that he presented at trial due to significant firm-specific, non-fraud information. *See* 2/1/16 Order at 3-5. At that point, defendants were required to "shoulder the burden of identifying some significant, firm-specific, nonfraud related information that could have affected the stock price." *Glickenhaus*, 787 F.3d at 422. As this Court determined, they failed to do so because "the categories of disclosures that defendants characterize as firm-specific and unrelated to fraud are neither." 2/1/16 Order at 6.

---

[1] The other "issue" is proportionate liability.

Defendants argue that their failure to "shoulder the burden" is a nullity when it comes to determining whether their own experts can testify. However, defendants admit that the standard they failed to meet was a "burden of production." Defs' Opp. at 11 (Dkt. No. 2152); Defendants' Response to Plaintiffs' Motion *in Limine* No. 4 at 3. This is the same burden that defendants must satisfy under Rule 702. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("[A]s proponent of the [expert] testimony WH-TV had a burden of production on the subject."). Thus, whether the Court adopts its prior conclusion or performs the analysis anew, the result remains the same: Ferrell and James failed to identify firm-specific, nonfraud information. Hence, their testimony fails to meet FRE 702's criteria for admissibility.

Undeterred, defendants insist that they be permitted to introduce expert opinions that rely on market and industry information in direct contravention of the Court of Appeals' rulings. For example, defendants argue that their experts will testify that "Fischel's leakage model does not exclude the effect on Household's stock price of nonfraud factors that were disproportionately affecting companies like Household that operated in the subprime sector of the financial industry." Defs' Opp. at 8. Unfortunately for defendants, this testimony does not address the gap left open by the Court of Appeals – their experts' industry information is not firm-specific. Instead, the proposed testimony directly contradicts the Seventh Circuit's holding that Fischel's leakage model properly accounted for the impact of industry and market news – "the regression analysis took care of that." *Glickenhaus*, 787 F.3d at 421. There is no basis to relitigate this issue, as doing so is not necessary to correct the "'discrete, particular error'" found by the court – Fischel's failure to adequately explain why the leakage model was not distorted by company-specific nonfraud information – and on remand "the district court is limited to correcting that error.'" *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011) (quoting *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996)).[2] Accordingly, the Court should exclude this testimony.[3]

---

[2]    Internal citations are omitted and emphasis is added unless otherwise noted.

[3]    Although the Court held that "in the new trial, plaintiffs must prove that defendants' misrepresentations were 'a substantial cause of the economic loss plaintiffs suffered'" (9/8/15 Order at 1) (Dkt. No. 2042), defendants are not entitled to relitigate issues that were "expressly or by necessary implication" ruled on by

- 3 -

Defendants argue that whether information is firm-specific depends on which indices or peer groups are used by an expert in a regression analysis. First, defendants' argument fails a common-sense test. Defendants point to information that allegedly affected Household **and other companies in the subprime market** – by its very definition this information is not firm-specific. And the Court of Appeals already held that Fischel's models accounted for industry information; thus, what disproportionately affected Household and its friends is no longer the issue. Second, this dispute is not about peer groups; indeed, in assessing whether Fischel's models were distorted by company-specific, nonfraud information, Ferrell used Fischel's regression (and thus his peer group) to identify the statistically significant dates he analyzed. Ferrell Report, §IX (Dkt. No. 2060-3). James did not perform an event study or regression analysis. In fact, he has no methodology at all.[4]

Finally, defendants suggest that the Court cannot assess the relevance and reliability of facts relied on by their experts in a *Daubert* motion. But, they simply ignore the Court's role and responsibility as a gatekeeper. In performing this function, the Court does not, as defendants claim, usurp the jury's role. All courts must make pretrial determinations of admissibility which are "governed by the principles of Rule 104(a)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Under FRE 104(a), "*[t]he court must decide any preliminary question* about whether a witness is qualified, a privilege exists, or evidence is admissible." Furthermore, "the proponent has the burden of establishing that the pertinent admissibility requirements" – including relevance and reliability – "are met by a preponderance of the evidence." *Lewis*, 561 F.3d at 705. If the proponent fails, as defendants have here, the court should exclude the evidence.

### 2. Ferrell's and James' Opinions Are Too Speculative

Defendants try to justify Ferrell's and James' speculative opinions that certain disclosures and market factors "could have" impacted Household's stock price by asserting that their experts were only attempting to meet the "burden of production" set forth in the Court of Appeals' opinion.

---

the Seventh Circuit (*Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)) or that they "could have appealed, but did not appeal." *Heller Int'l Corp. v. Sharp*, 1994 WL 386421, at *3 (N.D. Ill. July 19, 1994).

[4]   Defendants' reliance on *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796 (7th Cir. 2013) – a case focused on an expert's data selection – is misplaced.

