**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, on behalf of itself and all others similarly situated, | ) ) ) ) | 02 C 5893 |
| Plaintiff, | ) ) | Judge Jorge L. Alonso |
| v. | ) ) | |
| HOUSEHOLD INTERNATIONAL, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The case is before the Court on defendants' motion to reconsider the Court's ruling that the Seventh Circuit's mandate precludes them from arguing or offering evidence that Professor Fischel's leakage and specific disclosure models do not control for market and industry factors. Defendants contend that the ruling is at odds with the Appellate Court's opinion, which instructs the Court to retry the issue of loss causation in its entirety.

Whether that is true depends on the scope of the remand, about which the Seventh Circuit has said:

> There are two major limitations on the scope of a remand. First, any issue that could have been but was not raised on appeal is waived and thus not remanded. Second, any issue conclusively decided by this court on the first appeal is not remanded. To determine whether an issue falls within the second limitation the opinion needs to be looked at as whole. The court may explicitly remand certain issues exclusive of all others; but the same result may also be accomplished implicitly. For example if the opinion identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error.

*United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002) (quotation, citations, and footnote omitted). The question here is whether the Seventh Circuit remanded this case for a new trial on all

facets of loss causation or only for a determination of whether Fischel's models account for firm-specific, non-fraud information.

Unfortunately, the opinion is not entirely clear on this point. The Seventh Circuit starts its opinion by observing: "The defendants broadly attack the expert's loss-causation model. They also make the more modest claim that his testimony did not adequately address whether firm-specific, nonfraud factors contributed to the collapse in Household's stock price during the relevant time period. This latter argument has merit, as we explain below." *Glickenhaus & Co. v. Household, Int'l, Inc.*, 787 F.3d 408, 413 (7th Cir. 2015). The explanation was:

> . . . . [Defendants] argue that the leakage model, which the jury adopted, did not account for firm-specific, nonfraud factors that may have affected the decline in Household's stock price. . . . The model assumes that any changes in Household's stock price – other than those that can be explained by general market and industry trends – are attributable to the fraud-related disclosures. If during the relevant period there was significant negative information about Household unrelated to these corrective disclosures (and not attributable to market or industry trends), then the model would overstate the effect of the disclosures and in turn of the false statements. . . .
>
> Firm-specific, nonfraud factors were not entirely ignored, however. Although the leakage model doesn't account for their effect, Fischel testified that he looked for company-specific factors during the relevant period and did not find any significant trend of positive or negative information apart from the fraud-related disclosures[.]. . .
>
> . . . .
>
> The defendants contend that this was not enough. Because it was the plaintiffs' burden to prove loss causation, they argue that the leakage model needed to eliminate any firm-specific, nonfraud related factors that might have contributed to the stock's decline. . . .
>
> . . . .
>
> [I]n order to prove loss causation, plaintiffs in securities-fraud cases need to isolate the extent to which a decline in stock price is due to fraud-related corrective disclosures and not other factors. . . .

2

> Fischel's models controlled for market and industry factors and general trends in the economy—the regression analysis took care of that. But the leakage model, which the jury adopted, didn't account for the extent to which firm-specific, nonfraud related information may have contributed to the decline in Household's share price. Fischel testified—albeit in very general terms—that he considered this possibility and ruled it out. The question is whether that's enough or whether the model itself must fully account for the possibility that firm-specific, nonfraud factors affected the stock price.
>
> . . . .
>
> The defendants argue that to be legally sufficient, *any* loss-causation model must *itself* account for, and perfectly exclude, any firm-specific, nonfraud related factors that may have contributed to the decline in a stock price. It may be very difficult, if not impossible, for any statistical model to do this. . . . Accepting the defendants' position likely would doom the leakage theory as a method of quantifying loss causation. On the other hand, if it's enough for a loss-causation expert to offer a conclusory opinion that no firm-specific, nonfraud related information affected the stock price during the relevant time period, then it may be far too easy for plaintiffs to evade the loss-causation principles explained in *Dura*.
>
> There is a middle ground. If the plaintiffs' expert testifies that no firm-specific, nonfraud related information contributed to the decline in stock price during the relevant time period and explains in nonconclusory terms the basis for this opinion, then it's reasonable to expect the defendants to shoulder the burden of identifying some significant, firm-specific, nonfraud related information that could have affected the stock price. If they can't, then the leakage model can go to the jury; if they can, then the burden shifts back to the plaintiffs to account for that specific information or provide a loss-causation model that doesn't suffer from the same problem, like the specific-disclosure model.

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 419-22 (7th Cir. 2015) (footnotes omitted). The Court ended the opinion by saying that "defendants are entitled to a new trial limited to the two issues we've identified here: loss causation and whether the three executives 'made' certain of the false statements under *Janus's* narrow definition of that term." *Id.* at 433.

After carefully examining the opinion and considering the parties' submissions and arguments, the Court concludes that the retrial is not limited to determining whether Fischel's models adequately account for Household-specific, nonfraud factors. Though some language in the

3

opinion seems to support that view, the Court is persuaded that, had the Seventh Circuit wanted the retrial to be so limited, it would have said so explicitly.  Absent such explicit direction, the Court assumes that the element of loss causation must be retried.  Accordingly, the Court vacates its oral ruling limiting the evidence on loss causation solely to whether Fischel's models adequately account for Household-specific, nonfraud factors.

**SO ORDERED.**                                    **ENTERED:  May 31, 2016**

_____
**HON.  JORGE L. ALONSO**
**United States District Judge**