# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOUSEHOLD INTERNATIONAL, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Lead Case No. 02-C-5893
(Consolidated)

CLASS ACTION

Honorable Jorge L. Alonso

---

**DECLARATION OF MICHAEL J. DOWD FILED ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, MICHAEL J. DOWD, declare as follows:

1.        I am a member of the Firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"). I am submitting this declaration in support of my Firm's application for an award of attorneys' fees and expenses/charges ("expenses") in connection with services rendered in the above-entitled action.

2.        This Firm is counsel of record for Lead Plaintiffs Glickenhaus & Co., PACE Industry Union-Management Pension Fund, International Union of Operating Engineers Local No. 132 Pension Plan, and the plaintiff Class.

3.        The information in this declaration is taken from time and expense printouts prepared and maintained by the Firm in the ordinary course of business. Beginning in 2008, I was one of the partners who oversaw and/or conducted the day-to-day activities in the litigation and reviewed these printouts (and backup documentation where necessary or appropriate). This declaration and the supporting exhibits were prepared by, or with the assistance of, other lawyers and staff at the Firm and reviewed by me before signing. The information contained herein is accurate to the best of my knowledge. We reviewed these printouts to confirm both the accuracy of the entries as well as the necessity for, and reasonableness of, the time and expenses committed to the litigation. As a result of these reviews, reductions were made to both time and expenses in the exercise of billing judgment. As a result of these reviews and adjustments, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4.        After the reductions referred to above, the number of hours spent on this litigation by my Firm is 133,108.20 through August 19, 2016. A breakdown of the lodestar is provided in Exhibit

- 1 -

A.  The lodestar amount for attorney/paraprofessional time based on the Firm's current rates is $69,278,057.25.  The hourly rates shown in Exhibit A are the usual and customary rates set by the Firm for each individual.

5.      My Firm seeks an award of $34,214,057.37 in expenses/charges in connection with the prosecution of the litigation.  Those expenses and charges are summarized by category in Exhibit B.

6.      The following is additional information regarding certain of these expenses/charges:

(a)      Filing, Witness and Other Fees: $44,555.31.  Typically, we incurred and paid these costs for court fees, witness fees and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas, or (ii) obtained copies of court documents for plaintiffs.  These costs were necessary to the prosecution of the case.  A breakdown of these charges by date and vendor is set forth in Exhibit C.

(b)      Class Action Notices/Business Wire: $4,148,764.07.  These charges include the cost of publishing the "early notice" required by the Private Securities Litigation Reform Act of 1995, as well as expenses for printing and mailing the Notice of Pendency of Class Action and Settlement with Andersen to Class Members and publishing a summary notice; notices sent to Class Members of the Jury Verdict and Right to File Claims; and Supplemental Claim Forms sent to thousands of Class Members.  These costs also include time and expenses incurred by the claims administrator in responding to questions regarding defendants' objections to claims, requests for information by hundreds of Class Members, custodian banks and thirty-party filing services, and hundreds of other requests by Lead Counsel.

(c)      Special Master Fees: $130,089.01.  Judge Guzmán appointed Phillip S. Stenger of Stenger & Stenger, P.C. as a Special Master to report on defendants' objections to claims submitted by Class Members.  Dkt. No. 1821.  Lead Counsel paid half of the Special Master's fees;

defendants paid the other half. We seek reimbursement of the amounts paid to Stenger & Stenger for their work performed from September 1, 2012 through December 31, 2015.