Defs' Opp. at 11. But since defendants failed to meet this burden of production, they should not be permitted to impart their speculation to the jury. 2/1/16 Order at 3 (holding that defendants have failed to identify "'significant, firm-specific, nonfraud related information that could have affected [Household's] stock price'"); *Zenith*, 395 F.3d at 419 (party offering expert witness bears the burden of production as to relevance and reliability).

### 3. Ferrell's and James' Opinions Contradict the Evidence

Ferrell and James offer opinions that simply do not square with the facts established at trial. There is an explanation for their failings: Ferrell and James did not review the trial record, other than the testimony of Fischel and Bajaj. Defendants made a tactical decision to blind their experts to the factual record, but it renders the resulting opinions inadmissible. In response, defendants attempt to defend their experts by pointing to the Advisory Committee's notes on FRE 702, which counsel that, when facts are in dispute, a trial court should not exclude expert testimony because it believes one version of the facts and not the other. However, defendants miss the point. The issue is not that there are competing versions of the facts. The issue is that defendants' experts have made no effort to understand any version of the facts at all.

Rather than reach for Advisory Committee notes, defendants should have read FRE 702, which dictates that expert testimony is admissible only if that "testimony is based on sufficient facts or data." FRE 702(b). Here, defendants' experts ignore not only facts related to predatory lending, re-aging, and the restatement, but also ignore loss causation evidence identified by the Court of Appeals. Pltfs' Mem. at 10-11. Defendants' experts' ignorance of the record causes them to make mistaken assessments about loss causation and "nonfraud" information. *Id.* Therefore, their opinions are based on insufficient facts and are simply unreliable as a result.

### B. Defendants' Decision to Shield Ferrell from the Fraud and Federal Rules Violations in Furtherance of that Tactic Warrant Exclusion

At Ferrell's deposition, defense counsel insisted Ferrell would not "testify as to . . . *how* [the fraud] happened" (Ferrell Depo. Tr. at 150:17-19), and Ferrell confirmed he does not "have a view on what constituted the misrepresentations beyond noting what's on the jury verdict form." *Id.* at 147:21-148:7 (Dkt. No. 2130). But Ferrell cannot claim to have fully considered the significance of

- 5 -

defendants' misstatements by simply reading the jury form, without having also considered the practices defendants lied about and failed to disclose.

Contrary to defendants' assertions, the 17 misrepresentations, in isolation, are **not** the fraud. Indeed, even "[t]o plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries."[5] Here, the 17 statements are fraudulent because they misrepresented or omitted material information about Household's financial condition, predatory lending practices and the quality of its loan portfolio.

Nonetheless, defendants continue to argue, as they have from day one, that because predatory lending and reaging are not elements of securities fraud, no case can lie against them for engaging in these practices. Thus, they claim, Ferrell is justified in ignoring those topics in judging whether disclosures were fraud-related, and rightly refused to answer questions about the fraud that were not tied directly to the prior jury's verdict form. But Household's predatory lending, improper reaging, and accounting manipulations – subjects defendants hired four experts to testify about before the last trial – are part and parcel of defendants' securities fraud. Defendants lied to the market about the existence, scope and impact of these practices. When the truth emerged, Household's stock price fell. As Ferrell conceded, "in order to determine whether something is fraud-related or not, one has to understand the fraud." Ferrell Depo. Tr. at 162:3-6. Because Ferrell limited his understanding of the fraud to the face of the verdict form, he fails that test completely.

Defendants' attempt to defend Ferrell's head-in-the-sand approach merely rehashes an argument that has been repeatedly rejected in this case over the past decade. For example on December 2, 2008, in response to defense counsel's repeated assertions that evidence of Household's predatory lending had nothing to do with securities fraud, the Court aptly noted:

> THE COURT: How this fits in with alleged fraud, I assume it fits in the same way since almost day one when we had a conference in this case I don't know how many years ago now. They're alleging that part of the fraud upon the investors was that the company was running a fraudulent lending scheme and denying that it was doing so and by virtue of that scheme pumping up its share values and the price of its shares,

---

[5]   *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997); *see also Ong v. Sears, Roebuck & Co.*, 459 F. Supp. 2d 729, 747 (N.D. Ill. 2006) (plaintiff "must show that "'but for the circumstances that the fraud concealed, the investment . . . would not have lost its value'"").

- 6 -

thereby defrauding its shareholders. Is that essentially about right? Do I have that?

MR. BROOKS: That's about it, Judge.

THE COURT: Okay. That's how it fits in. So now we have that done.

December 2, 2008 Hr'g Tr. at 1-11, attached as Ex. 1 to the Declaration of Daniel S. Drosman in Further Support of Plaintiffs' Omnibus Motion to Exclude Defendants' Experts ("Drosman Decl.").[6] Thus, defendants have long known that the fraud in this case consists of much more than false statements on the verdict form. Their failure to accept this does not excuse Ferrell's failure to understand – and refusal to testify about – the underlying fraud. Having done so, Ferrell's opinion that firm-specific nonfraud information contributed to Household's stock price decline is unreliable.