        (d)     Meals, Hotels and Transportation: $1,194,944.35. In connection with the prosecution of this case, the Firm has paid for travel expenses to attend, among other things, court hearings, to meet with witnesses, experts, mediators and opposing counsel, and to take or defend depositions; and to prepare for and participate in the trial of this action in Chicago in 2009 and to prepare the case for re-trial in Chicago in 2016. (The date, the destination and purpose of each trip is set forth in Exhibit D.) Robbins Geller incurred substantial expenses for trial-related travel. By my count, twenty-three Firm lawyers, forensic accountants and support staff were in Chicago for some or all of the 2009 trial of this action. For example, I moved to Chicago on March 1, 2009. I did not return home to San Diego until May 9, 2009. In an effort to reduce costs, we rented apartments in Chicago, rather than pay for hotel rooms for approximately 20 people for 60-70 nights. We also catered lunches and dinners during many weekdays during the trial, again in the belief that it would reduce meal costs. Nevertheless, the costs were substantial. In reviewing expenses incurred by the trial team during this period, I made various judgmental reductions. I attempted to balance the fact that the Firm had to pay these costs for employee-related travel expenses against the fact that certain expenses may be appropriate for the Firm to bear for its employees, but should not be shifted to the Class. I believe my reductions were appropriate in this situation. We moved a team of 14 people to Chicago for the re-trial in 2016: eight attorneys, a forensic accountant, a paralegal, two secretaries, a document clerk and an IT Specialist, who also provides trial support. Two team members travelled to Chicago on May 2, 2016 to get our trial office up and running. The rest of the trial team moved to Chicago during the week of May 9, 2016 to prepare for the pretrial conference and the trial. For example, I travelled to Chicago on May 10 and did not return home until June 8, 2016. Again, we incurred substantial expenses by having our team in Chicago for an extended period of time.

However, I also reviewed the expenses related to the 2016 trial travel. Once again, we rented apartments for the re-trial in 2016 after comparing costs and determining that it was less expensive than the cost of living in a hotel for pretrial proceedings and a trial that would potentially last for 2-3 months. Although we rented an office in Chicago for both trials (our Chicago office and Miller Law's offices could not comfortably house our trial teams and all of our equipment, documents, copies of exhibits and other necessities), I took the office rental costs out of our request for reimbursement of expenses. I excluded or reduced other expenses as well. In short, working with Robbins Geller staff in our accounting and settlement departments, I did my best to ensure that the expenses sought were necessary and related to the case. Therefore, I believe the charges for trial expenses are reasonable, as submitted.

        (e)     Court Hearing and Deposition Reporting, Public Document Requests, Tapes and Transcripts: $342,603.97. A breakdown of these charges by date, vendor and amount is set forth in Exhibit E.

        (f)     Mediation Fees: $117,513.84.

        (i)     Phillips ADR Enterprises, P.C.: $48,520.84 and Irell & Manella LLP: $46,645.89. These charges reflect plaintiffs' share of the fees of Layn R. Phillips, the mediator who worked with the parties to resolve the case. Judge Phillips is a former United States Attorney and former United States District Judge. He has successfully mediated high-stakes civil cases for over 20 years. Judge Phillips' efforts to resolve this case began in 2005. He conducted formal mediations with the parties on May 23, 2005, May 20, 2008 and June 29, 2014. He also engaged in countless telephonic follow ups with the parties over the years. Ultimately, Judge Phillips made the mediator's proposal that both parties accepted on June 6, 2016. Judge Phillips was a partner at Irell & Manella LLP from 1991 to 2014, when he founded Phillips ADR Enterprises, P.C.

- 4 -

(ii) Resolutions LLC: $14,447.11. These are the fees of mediator Eric Green, who conducted a mediation in this case after trial. In May 2011, the parties discussed the possibility of mediating the case again. Defendants suggested a list of potential mediators, including Eric D. Green of Resolutions LLC. Plaintiffs agreed to mediate before Professor Green. Professor Green is an experienced and well-respected mediator, who has successfully resolved hundreds of complex civil actions. The parties engaged in a formal mediation session with Professor Green on June 27, 2011 in New York. Thereafter, Professor Green engaged in telephonic follow ups with the parties until defendants decided to cancel a second mediation which had been tentatively scheduled for July 21, 2011.

(iii) Sperber Dispute Resolutions, Inc.: $7,900.00. Jill R. Sperber is an experienced mediator and arbitrator, who assisted Judge Phillips with his mediation efforts in this case. Ms. Sperber worked with Judge Phillips at Irell & Manella before opening Sperber Dispute Resolutions.

(g) Experts: $12,314,596.99. Below is a brief description of the identification and roles of the experts used in this case.