Defendants' attempt to justify their interference during Ferrell's deposition is equally baseless. The cases plaintiffs cited in their motion leave no doubt that defendants' deposition conduct was highly improper. Dkt. No. 2128 at 12-17. Defendants' brief in response does not even mention them. The reason for that is simple: Since defendants were not protecting a privilege and did not seek a protective order, there is no justification for their misconduct. *Id.*

Defendants suggest that their misconduct was appropriate because plaintiffs' questions with respect to the Seventh Circuit's opinion were outside the scope of permissible examination because the Court of Appeals did not make factual findings.[7] Defs' Opp. at 20-21. First, Ferrell relied on the Seventh Circuit's opinion to form his own opinions, a fact defendants do not dispute. Nor do they

---

[6]    *See also* Dkt. No. 1515 at 2 (rejecting defendants' contention that "[o]n the elements of Plaintiffs' federal securities fraud case," plaintiffs' proposed lending expert "offers no assistance" (Dkt. No. 1358-1 at 40), because "[i]f the jury credits it, Ghiglieri's testimony" – which included the methods, scope and pervasiveness of Household's predatory lending – "**bears on the truth or falsity of Household's statements** that it did not engage in predatory lending practices."); Dkt. No. 1516 at 5 (holding complaints filed against Household for predatory lending are probative of plaintiffs' securities fraud claims because they "are relevant to proving defendants' knowledge of the complained of lending practices").

[7]    The primary (out-of-circuit) case on which defendants rely for this proposition, *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1289 (11th Cir. 2010), expressly states the general rule that appellate courts' "findings of fact" are binding on remand: "It is true that '[u]nder the "law of the case" doctrine, the ***findings of fact*** and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the trial court or on a later appeal.'" *Id.* at 1288. There is no question, moreover, that the law of the case doctrine gives "preclusive effect to rulings or findings that a party could have appealed, but did not appeal." *Heller*, 1994 WL 386421, at *3. The jury's findings on falsity, materiality, scienter and reliance that the Seventh Circuit summarized were left "undisturbed" (*Glickenhaus*, 787 F.3d at 429), which means that they are binding as the law of the case. *Heller*, 1994 WL 386421, at *3; *Key*, 925 F.2d at 1060.

- 7 -

dispute plaintiffs' right to examine Ferrell on his reliance materials. Pltfs' Mem. at 14-15. Second, a disagreement about the relevance of a question is no basis for refusing to answer. *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007). Thus, even if plaintiffs' questions were outside the scope – they were not – the proper procedure is to answer the questions, noting them for later resolution. *Id.* Third, defendants misstate the law in asserting that plaintiffs should have filed a motion to compel. The onus is on the party seeking to stop the questions: "[c]ounsel for the witness may halt the deposition and apply for a protective order, *see* Rule 30(d)(4), but must not instruct the witness to remain silent." *Id.* Of course, defendants did no such thing here because plaintiffs' questions were neither burdensome nor harassing but instead were directly relevant to Ferrell's opinions. Further, the damage defendants' misconduct caused "cannot fairly be undone simply by sending plaintiffs back to the drawing board." *Wilson v. Sundstrand*, 2003 WL 21961359, at *14 (N.D. Ill. Aug. 18, 2003). Fourth, defendants do not even try to defend Ferrell's refusal to testify whether he considered particular pieces of information "fraud-related." *See* Pltfs' Mem. at 16-17. These questions did not mention the Seventh Circuit's Opinion, but instead sought to discover Ferrell's definition of fraud-related for purposes of this case, and his opinions about whether specific disclosures during the leakage period were fraud-related. Ferrell disclosed neither.

Finally, defendants suggest that the size of the prior verdict and the fact that it was remanded somehow excuse their improper instructions and Ferrell's non-responsive testimony. However, the Federal Rules do not contain an exception allowing defendants to obstruct deposition testimony once the amount at stake crosses the billion-dollar threshold. Defendants' argument to the contrary confirms that their violations of the rules were part of a larger plan – they made a tactical decision to shield Ferrell from the evidence of defendants' fraud, and actively frustrated plaintiffs' attempts to discover whether in Ferrell's opinion certain information is related to the fraud. Defendants must lie in the bed they made. Ferrell's testimony should be excluded.