(i) Compass Lexecon LLC ("Compass"): $9,822,129.87. Compass provides expert testimony in securities cases on issues related to market efficiency, causation, materiality, class certification, and damages. It is a recognized leader in the use of statistical methods in securities litigation. Its Chairman and President, Daniel Fischel, is one of the leading experts in the field of damages in securities litigation. Professor Fischel provided expert testimony in the areas of loss causation and damages. Compass Lexecon also provided assistance in analyzing defendants' experts' opinions and in responding to defendants' related legal arguments. We have provided a detailed description of Professor Fischel and Compass Lexecon's efforts on behalf of the Class in the Declaration of Spencer A. Burkholz in Support of Plaintiffs' Motion for Final Approval

- 5 -

of Class Action Settlement and Motion for Approval of Attorneys' Fees and Expenses and Award of Expenses to Lead Plaintiffs ("Burkholz Declaration"), ¶¶144-145, 263, 268, 275-276.

(ii)    Shechtman Marks Devor & Etskovitz PC and Friedman LLP ("Shechtman/Friedman"): $1,999,427.30. Shechtman/Friedman are certified public accounting firms that provide litigation support. Plaintiffs retained Harris Devor as an expert witness on accounting issues. Mr. Devor was a principal at Shechtman Marks Devor & Etskovitz PC. During the pendency of the litigation, Mr. Devor moved to Friedman LLP. He is a partner at Friedman. Shechtman/Friedman provided consulting services throughout the litigation, and Mr. Devor provided expert testimony at trial on Household's accounting practices, including re-aging and restatement issues. Mr. Devor was also prepared to testify at the re-trial in 2016. A more detailed description of Mr. Devor and his team's work is set forth in the Burkholz Declaration, ¶¶146, 321.

(h)    Ghiglieri & Company: $493,039.82. Cathy Ghiglieri is an expert in the areas of banking and lending practices. Ms. Ghiglieri, who has more than 25 years of experience in the banking industry, provided expert testimony at trial concerning Household's predatory lending and re-aging practices. Ms. Ghiglieri was also prepared to testify at the re-trial in 2016. A more detailed description of Ms. Ghiglieri's work is set forth in the Burkholz Declaration, ¶147.

(i)    Consultants: $254,262.00.

(i)    Financial Markets Analysis LLC ("FMA"): $181,445.00. Bjorn Steinholt of FMA is an expert in the area of finance in securities litigation cases and provided consulting advice to Lead Counsel on loss causation and damages, as well as opinions concerning the appropriate method for measuring Class Member damages post-trial and prejudgment interest.

(ii)    Gregory A. Brauer (dba Decision Design Consultants ("DDC")): $44,715.00. DDC consulted on issues related to loss causation and, in particular, analyzed valuation issues related to the HSBC/Household merger.

- 6 -

(iii) Torrey Partners LLC ("Torrey"): $18,502.00. Torrey is an economic, forensic accounting and valuation consulting firm headquartered in San Diego, California. Robbins Geller retained Torrey to provide the Firm with economic analyses related to Class Members' claims and valuation. In general, Lead Counsel was attempting to anticipate certain objections that defendants would potentially raise as to the appropriate method of calculating claims.

(iv) Francois Neema (dba Francois Neema Consulting ("Neema Consulting")): $8,625.00. Neema Consulting is a software development and consulting firm, specializing in the development of web-based applications and in website design. Neema Consulting designed, updated and maintained the HouseholdFraud.com website created by Robbins Geller to provide Class Members with information regarding the litigation and the claims process until August 2015. Thereafter, Robbins Geller maintained and updated the website internally.

(v) Civil Action Group (dba APS International, Ltd. ("APS")): $975.00. APS is a legal support services firm, specializing in international service of process and translation services. APS provided a Japanese to English translation service for the backup to a foreign Class Member's proof of claim form.