### C. Ferrell Violated Fed. R. Civ. P. 26(a)(2)

In arguing that Ferrell did not violate Rule 26(a)(2), defendants do not contest that Ferrell failed to disclose "*Institutional Investor*" magazine or the "academic literature" he claims to have

relied upon in selecting the CSFB Specialty Finance Universe as a peer group. *See* Defs' Opp. at 22-24; Dkt. No. 2130-2 at 229:5-230:19. They similarly offer no justification for Ferrell's failure to do so. Instead, defendants contend that Ferrell "disclosed his reasons for using the companies in the CSFB Specialty Finance Universe," in his reports, citing information that Ferrell discussed when critiquing Fischel's peer index.[8] Defs' Opp. at 22-23. Defendants' position is indefensible.

Ferrell explained the process he used to select a peer index at his deposition:

Q: What was your process for landing on that particular group of consumer finance companies?

A: Sure. So the process was, it was very important to me to use a third-party identification of comparables contemporaneous with the time period. . . . So that was criteria one. . . . The second criterion is consistent with the academic literature, and I'll explain that in a minute, I went to the "Institutional Investor" magazine, which ranks analysts. I identified the star analyst, according to "Institutional Investor" magazine, for 2001. . . . I went to his report, where he identifies those firms. And the final thing I would note, which was important to my thinking, is that the academic literature regularly uses this source, the "Institutional Investor" magazine, to identify star analysts.

Ferrell Depo. Tr. at 227:8-228:11. Plainly, the information from Ferrell's reports that defendants identify was ***not*** what guided Ferrell in selecting particular companies for his index – it was the undisclosed "*Institutional Investor*" magazine recommended by phantom "academic literature."

Furthermore, Ferrell's failure to disclose was not harmless.[9] Plaintiffs were not prepared to question Ferrell about "*Institutional Investor*," the criteria it used to define a "star analyst" or why Ferrell considered that a reasonable starting point. Indeed, defendants cannot credibly claim that the glaring omission of "*Institutional Investor*" magazine from Ferrell's reliance materials was harmless when they included two versions of that magazine on their exhibit list after Ferrell's deposition.

---

[8] Ferrell's criticisms of Fischel's index did not provide plaintiffs the information necessary to understand how Ferrell chose his index. After all, while James advanced nearly identical criticisms of Fischel's index, he selected several different companies for his own peer index, some of which actually contradicted his criticisms of Fischel's index. *See* James Rpt., ¶¶11(b); 21-23 & Ex. 4 thereto (Dkt. No. 2060-4); Ferrell Rebuttal, Exs. 2K, 2L (Dkt. No. 2074-3).

[9] *Rabin v. Cook County*, which defendants cite as support for this argument, is inapposite. *See* 2015 WL 1926420 (N.D. Ill. Apr. 27, 2015). In *Rabin*, the plaintiff claimed that the defendants' medical expert had failed to disclose information he relied upon. *Id*. at *4. The Court found that, to the contrary, the expert had disclosed, in detail, the records he had relied on, and that plaintiff's counsel had been able to thoroughly and extensively question the expert about his use of those materials. *Id*. The same is not true here, where Ferrell withheld key reliance materials until after his deposition, and plaintiffs were consequently unable to conduct a thorough examination of all his opinions.

[Proposed] Final Pretrial Order, Ex. C-2, Exs. DX0002, DX0077. Furthermore, defendants *still* have not identified the unspecified "academic literature" that Ferrell claims supports the index selection process he used.[10]

The fact that Ferrell identified the firms he included in his index is beside the point. His process and rationale for selecting the "peer group" is especially important in this case, because it was chosen instead of numerous other groups identified by analysts covering Household, Household's internal and externally reported peer groups, and the peer groups used by their prior expert (Bajaj) and another current expert (James). Plaintiffs were entitled to know why Ferrell stopped on his particular musical chair before they deposed him; however, his unexcused failure to explain ***how*** he chose his particular peer index – the lynchpin in his alternate inflation calculation – from among numerous options prevented plaintiffs from questioning him about that material in any depth, and prevented Fischel from critiquing the process Ferrell used. This is precisely the situation that Rule 26(a)(2) was designed to prevent, and why Ferrell's opinions should be excluded. *See Paramount Media Grp., Inc. v. Vill. of Bellwood*, 2015 WL 5307483, at *5 n.4 (N.D. Ill. Sept. 10, 2015) (Alonso, J.) (excluding expert witness where failure to comply with Rule 26 was without substantial justification and not harmless).