(j) Moot Court for Court of Appeals Argument: JAMS: $22,918.53 and H. Lee Sarokin: $12,500.00. In advance of the oral argument related to defendants' appeal of the partial judgment to the Seventh Circuit Court of Appeals, Lead Counsel believed it would be in the best interest of the Class to have a select group of former federal judges conduct a moot court of the argument. We retained three judges to assist us with this exercise: the Honorable David Coar (Ret.), who served as a United States District Court Judge for the Northern District of Illinois from 1994 to 2010; the Honorable Irma E. Gonzalez (Ret.), who served as a United States District Court Judge for the Southern District of California from 2005 to 2012 and is a former United States Magistrate Judge and California Superior Court Judge as well; and the Honorable H. Lee Sarokin, who served as a

- 7 -

United States Circuit Judge (Third Circuit 1994-1996) and as a United States District Court Judge (D.N.J. 1979-1994). All three judges prepared for and participated in the moot court, which was conducted in San Diego, California. We believe that this moot court provided Lead Counsel with tremendous insight into the type of questions and concerns that may be expressed by the Court of Appeals at oral argument. The JAMS charges reflect amounts paid for the services of Judge Coar and Judge Gonzalez collectively, as both judges were retained independently through JAMS.

   (k) Investigators: $241,708.01.

     (i) L.R. Hodges & Associates, Ltd. ("LRH"): $228,826.01. Over a 22-month period LRH provided investigative services to Lead Counsel, expending 1,191.9 hours for combined fees of $198,987.50, and incurred related expenses of $29,838.51. LRH researched, identified, and confirmed the employment status of prospective witnesses, located key targets, maintained an evolving witness list to support other investigative team members, contacted and conducted interviews with targeted third-party witnesses; and thereafter, prepared interview summaries and other case reports.

     (ii) Lily Haggerty Investigative Services ("Lily Haggerty"): $7,445.00. In addition to LRH, Robbins Geller also retained Lily Haggerty to assist in locating potential witnesses.

     (iii) George W. Perry (dba Rock Solid Legal Services ("Rock Solid")): $5,437.00. Rock Solid is an investigator that was hired in an unsuccessful attempt to serve former Household consultant Andrew Kahr with a subpoena.

   (l) Other Legal Counsel: $192,573.81.

     (i) Irell & Manella LLP ("I&M"): $88,554.47. I&M provided legal advice to Class Counsel concerning issues related to the supersedeas bond securing the judgment.

(ii)     Harbottle & Lewis LLP ("Harbottle"): $46,418.28. Harbottle assisted Lead Counsel in obtaining the London depositions of HSBC and/or Morgan Stanley which were obtained through letters rogatory.

(iii)     Richard M. Squire & Associates LLC ("Squire"): $40,706.06. Richard Squire, Esq. represented the witness Elaine Markell at the 2009 jury trial.

(iv)     Seltzer Caplan McMahon Vitek ("Seltzer Caplan"): $16,895.00. Seltzer Caplan provided advice to Class Counsel concerning issues related to the supersedeas bond securing the judgment.

(m)     HSBC Technology & Services (USA) Inc. ("HSBC"): $11,922.50. Plaintiffs were ordered by Judge Nolan to pay for half of the costs incurred by HSBC (Household) in responding to plaintiffs' Interrogatory Nos. 40, 41 and 42(a) and (b).

(n)     Appellate Costs Paid to Defendants: $13,281,282.00. On November 5, 2015, this Court granted defendants' motion for costs and ordered plaintiffs to pay $13,281,282 to defendants. Dkt. No. 2061. Plaintiffs wired this amount to defendants on November 30, 2015.

(o)     Photocopies: $1,090,587.61. In connection with this case, the Firm made 1,371,283 black and white copies. Robbins Geller requests $0.15 per copy for a total of $205,692.45. In addition, the Firm made 654 color copies. Robbins Geller requests $0.50 per copy for a total of $327.00. Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the number of in-house copies were identified as related to this case. My Firm also paid $834,488.79 to outside copy vendors. A breakdown of these outside charges by date and vendor is set forth in Exhibit F.