### D. James Should Be Excluded Because He Has No Methodology

In their opening brief, plaintiffs identified a number of critical flaws with James' proffered testimony, all of which demonstrate the unreliability – and thus inadmissibility – of James' opinions. *See* Pltfs' Mem. at 22-25. Rather than address the flaws plaintiffs identify, or attempt to demonstrate that James did employ a reliable methodology, defendants assert that James was entitled to rely on his "extensive personal experience in the financial industry" in forming his opinions. *See* Defs' Opp. at 24. Defendants miss the point entirely. While the Federal Rules do not preclude qualified experts from relying on their professional experience in forming opinions, "[a] witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702

---

[10] While defendants claim that Ferrell's failure to disclose does not demonstrate bad faith on their part, they provide no reason why they have not produced information which, as of Ferrell's deposition, defendants unquestionably knew was relevant.

defines that term." *Zenith*, 395 F.3d at 419.[11]  Because James has no methodology to support his conclusion that Household's stock price decline during the Leakage Period was due to factors other than the fraud, his opinion should be excluded.  *Zenith*, 395 F.3d at 418-19 (rejecting economic expert's opinions based solely on his "'industry expertise'" rather than a "multivariate regression" because such a method was "neither normal among social scientists nor testable").

In addition, when selecting an index of Household's peers, James did not use **any** consistent methodology, let alone an established or peer-accepted approach.[12]  In fact, James ignored his own prior work concerning how a proper peer index should be selected, as well as that of his co-expert, Ferrell.[13]  James' opinion is so divorced from the level of intellectual rigor that characterizes the practices of an expert in the relevant field, that he even switched his selected peer group between his initial and rebuttal reports.[14]  Next, when comparing his peer-group to Household, James eschewed the "analytic strategies widely used" (*Zenith*, 395 F.3d at 419) for conducting such an analysis (an event study or regression analysis), and instead claimed, when pressed, to have used an approach somewhat akin to a "propensity score matching technique" – an approach he never references in either of his reports, and that he concedes is not used for analyzing loss causation.  *See* James Depo. Tr. at 262:13-16; 268:11-269:7 (Dkt. No. 2130-9).  James' opinions are thus not based on "shaky"

---

[11]  The cases defendants cite are not to the contrary.  Indeed, unlike here, those cases concern: (a) experts applying well-established methods of their fields to the facts of the case (*see Manpower*, 732 F.3d at 807; *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012); (b) experts offering opinions where applying experience to facts – rather than conducting an empirical analysis – is the **only** possible methodology (*see Gipson v. Wells Fargo Bank, N.A.*, 460 F. Supp. 2d 9, 10 (D.D.C. 2006); *Walker v. Soo Line R.R.*, 208 F.3d 581, 591 (7th Cir. 2000); *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002); *Lutheran Homes, Inc. v. Lock Realty Corp. IX*, 2015 WL 8180196, at *6 (N.D. Ind. Dec. 7, 2015); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010); or (c) courts excluding experts for unreliable testimony (*see United States Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 755 (N.D. Ill. 2009)).

[12]  James' failure to explain his method of selecting companies for his index is, by itself, reason to exclude his opinions.  *See Paramount Media Grp., Inc. v. Vill. of Bellwood*, 2015 WL 7008132, at *7 (N.D. Ill. Nov. 10, 2015) (excluding opinion because expert did not explain his methodology in any meaningful way).

[13]  *See* James Depo Tr. at 82:23-83:6; 85:1-5; 86:4-87:3; 88:10-14; Ferrell and Saha, The Loss Causation Requirement for Rule 10b-5 Causes of Action: The Implications of *Dura Pharms. Inc. v. Broudo*, 63 Bus. Law. 163, at 4 (Nov. 2007).  *See also* Ferrell Depo. Tr. at 227:11-228:11 (noting the importance of using a third-party identification of comparable companies for a peer index, rather than one "construct[ed] . . . for the purposes of litigation").

[14]  *See Zenith*, 395 F.3d at 419; *see also United States Gypsum*, 670 F. Supp. 2d at 756 (expert's experience in the relevant field did not "give him license to speculate . . . based on . . . scanty evidence").

data or controversial methodology – they are pure, inadmissible *ipse dixit*. *See Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). "He was relying on intuition, which won't do." *Zenith*, 395 F.3d at 418.

Because defendants have failed to carry their burden to show that James' opinions are the product of a reliable methodology, those opinions must be excluded.[15]

### E. Cornell Should Be Excluded Because He Has No Basis for His Opinion

In the aftermath of his deposition, Cornell abandoned the only independent analysis that he performed to support his opinion that Fischel misapplied the Leakage Model because there is firm-specific, nonfraud information which caused the decline in Household's stock price. *See* Dkt. No. 2060-2 at 7; Dkt. No. 2074-2 at 4; Dkt. No. 2130-18. Forced into this strategic retreat, the basis for Cornell's opinion has vanished.[16]