(p)     Online Legal and Financial Research: $303,493.73. These included vendors such as ALR Service, AT&T Wi-Fi, Bloomberg, L.P., Business Automation - Ann Arbor, MI, Business Center - Sunnyvale, CA, ChoicePoint, Collier Service, Computer Research, Country

- 9 -

1175004_2

Information Service, Courtlink, Dow Jones Interactive, Elsevier Science Service, English Libraries, Expert Witness Service, Factiva, Gogoair.com, Historical Quote Service, Internetusage.com - TX, Computer Network, LexisNexis Products, Lexpat, Logiclink, NAARS Service, PACER, Premium News Service, Showcase Business Center - Torrance, CA, Thomson Financial, TMobile Hotspot, West Group, West Publishing Corp., PACER, and Westlaw. These databases were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs. This expense represents the expense incurred by Robbins Geller for use of these services in connection with this litigation. The charges for these vendors vary depending upon the type of services requested. For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services. When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated. At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the market-rate for *a la carte* use of such services, which some law firms pass on to their clients. For example, the "market rate" charged to others by Lexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(q)     Database Management and Hosting Charges: $310,968.70  Robbins Geller requests $310,968.70 for database management and hosting charges related to this litigation. I have spoken with my co-workers in Robbins Geller's IT Department with respect to this charge and, based on those discussions, I have learned the following information. Because of the number of components that are part of hosting documents (*i.e.*, hardware, software, license/access fees, etc.) and the difficulty of allocating a portion of the cost of each component, some of which are multi-

- 10 -

1175004_2

year costs, the amount requested is a discounted market rate estimate of what the hosting services used in this action would have cost the Class if performed by an outside vendor, an estimate based on a review by Robbins Geller of what vendors charge for these services. In the last ten years, electronic discovery has transformed litigation practices and enabled the preservation, collection, production, and review of vast quantities of documents far more efficiently and cost-effectively than was previously possible. Historically, Robbins Geller retained the services of third-party providers to assist with the storage, analysis, printing, and review of electronic discovery. However, in the last several years, Robbins Geller has undertaken much of this work in-house through the use of the Relativity platform (and prior to that, Concordance). Relativity is offered by over 120 vendors and is currently being used by 190 of the AmLaw200 law firms. Robbins Geller's database system consists of over 20 servers and currently consumes more than 50 Terabytes of storage all located in a SSAE 16 Type II data center. Robbins Geller has another 50 Terabytes of storage which serves as our back up in a separate location with automatic replication. Robbins Geller's database system allows users to securely login, view, search, download, code, and analyze documents produced in this litigation. Using an in-house system allows Robbins Geller to prosecute actions more efficiently and has reduced the time and expense associated with maintaining and searching electronic discovery databases. The amount requested reflects charges for the management of the database of over 4.3 million pages of documents and over 250,000 native files produced by defendants and non-parties in this action. Similar to third-party vendors, Robbins Geller uses a tiered rate system to calculate hosting charges. Robbins Geller charges $14 per Gigabyte per month for less than 500 Gigabytes of data for maintaining, hosting and utilizing its database system. These rates were developed by Robbins Geller after a review of market rates charged for the same services performed by third-party vendors. The rates set forth here by Robbins Geller reflect the lowest rate of any comparable service found by Robbins Geller. Robbins Geller's in-house database management and

- 11 -

hosting offers additional savings by not charging monthly user fees typically charged by third-party vendors which can range from $70-100 per user per month. Database Management and Hosting charges are in-house charges, not out-of-pocket expenses paid to outside vendors.

   (r)  Miscellaneous (Publication/Subscriptions): $446.66. Expenses incurred in purchasing articles and textbooks that were needed for the cross-examination of certain of defendants' expert witnesses.