Defendants try a detour around this barrier, clinging to the notion that Cornell can simply regurgitate Ferrell's opinion that Fischel failed to account for firm-specific, nonfraud information – the primary basis for Cornell's opinion that Fischel misapplied the Leakage Model. But this is a blind alley. First, Cornell did not rely on Ferrell's opinion because Cornell admitted that he did not review Ferrell's report until after he submitted his own report. *See* Dkt. No. 2130-11 at 119:21-121:25; *Johnston v. Chestnut*, 2011 WL 4348144, at *7 (N.D. Ind. Sep. 16, 2011) (finding that expert "did not rely on and ***could not*** have relied on [a second expert's] findings" because he admitted in his deposition that he had not seen the second expert's report, which was filed after the first expert's) (emphasis in original). Second, Cornell's repetition of Ferrell's opinion is impermissible bolstering.[17] Third, Cornell's opinion is entirely duplicative of Ferrell's testimony, in

---

[15] James is also foreclosed from testifying that Fischel's models do not account for economic and regulatory factors that he claims impacted Household and its other subprime companies more than companies operating in the broader financial sector because, as discussed, such testimony would conflict with the Seventh Circuit's finding that Fischel's models accounted for market and industry factors. *Glickenhaus*, 787 F.3d at 421; §II.D. *supra*.

[16] Since plaintiffs filed their opening papers, yet another court has concluded that Cornell's analysis "is not based on proven methodologies, is unreliable, and would not assist the jury" and excluded his testimony in its entirety. *See SEC v. Mudd*, 11 Civ. 9202 (PAC) (S.D.N.Y. May 4, 2016) (holding that Cornell offered "mere narration and second-hand knowledge under the guise of claimed expertise") (Drosman Decl., Ex. 2).

[17] *See, e.g.*, *Dura Auto Sys. of Ind. Inc. v. CTS Corp.*, 285 F.3d 609, 613-14 (7th Cir. 2002); *Paramount*

violation of Form LR 16.1.1.  *See* Dkt. No. 2130-1, at 1.  Finally, Cornell cannot use Ferrell's opinion to assert that firm-specific, nonfraud information distorted the model because the underlying basis is faulty; Ferrell pointed only to information "disproportionately affecting ***companies like*** Household that operated in the subprime sector of the financial industry."  Defs' Opp. at 8.

Recognizing the frailty of their position, defendants have now concocted a new opinion that Cornell intends to offer at trial: the Leakage Model does not work here because the parties disagree on how to measure the market and disagree on the form and parameters of the model.  Defs' Opp. at 28.  But Cornell neglected to mention this new opinion in any his four reports in this case.  Rule 26(a) requires disclosure of all opinions in an expert report, and undisclosed opinions like Cornell's are excluded at trial under FRCP 37(c)(1).

To be sure, in his October 23, 2015 report, Cornell did drop a footnote in which he described these conditions, but he never opined that Fischel should not be able to rely on his article because any of defendants' experts criticize Fischel's choice of industry and parameters of the model.  Cornell 10/23/15 Report at 11 n.18.  To the contrary, Cornell "assumes for purposes of [his] analysis that ***there are no flaws*** in how Prof. Fischel measured the market and industry, ensured that the industry variable includes all systemic factors, and arrived at the form and parameters of the model."  *Id.*  Thus, Cornell not only failed to offer an opinion on this subject in his reports, he expressly disavowed these conditions as a basis for his opinion.[18]

---

*Media Grp., Inc. v. Vill. of Bellwood*, 308 F.R.D. 162, 164-65 (N.D. Ill. 2015).  The cases on which defendants rely actually support preclusion of Cornell's testimony.  *See Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 101 n.10 (3d Cir. 1982) (precluding expert testimony where the expert witness "did not show through his testimony that he based his opinion on the facts or data compiled by the other expert, as Rule 703 requires"); *Janopoulos v. Harvey L. Walner & Assocs., Ltd.*, 866 F. Supp. 1086, 1096 (N.D. Ill. 1994) (involving an expert who had "performed his own tests," unlike Cornell); *Estate of Burns v. Williamson*, 2015 WL 4464708, at *6 (C.D. Ill. July 21, 2015) (movant "[did] not dispute [the expert's] qualifications or his methodology, other than his reliance on [another expert's] opinions"); *Walker*, 208 F.3d at 588 ("Expert testimony relying on the opinions of others should, of course, be rejected if the testifying expert's opinion is too speculative, or the underlying basis is faulty[.]").

[18]    Furthermore, the conditions described by Cornell apply only to the "Comparable Index Approach" – not to the "Event Study Approach" that Fischel used in creating his Leakage Model.  *See* Cornell & Morgan Article at 898-99 nn. 41-42 (Dkt. No. 2081-12); Fischel August 15, 2007 Report at 40-41 & n.3 (Dkt. No. 2067-3) (setting forth in detail how Fischel used the event study approach); Fischel Rebuttal Report at 4 n.4 (Dkt. No. 2067-5) (rejecting Bajaj's claim that he did not use the event study approach by citing language from the article in his report); Judge Guzmán's *Daubert* Order at 2 (Dkt. No. 1527) (confirming Fischel used the event study approach).