  7.  The expenses pertaining to this case are reflected in the books and records of this Firm. These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

  8.  The identification and background of my Firm and its partners is attached hereto as Exhibit G.

  I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2016, at San Diego, California.

s/ MICHAEL J. DOWD
     MICHAEL J. DOWD

- 12 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses for counsel of record denoted on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 29, 2016.

s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: SpenceB@rgrdlaw.com

*Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill.)
Service List

| Counsel | E-mail address |
|---|---|
| Stewart Theodore Kusper<br>Giovanni Antonio Raimondi<br>THE KUSPER LAW GROUP, LTD.<br>20 North Clark Street, Suite 3000<br>Chicago, IL 60602<br>(312) 204-7938<br><br>Tim S. Leonard<br>JACKSON WALKER L.L.P.<br>1401 McKinney Street, Ste. 1900<br>Houston, TX 77010<br>(713)752-4439 | Stewart.Kusper@Kusperlaw.com<br>Giovanni.Raimondi@Kusperlaw.com<br>tleonard@jw.com |
| Counsel for Defendant David A. Schoenholz | |
| Dawn Marie Canty<br>Gil M. Soffer<br>KATTEN MUCHIN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, Illinois 60661<br>(312)902-5253 | dawn.canty@kattenlaw.com<br>gil.soffer@kattenlaw.com |
| Counsel for Defendant William F. Aldinger | |
| David S. Rosenbloom<br>C. Maeve Kendall<br>McDERMOTT WILL & EMERY, LLP<br>227 West Monroe Street<br>Chicago, IL 60606<br>(312) 984-2175 | drosenbloom@mwe.com<br>makendall@mwe.com |
| Counsel for Defendant Gary Gilmer | |

- 1 -

| Counsel | E-mail address |
|---|---|
| R. Ryan Stoll<br>Mark E. Rakoczy<br>Andrew J. Fuchs<br>Donna L. McDevitt<br>Patrick Fitzgerald<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM<br>LLP<br>155 North Wacker Drive<br>Chicago, IL 60606<br>(312)407-0700<br><br>Paul D. Clement<br>D. Zachary Hudson<br>BANCROFT PLLC<br>1919 M Street NW, Ste. 470<br>Washington, DC 20036<br>(202)234-0090<br><br>Dane H. Butswinkas<br>Steven M. Farina<br>Leslie C. Mahaffey<br>Amanda M. MacDonald<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street NW<br>Washington  DC 20005<br>202-434-5000<br><br>Luke DeGrand<br>Tracey L. Wolfe<br>DEGRAND & WOLFE, P.C.<br>20 South Clark Street<br>Suite 2620<br>Chicago, Illinois 60603<br>(312) 236-9200<br>(312) 236-9201 (fax) | rstoll@skadden.com<br>mrakoczy@skadden.com<br>Andrew.Fuchs@skadden.com<br>Donna.McDevitt@skadden.com<br>Patrick.Fitzgerald@skadden.com<br>pclement@bancroftpllc.com<br>zhudson@bancroftpllc.com<br>TKavaler@cahill.com<br>Jhall@cahill.com<br>dbutswinkas@wc.com<br>sfarina@wc.com<br>lmahaffey@wc.com<br>amacdonald@wc.com<br>twolfe@degrandwolfe.com<br>ldegrand@degrandwolfe.com |
| Counsel for Defendant Household International Inc. | |
| Michael J. Dowd<br>Spencer A. Burkholz<br>Daniel S. Drosman<br>Luke O. Brooks<br>Hillary B. Stakem<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900 | miked@rgrdlaw.com<br>spenceb@rgrdlaw.com<br>dand@rgrdlaw.com<br>lukeb@rgrdlaw.com<br>hstakem@rgrdlaw.com<br>jdavis@rgrdlaw.com<br>mmueller@rgrdlaw.com |

- 2 -

| Counsel | E-mail address |
|---|---|
| San Diego, CA 92101<br>(619)231-1058<br>619/231-7423 (fax)<br><br>Jason C. Davis<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>(415)288-4545<br>(415)288-4534 (fax)<br><br>Maureen E. Mueller<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432<br>(561)750-3000<br>(561)750-3364 (fax) | |
| Lead Counsel for Plaintiffs | |
| Marvin A. Miller<br>Lori A. Fanning<br>MILLER LAW LLC<br>115 S. LaSalle Street, Suite 2910<br>Chicago, IL 60603<br>(312)332-3400<br>(312)676-2676 (fax) | Mmiller@millerlawllc.com<br>Lfanning@millerlawllc.com |
| Liaison Counsel for Plaintiffs | |

- 3 -