After his firm-specific, nonfraud opinion is stripped away, Cornell's opinions are limited to issues related to academic literature, "error compounding," and statistical noise.[19] Yet, Cornell should not be allowed to testify about these issues because, as this Court noted, "[t]hese arguments . . . were rejected by Judge Guzmán and/or the Court of Appeals, and defendants provide no basis for revisiting them now." *See* Dkt. No. 2102 at 5, 14 n.1. Cornell should not be allowed to testify.

### F.     Defendants Should Be Precluded from Offering Cumulative Expert Testimony

Defendants bear the burden of demonstrating "good cause" for offering more than one witness on the subject of loss causation. *See* Form LR 16.1.4. Final Pretrial Order Form n. 7 ("Only one F.R. Evid. 702 witness on each subject for each party will be permitted to testify absent good cause shown."). Defendants ignore entirely the local rule's prohibition on cumulative expert testimony and instead rely on out-of-circuit cases. Because defendants cannot demonstrate good cause exists to allow their ***three*** loss causation experts to testify at trial, defendants should not be permitted to outnumber plaintiffs' single loss causation expert. *Id.*; *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004).

Defendants attempt to convince the Court that the testimony of their three loss causation expert witnesses is not cumulative because they possess different backgrounds. Defendants' argument should be rejected; all three experts offer the same opinions, regardless of differences they may have in their respective backgrounds. *See Harbor Ins. Co. v. Cont'l Bank Corp.*, 1991 WL 222260, at *5-*7 (N.D. Ill. Oct. 25, 1991) (dismissing as "meritless" the argument that the expert witness' testimony was not cumulative because each expert examined the issues from a different perspective and expertise); *see also* Dkt. No. 2130-1. Further, contrary to defendants' assertion, the testimony of defendants' expert witnesses is not cumulative merely because all three reach the same ***conclusion*** (although that fact certainly adds to the cumulative nature of their testimony), but because they all ***offer the same opinions***, as evidenced by their own reports and deposition testimony. *See* Dkt. No. 2130-1. Indeed, there is nothing James or Cornell have said in this case that Ferrell has not also said. If the Court finds more than one of defendants' experts meets FRE 702

---

[19]    *See* Cornell 10/23/15 Report at 7; Cornell 12/21/15 Rebuttal Report at 5.

and *Daubert's* admissibility requirements, defendants should be forced to pick one of them for trial.

### G. The Court Did Not Reject Plaintiffs' Argument that Defendants' Experts Should Be Precluded from Offering Opinions for the First Time in Their Rebuttal Reports

After defendants served the rebuttal reports of Ferrell, James and Cornell on December 21, 2015 (Dkt. No. 2074), plaintiffs moved to strike them on the grounds that they violated the express terms of the Court's September 8, 2015 scheduling order in this case. *See* Dkt. No. 2086 at 1; 2/1/16 Order (Dkt. No. 2102) at 2 ("Plaintiffs ask the Court to strike the expert rebuttal reports defendants filed in support of their *Daubert* reply brief because the scheduling order does not contemplate such a filing."). The Court declined to strike the rebuttal reports "[b]ecause of the perceived ambiguity in the scheduling order," but also did "not consider defendants' rebuttal reports in deciding the *Daubert* motion." Dkt. No. 2012 at 2. In denying plaintiffs' motion to strike, the Court certainly did not "reject" the argument plaintiffs make here – that defendants' experts should be precluded from offering opinions raised for the first time in their rebuttal reports. *See* Dkt. No. 2128 at 29-32. After all, the Court did not even "consider defendants' rebuttal reports." Therefore, plaintiffs certainly are not seeking reconsideration of the Court's February 1, 2016 Order, as defendants contend.

Now that the admissibility of defendants' experts' opinions is squarely before the Court, defendants' experts should be precluded from offering opinions that they could (and should) have offered previously, but instead raised for the first time on rebuttal. The most egregious example is Ferrell's opinion that maximum per share damages in this action should be, at most, $4.19 per share. *See* Ferrell Rebuttal, ¶¶97-98, Exs. 8 and 9 thereto. Ferrell, and defendants, provide no explanation for why he did not, or could not, provide this analysis in his initial report. In fact, this is the very first time defendants have proffered their own quantification of inflation in ***14 years*** of litigation. Defendants undoubtedly made a tactical decision to sandbag plaintiffs with this opinion at the eleventh hour, but should not be rewarded for doing so. This, and all other opinions defendants' experts raised for the first time on rebuttal, should be excluded at the retrial.[20]

---

[20]   *Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 3147349, at *3-*4 (N.D. Ill. June 19, 2013) (excluding expert's new damages calculation, raised for the first time in reply expert report).

DATED:  May 9, 2016          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL J. DOWD (135628)
SPENCER A. BURKHOLZ (147029)
DANIEL S. DROSMAN (200643)
LUKE O. BROOKS (90785469)
LAWRENCE A. ABEL (129596)
HILLARY B. STAKEM (286152)

s/ Daniel S. Drosman

DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Lead Counsel for Plaintiffs

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses for counsel of record denoted on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 9, 2016.

s/ Daniel S. Drosman
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: DanD@rgrdlaw.com

*Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill.)
Service List

| Counsel | E-mail address |
|---|---|
| Stewart Theodore Kusper<br>Giovanni Antonio Raimondi<br>THE KUSPER LAW GROUP, LTD.<br>20 North Clark Street, Suite 3000<br>Chicago, IL 60602<br>(312) 204-7938<br><br>Tim S. Leonard<br>JACKSON WALKER L.L.P.<br>1401 McKinney Street, Ste. 1900<br>Houston, TX 77010<br>(713)752-4439 | Stewart.Kusper@Kusperlaw.com<br>Giovanni.Raimondi@Kusperlaw.com<br>tleonard@jw.com |
| Counsel for Defendant David A. Schoenholz | |
| Dawn Marie Canty<br>Gil M. Soffer<br>KATTEN MUCHIN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, Illinois 60661<br>(312)902-5253 | dawn.canty@kattenlaw.com<br>gil.soffer@kattenlaw.com |
| Counsel for Defendant William F. Aldinger | |
| David S. Rosenbloom<br>C. Maeve Kendall<br>McDERMOTT WILL & EMERY, LLP<br>227 West Monroe Street<br>Chicago, IL 60606<br>(312) 984-2175 | drosenbloom@mwe.com<br>makendall@mwe.com |
| Counsel for Defendant Gary Gilmer | |

- 1 -

| Counsel | E-mail address |
|---|---|
| R. Ryan Stoll<br>Mark E. Rakoczy<br>Andrew J. Fuchs<br>Donna L. McDevitt<br>Patrick Fitzgerald<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>155 North Wacker Drive<br>Chicago, IL 60606<br>(312)407-0700<br><br>Paul D. Clement<br>D. Zachary Hudson<br>BANCROFT PLLC<br>1919 M Street NW, Ste. 470<br>Washington, DC 20036<br>(202)234-0090<br><br>Thomas J. Kavaler<br>Jason M. Hall<br>CAHILL GORDON & REINDEL LLP<br>80 Pine Street<br>New York, NY 10005<br>(212)701-3000<br><br>Dane H. Butswinkas<br>Steven M. Farina<br>Leslie C. Mahaffey<br>Amanda M. MacDonald<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street NW<br>Washington DC 20005<br>202-434-5000<br><br>Luke DeGrand<br>Tracey L. Wolfe<br>DEGRAND & WOLFE, P.C.<br>20 South Clark Street<br>Suite 2620<br>Chicago, Illinois 60603<br>(312) 236-9200<br>(312) 236-9201 (fax) | rstoll@skadden.com<br>mrakoczy@skadden.com<br>Andrew.Fuchs@skadden.com<br>Donna.McDevitt@skadden.com<br>Patrick.Fitzgerald@skadden.com<br>pclement@bancroftpllc.com<br>zhudson@bancroftpllc.com<br>TKavaler@cahill.com<br>Jhall@cahill.com<br>dbutswinkas@wc.com<br>sfarina@wc.com<br>lmahaffey@wc.com<br>amacdonald@wc.com<br>twolfe@degrandwolfe.com<br>ldegrand@degrandwolfe.com |
| Counsel for Defendant Household International Inc. | |

1143089_1

| Counsel | E-mail address |
|---|---|
| Michael J. Dowd<br>Spencer A. Burkholz<br>Daniel S. Drosman<br>Luke O. Brooks<br>Hillary B. Stakem<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>(619)231-1058<br>619/231-7423 (fax)<br><br>Jason C. Davis<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>(415)288-4545<br>(415)288-4534 (fax)<br><br>Maureen E. Mueller<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432<br>(561)750-3000<br>(561)750-3364 (fax) | miked@rgrdlaw.com<br>spenceb@rgrdlaw.com<br>dand@rgrdlaw.com<br>lukeb@rgrdlaw.com<br>hstakem@rgrdlaw.com<br>jdavis@rgrdlaw.com<br>mmueller@rgrdlaw.com |
| Lead Counsel for Plaintiffs | |
| Marvin A. Miller<br>Lori A. Fanning<br>MILLER LAW LLC<br>115 S. LaSalle Street, Suite 2910<br>Chicago, IL 60603<br>(312)332-3400<br>(312)676-2676 (fax) | Mmiller@millerlawllc.com<br>Lfanning@millerlawllc.com |
| Liaison Counsel for Plaintiffs | |

- 3 -

1143089_1